# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2), | Case No: 3:12-cv-01538-CSH |
| Plaintiff, |  |
| v. |  |
| WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP., |  |
| Defendant. | October 6, 2017 |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY OF WMC'S EXPERT WITNESSES

**TABLE OF CONTENTS**

**Page**

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD .................................................................................................... 3

ARGUMENT ................................................................................................................. 5

I.    The Court Should Exclude Certain Testimony of Dr. Edward Leamer ................ 5

II.   The Court Should Exclude Certain Testimony of Mr. David Abshier ................. 9

A.    ████████████████████████████████████████ ............................ 11

B.    ████████████████████████████████████ ................................... 17

C.    ██████████████████████████████████████████
      .................................................................................................................... 18

III.  The Court Should Exclude Certain Testimony of Mr. Brian Olasov ................. 19

A.    ███████████████████████████████████ ....................................... 20

B.    ██████████████████████████████████████ ................................ 24

C.    ███████████████████████████████████████████
      .................................................................................................................... 26

CONCLUSION ............................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
    25 N.Y.3d 581 (2015) ............................................................................20

*Ainger v. Mich. Gen. Corp.*,
    476 F. Supp. 1209 (S.D.N.Y. 1979), *aff'd*, 632 F.2d 1025 (2d Cir. 1980) .............................21

*Anthracite Capital, Inc. v. MP-555 West Fifth Mezzanine, LLC*,
    2005 WL 1155418 (S.D.N.Y. 2005), *aff'd*, 165 Fed. Appx. 875 (2d Cir. 2005).....................21

*Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*,
    988 N.Y.S.2d 132 (1st Dep't 2014) ........................................................21

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
    892 F. Supp. 2d 596 (S.D.N.Y. 2012)......................................................22

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
    920 F. Supp. 2d 475 (S.D.N.Y. 2013).......................................................23

*Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
    No. 11CIV505CMGWG, 2017 WL 698607 (S.D.N.Y. Feb. 10, 2017) .................................25

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.*
    808 F.3d 747 (8th Cir. 2015) ................................................................25

*Cruden v. Bank of New York*,
    957 F.2d 961 (2d Cir. 1992).................................................................21

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).........................................................................4, 6

*Davis v. Carroll*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013)...........................................................4

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*,
    810 F.3d 861 (2d Cir. 2015)...................................................................20

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    104 F. Supp. 3d 441 (S.D.N.Y. May 11, 2015) .......................................... *passim*

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)......................................................................4, 26

*Grdinich v. Bradlees*,
    187 F.R.D. 77 (S.D.N.Y. 1999) ................................................................8

*Green v. City of New York*,
  359 Fed. App'x 197 (2d Cir. 2009).........................................................................16

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
  629 F. Supp. 2d 175 (D. Conn. 2009)......................................................................7

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
  No. 0603339/2003, 2006 WL 6916430 (Sup. Ct. N.Y. Cnty. Sept. 6, 2006),
  *aff'd as modified on other grounds*, 47 A.D.3d 103 (1st Dep't 2007)....................22

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  30 Misc. 3d 1201(A) (N.Y. Sup. Ct. Dec. 22, 2010) ...............................................5

*Nomura Asset Acceptance Corp. Alt. Loan Tr. v. Nomura Credit & Capital, Inc.*,
  31 N.Y.S.3d 863 (1st Dep't 2016) ..........................................................................20

*R.F.M.A.S., Inc. v. So*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010)......................................................................8

*Sparta Commercial Servs., Inc. v. DZ Bank*,
  680 F. App'x 17 (2d Cir. 2017) ..........................................................................7, 19

*Steidl v. Harley-Davidson Motor Co.*,
  No. 97-7684, 133 F.3d 907, 1998 WL 29845 (2d Cir. Jan. 27, 1998)......................6

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
  874 F. Supp. 2d 328 (S.D.N.Y. 2012)....................................................................22

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,
  205 F. Supp. 3d 386 (S.D.N.Y. 2016)........................................................... *passim*

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007)....................................................................................4

*Zuchowicz v. United States*,
  140 F.3d 381 (2d Cir. 1998)....................................................................................4

**Other Authorities**

WMC Mortgage, LLC's Opposition to BONY's Motion In Limine Concerning
  Causation,, *Bank of New York Mellon, solely as Trustee for GE-WMC*
  *Mortgage Securities Trust 2006-1 v. WMC Mortgage, LLC,* No. 12-07096
  (S.D.N.Y. Aug. 20, 2015) .......................................................................................23

Federal Rule of Evidence 702.................................................................................. *passim*

Plaintiff TMI Trust Company (the "Separate Trustee"), solely in its capacity as Separate Trustee of SABR 2006-WM2 (the "Trust"), respectfully submits this memorandum in support of its motion *in limine* to exclude certain testimony of WMC Mortgage, LLC's ("WMC") expert witnesses Edward Leamer, David Abshier and Brian Olasov.

## BACKGROUND

The Separate Trustee seeks to enforce WMC's repurchase obligations under the terms of the governing Pooling and Servicing Agreement ("PSA"). Under the plain language of the PSA and applicable case law, repurchase is required when there is a breach of a representation and warranty at the time of closing that adversely and materially affected the value of a mortgage loan in the Trust. In light of the fact that the Trust is comprised of more than 5,000 individual mortgage loans—and consistent with numerous cases from around the country endorsing the use of statistical sampling in analogous circumstances—the Separate Trustee has undertaken to re-underwrite a statistically significant sample of 400 loans to determine the prevalence of breaches of representations and warranties, and to establish the resulting amount of damages owed by WMC on a Trust-wide basis.

In support of its claims, the Separate Trustee has proffered expert reports from an expert statistician with experience in the RMBS space (Dr. Nelson Lipshutz) and a highly-experienced mortgage underwriter (Richard Payne), both of whom have previously testified as expert witnesses in analogous cases. WMC has attempted to counter their work with rebuttal experts of its own – Dr. Edward Leamer in the field of statistics, David Abshier in the field of re-underwriting, and David Olasov in the field of mortgage loan servicing. However, certain of Dr. Leamer's and Mr. Abshier's opinions should be excluded because they are not the product of a reliable methodology. Mr. Olasov's opinions should be excluded in their entirety because they are irrelevant.

For example, Dr. Leamer's critique of Dr. Lipshutz' work centers on his claim that, ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ However, ███████████████████

████████████████████ is argument, not a matter of statistical expertise.

Dr. Leamer does not contest the statistical accuracy and reliability of Dr. Lipshutz's work, and

his opinions and argument on subjective matters should not be admissible. Indeed, courts have

repeatedly held that a sample size of 400 loans – based on a 95% confidence level and a $\pm$

margin of error of 5% – is sufficiently large to produce reliable results in RMBS cases, and

satisfies the plaintiff's burden of proof.

Similarly, in his report on behalf of the Separate Trustee, Mr. Payne opines that ███

████████████████████████████████████████████████████. In

rebuttal, WMC's expert, Mr. Abshier, ███████████████████████████████████

████████████████████. However, Mr. Abshier opines with

respect to many of the other remaining loans that, while they may violate the underwriting

guidelines, the loans nevertheless are not in breach. ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

███. Mr. Abshier's position, however, has been rejected by other courts, which ruled that a re-

underwriter like Mr. Abshier cannot properly substitute his subjective judgment in place of an objective determination.  Such testimony is not admissible.

Finally, WMC has attempted to introduce legally irrelevant evidence into this case through an expert on loan servicing, Brian Olasov.  Mr. Olasov contends that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████.  But courts have repeatedly held that breaches of representations of warranties are established as of the closing date of the transaction, and that post-closing events that may have impacted loan performance have no bearing on the parties' rights and obligations under the applicable PSA.  Furthermore, the remedy for breaches of representations and warranties is set forth in the PSA, which requires WMC to pay the "Repurchase Price" for any loan found to be in breach.  The definition of the Repurchase Price applies whether or not a loan has defaulted, and regardless of any post-closing events that may have occurred.  Therefore, Mr. Olasov's testimony on these issues should not be admitted at trial.

For the foregoing reasons and the additional reasons set forth below, the Separate Trustee respectfully requests that its motion *in limine* to preclude certain testimony of WMC's witnesses should be granted.

## **LEGAL STANDARD**

Expert testimony is admissible under Federal Rule of Evidence 702 only if (i) the testimony is based on sufficient facts or data; (ii) the testimony is the product of reliable principles and methods; and (iii) the expert has reliably applied the principles and methods to the facts of the case.  *Daubert* and Rule 702 require that there be a sufficiently reliable connection between the methodology and the expert's conclusions for those conclusions to be admissible.

*See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The proponent of an expert's testimony has the burden of proving that the expert's opinion has met all of the requirements for admissibility. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Additionally, "[u]nder *Daubert*, trial judges are charged with ensuring that expert testimony . . . 'is relevant to the task at hand.'" *Zuchowicz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998) (quoting *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597 (1993)). An expert witness' testimony is irrelevant if it cannot "help the trier of fact to . . . determine a fact in issue." Fed. R. Evid. 702(a). If an expert's testimony is irrelevant based on the substantive law, it must be excluded. *See, e.g.*, *Davis v. Carroll,* 937 F. Supp. 2d 390, 420 (S.D.N.Y. 2013) (excluding expert witness testimony that was "irrelevant to the legal question in this case").

## ARGUMENT

I.    **THE COURT SHOULD EXCLUDE CERTAIN TESTIMONY OF DR. EDWARD LEAMER.**

The Separate Trustee moves pursuant to Federal Rule of Evidence 702 to preclude testimony at trial by Dr. Edward Leamer about the margin of error and hence size of the sample drawn by Dr. Nelson Lipshutz. As Dr. Leamer acknowledged in his deposition, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. Deposition of Edward Leamer, Ph.D., dated Mar. 10, 2015 ("Leamer Tr.") at 116:6-9; 228:14-23. And it cannot be disputed that courts that have considered the issue have repeatedly held that a 95% confidence level with a $\pm 5\%$ margin of error is appropriate in obtaining a random sample of mortgage loans from a larger pool. *See, e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. May 11, 2015); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 30 Misc. 3d 1201(A), at *5 (N.Y. Sup. Ct. Dec. 22, 2010). Nevertheless, ████████████████████████████████████████

████████████████████████████████████████████████

██. Expert Report of Edward Leamer, Ph.D., dated February 13, 2015 ("Leamer Report"), ¶¶ 15-16, 18; Leamer Tr. at 71:17-72:8; 227:23-228:8. Dr. Leamer concedes that he did no independent work to determine how ████████████████████████████

██ (Leamer Tr. at 11:11-14), ████████████████████ (rather than 400 loans)

████████████████. *Id.* at 35:19-25. Dr. Leamer concedes ████████████

████████████████████████████████. But, as Dr. Leamer himself readily admits, ████████████████████. Leamer Tr. at 19:15-20:10, 72:10-11.

Dr. Leamer's critique of Dr. Lipshutz's proposed sample and corresponding margin of error will not "help the trier of fact" as required by Rule 702. Fed. R. Evid. 702(a); *Steidl v. Harley-Davidson Motor Co.*, No. 97-7684, 133 F.3d 907, 1998 WL 29845 at \*5 (2d Cir. Jan. 27, 1998) (finding expert testimony not helpful to trier of fact because not helpful in establishing defendant's liability). Dr. Leamer has not conducted any statistical analysis of his own, and his strategic judgments and criticisms are not based on statistical methodology, but rather derive from his subjective beliefs as ███████████████████████████████████████████ ███████████████████████. Rule 702 prohibits such testimony. *Daubert*, 509 U.S. at 590 (1993) (Rule 702 requires that expert testimony rest on "knowledge," a term that "connotes more than subjective belief or unsupported speculation.").

Dr. Leamer simply does not offer an opinion based on statistical methodology that Dr. Lipshutz's sample is unreliable or otherwise not statistically sound. To the contrary, Dr. Leamer admits ████████████████████████████████████████ Leamer Tr. at 116:6-9 ████████████████████████████████████████████████████████████████ ███████████████████████████████████ And Dr. Leamer does not challenge Dr. Lipshutz's sample size and ±5% margin of error as statistically inappropriate:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

Leamer Tr. at 228:14-229:1. Simply positing as Dr. Leamer does that ████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 175, 190 (D. Conn. 2009) (finding testimony unreliable when expert could not identify "any particular analytical data he relied on in reaching his conclusions").

Second, Dr. Leamer offers no opinion of his own based on statistical methodology or analysis about the ███████████████████████████. Leamer Tr. at 228:5-8 ("██████ ███████████████████████████████████████████ ██████████████████████████████████). Indeed, Dr. Leamer admits that █████████████████████████████████████████████████████████ ███████:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████████████
████████████████████████████████████

████████████████████████████████████
████████████████████

Leamer Tr. at 19:15-20:10 (emphasis added). Because Dr. Leamer has not performed his own analysis to support his opinions, his testimony █████████████████████████ are merely "speculative." *See Sparta Commercial Servs., Inc. v. DZ Bank*, 680 F. App'x 17, 19 (2d Cir. 2017) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008)) ("'An expert's opinions that are without factual basis and are based on speculation or

conjecture' should be excluded from consideration at summary judgment or trial."). Indeed, Dr. Leamer admits that ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

Dr. Leamer's opinion ████████████ amounts to no more than a judgment call in light of the amount of money at stake – but ironically, ████████████████████

████████████████████. Leamer Tr. at 72:10-11 ████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████

████████████████████████████████████████

██████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

Leamer Tr. at 71:17-72:8 (emphasis added). Such positions that are not supported by statistical expertise are prohibited under Rule 702. *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) (experts not qualified to offer testimony when did not "draw on their areas of actual expertise," but instead "employed common sense"); *see also Grdinich v. Bradlees*, 187 F.R.D. 77, 81–82 (S.D.N.Y. 1999) (excluding expert opinion allegedly based on industry

8

standards as unsupported speculation where only basis for standard were general "common-sense" guidelines).  Therefore, because Dr. Leamer's core criticism of Dr. Lipshutz's work is based solely on argument rather than statistics, this Court should preclude Dr. Leamer from offering such testimony under Rule 702.

## II.    THE COURT SHOULD EXCLUDE CERTAIN TESTIMONY OF MR. DAVID ABSHIER.

The Separate Trustee submits that the Court should also preclude David Abshier from offering certain testimony on behalf of WMC.  Specifically, Mr. Abshier inappropriately (1)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

The key dispute at bar is whether the mortgage loans in the Trust were in material breach of WMC's underwriting guidelines at the time of origination.  Compl. ¶¶ 30, 42, 43.  The purpose of WMC's underwriting guidelines was to ████████████████████████████ ████████████████████████████████████████████."  Expert Report of Richard W. Payne, III, dated May 20, 2016 ("Payne Report") at 20 & n.17 (quoting WMC Underwriting Guidelines, April 2006, at WMC-SABR06WM2-01385357).  If a loan did not meet the guidelines, "████████████████████████████████████████ ████████████████████████████████."  *Id.* at n.129 (quoting WMC Underwriting Guidelines, April 2006, at WMC-SABR06WM2-01385357).  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

After origination, WMC securitized and sold the loans to the Trust. To sell the loans in a commercially efficient manner (*i.e.*, to relieve investors of the burden of verifying the quality of each of the 5,162 loans in the pool), WMC represented and warranted, among other things, that each "Mortgage Loan was underwritten in accordance with the Underwriting Guidelines." PSA, Sched. III(x). ████████████████████████████████████████

In this litigation, the Separate Trustee's re-underwriting expert, Richard Payne, and WMC's re-underwriting expert, David Abshier, each undertook a forensic review of a sample of 400 mortgage loans selected from the loans in the Trust (the "Sample"). *See* Payne Report at 1; Expert Report of David E. Abshier, dated August 19, 2016 ("Abshier Report") at 1. █



[REDACTED]

Judge Castel rejected precisely this type of *post hoc* expert testimony in a case often cited by WMC but for different reasons, *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016). There, UBS's re-underwriting expert testified that "[undocumented] exceptions may be inferred from the fact that a loan not otherwise in compliance with the Guidelines was approved and funded[.]" *Id.* at 459. She also considered compensating factors for certain loans where "there [was] no written evidence that an exception was exercised" at origination. *Id.* at 503. Judge Castel rejected the re-underwriter's reasoning as "circular," proclaiming that "an undocumented exception [was] nothing more than a post-hoc attempt to rationalize an Originator's noncompliance with the guidelines and is not an exception exercised in a reasonable manner." *Id.* at 450, 459. Judge Castel concluded that "it would be unreasonable for an underwriter to exercise an exception without providing some record of the exception's existence and the basis for exercising it," explaining:

> This is because the Originators intended to sell the loans. The Originators knew that prudent bidders and buyers would subject the

loans and the loan files to due diligence and that it was important to demonstrate to an institution buying the loan that while the strict letter of the guidelines was not followed, there were good and sufficient reasons *at the time of origination* for making an exception to the guidelines.

*Id.* at 451 (emphasis added). Judge Castel held that the expert testimony regarding "unexpressed and undocumented guideline exception[s]" would be "afforded no weight." *Id.* at 451, 459.

Judge Cote reached a similar conclusion with respect to the defendants' re-underwriting expert in *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, an RMBS case involving alleged fraud under state and federal securities laws. 104 F. Supp. 3d 441 (S.D.N.Y. 2015). Defendants' expert testified that a reasonable underwriter at the time of origination "could have found" that the loans satisfied the originators' underwriting guidelines. *Id.* at 523. In reaching that conclusion, the expert assumed that the originator "investigated the red flags in the loan file, even when there is no evidence that the originator did so." *Id.* at 524. Judge Cote identified two flaws with this approach:

[1] Underwriting guidelines required that red flags be investigated and that exceptions to underwriting criteria be documented. Documentation was critical so that supervisors and each of the units within an originator, including its auditors, could examine the file and determine what had been done. [2] Documentation was also critical because these loans were originated to be sold, and the file would be leaving the originator's office.

*Id.* at 525. Judge Cote concluded that it was "improbable in the extreme—and untenable to presume—that every originator diligently followed up on all red flags and merely failed to document its efforts." *Id.* at 524. Therefore, she did not credit the testimony of defendants' expert. *Id.* at 524-25.

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████







**B.** ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████ he PSA contains a blanket "no fraud" provision that does not require

scienter on the part of WMC:

> No fraud, misrepresentation, or similar occurrence or, to Seller's knowledge, error, omission, or negligence with respect to a Mortgage Loan has taken place on the part of any Person (other than Seller), including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan.

PSA Sched. III(m). As such, any fraud or misrepresentation by the borrower in connection with

the loan's origination constitutes a breach of WMC's representations and warranties in the PSA,

whether or not WMC knew or should have known about it. *See id.*; ███████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████



████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ However, "'[a]n expert's opinions that are without factual basis and are based on speculation or conjecture' should be excluded from consideration at summary judgment or trial." *Sparta Commercial Servs., Inc. v. DZ Bank*, 680 F. App'x 17, 19 (2d Cir. 2017) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008)).

Judge Castel rejected an expert's similar approach in *U.S. Bank*. There, one loan application stated that a professional skater earned $12,000 per month. *U.S. Bank*, 205 F. Supp. 3d at 497. Tax returns filed post-origination with the servicer reflected income of only $1,276 per month. *Id.* UBS's re-underwriting expert testified that the variance might have been due to "the unpredictable nature of professional athletes' income, and that the borrower might have sincerely expected to earn $12,000 a month in 2006." *Id.* The Court rejected this explanation, finding that U.S. Bank's re-underwriting expert "appropriately relied" on the borrower's tax return to prove that the DTI listed in the MLS was not true and correct. *Id.* The same is true here, and Mr. Abshier's speculations should be stricken. ████████████████████

████████████

## III. THE COURT SHOULD EXCLUDE CERTAIN TESTIMONY OF MR. BRIAN OLASOV.

WMC has also retained an expert on the servicing of mortgage loans, Mr. Brian Olasov, who opined ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ . However, if a material and adverse breach of representation and warranty exists as of the closing date, WMC is required to

pay the "Repurchase Price" for that loan, regardless of post-closing events. 

Furthermore, Mr. Olasov's testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ should be excluded on the alternative ground that Mr. Olasov used an unreliable methodology to support his claims, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. *See* Olasov Report at 19-34. Accordingly, WMC's expert testimony on these issues should be excluded from trial.

**A.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The law is well-settled in New York that breaches of representations and warranties are determined on the closing date of a trust, and that anything after the closing date is irrelevant. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865, 867 (2d Cir. 2015) ("A cause of action for breach of contractual representations and warranties that guarantee certain facts as of a certain date—but do not guarantee future performance—accrues on the date those representations and warranties become effective," adding "R&Ws were true or false— either performed or not—at the moment they were made."); *Nomura Asset Acceptance Corp. Alt. Loan Tr. v. Nomura Credit & Capital, Inc.*, 31 N.Y.S.3d 863 (1st Dep't 2016) ("[D]efendant made its loan representations 'as of the Closing Date,' . . . the claims accrued on that date and not earlier."); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 589 (2015)

(Representations and warranties in a residential mortgage-backed security "concern the characteristics of their subject as of the date they are made, they are breached, if at all, on that date."). A claim for breach of a representation and warranty is complete upon (i) proof of the existence of the representation and warranty, and (ii) proof of its material breach. *See Ainger v. Mich. Gen. Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979), *aff'd*, 632 F.2d 1025 (2d Cir. 1980) (finding that "a claim for relief in breach of warranty is complete upon proof of the warranty as part of a contract and proof of its breach"). Therefore, whether a "change-of-life" event or a servicing deficiency caused a loan to default is irrelevant.

WMC's causation argument ignores the express terms of the PSA, and as such, is contrary to New York law. "A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992) (citation omitted). This principle is enforced especially when a contract is negotiated by sophisticated parties. *See Anthracite Capital, Inc. v. MP-555 West Fifth Mezzanine, LLC*, 2005 WL 1155418, *6 (S.D.N.Y. 2005), *aff'd*, 165 Fed. Appx. 875 (2d Cir. 2005). "'The best evidence of what parties to a written agreement intend is what they say in their writing.'" *Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*, 988 N.Y.S.2d 132, 133 (1st Dep't 2014) (quoting *Slamow v. Delcol*, 79 N.Y.2d 1016, 1018 (1992)).

The PSA does not contain a causation requirement. To the contrary, section 2.03(b) of the PSA states: "The Responsible Party hereby makes the representations and warranties set forth in Schedule III and Schedule IV to the Depositor and the Trustee, as of the *Closing Date*." PSA § 2.03(b)) (emphasis added). Section 2.03(d) of the PSA states that if there is a breach of a representation and warranty that "materially and adversely affects the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein," WMC must cure the breach

or "repurchase such Mortgage Loan at the Repurchase Price." PSA § 2.03(d)). The PSA defines "Repurchase Price" as "an amount equal to the sum of (i) the unpaid principal balance of such Mortgage Loan as of the date of repurchase, (ii) interest on such unpaid principal balance of such Mortgage Loan at the Mortgage Rate from the last date through which interest has been paid to the date of repurchase, (iii) all unreimbursed Servicing Advances and (iv) all expenses incurred by the Trustee arising out of the Trustee's enforcement of the applicable Person's repurchase obligation hereunder." PSA § 1.01. WMC must pay the Repurchase Price (as defined in the PSA) if there is a breach of representation and warranty that materially and adversely affects the value of a loan as of the closing date, regardless of what factors may have ultimately contributed to a loan's subsequent default.

If the parties had intended to include a requirement that a party to the PSA must demonstrate that a breach of representations and warranties actually caused a loan to default in order to obtain the repurchase remedy, they could have done so. Here, they did not. As Judge Rakoff explained, "[i]t should also be noted that the Transaction Documents do not mention 'cause,' 'loss' or 'default' with respect to the defendants' repurchase obligations. If the sophisticated parties had intended that the plaintiff be required to show direct loss causation, they could have included that in the contract, but they did not do so, and the Court will not include that language now 'under the guise of interpreting the writing.'" *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596, 602-03 (S.D.N.Y. 2012) (citation omitted).

Other courts interpreting similar contracts have consistently found that causation is not required to trigger the repurchase obligation. *See Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) ("Syncora need not prove that the allegedly breached representations and warranties caused any of the HELOC loans to default . . . for purposes of triggering EMC's repurchase obligation under the MLPA."); *LaSalle Bank Nat'l Ass'n v.*

*Nomura Asset Capital Corp.*, No. 0603339/2003, 2006 WL 6916430 (Sup. Ct. N.Y. Cnty. Sept. 6, 2006), *aff'd as modified on other grounds*, 47 A.D.3d 103 (1st Dep't 2007) (granting motion *in limine* "to exclude evidence as to whether the defendants' breaches caused the subject loans to default").  Similarly, Judge Rakoff held that post-closing events are irrelevant to whether a breach occurred in *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 511 (S.D.N.Y. 2013) ("[I]it is irrelevant to the Court's determination of material breach what Flagstar believes ultimately caused the loans to default, whether it is a life event or if the underwriting defects could be deemed 'immaterial' based on twelve months of payment.  Risk of loss can be realized or not; it is the fact that Assured faced a greater risk than was warranted that is at issue for the question of breach.").

█████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

WMC has conceded in at least one other RMBS mortgage loan case that there is no requirement to prove causation if the contractual repurchase formula is applied.  *See* WMC Mortgage, LLC's Opposition to BONY's Motion *In Limine* Concerning Causation at 1, *Bank of New York Mellon, solely as Trustee for GE-WMC Mortgage Securities Trust 2006-1 v. WMC Mortgage, LLC,* No. 12-07096 (S.D.N.Y. Aug. 20, 2015) ("WMC fully agrees that when the Purchase Price formula is applied, BoNY is freed from the burden of having to prove traditional causation because the components of that formula do not require such proof.").



████████████████████████████████████. Olasov Report at 10. But, as discussed above, the PSA does not require proof of causation for a repurchase claim, and therefore any testimony regarding alternative causes for poor loan performance is irrelevant. Accordingly, Mr. Olasov's testimony should be excluded.

Courts analyzing similar repurchase provisions have held that the parties did not bargain for a set-off for an alleged failure to mitigate by the servicer. In *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, the court granted plaintiff's motion to preclude the testimony of defendant's expert concerning the alleged failure to mitigate damages. No. 11CIV505CMGWG, 2017 WL 698607 (S.D.N.Y. Feb. 10, 2017). The court reasoned that "[the defendant's] attempt to turn this trial into a referendum of the servicing of the loan . . . represents a misguided effort to alter the focus of this lawsuit from its conduct to that of the . . . Servicer[]." *Id.* at *1. Similarly, in *CitiMortgage, Inc. v. Chicago Bancorp, Inc*., the Eighth Circuit held that "[t]he damage-limiting doctrines cited by Bancorp do not trump the plain, unambiguous, and bargained-for language of the agreement." 808 F.3d 747, 754 (8th Cir. 2015). The Appeals Court thus rejected the seller's claim that it was entitled to a set-off due to the plaintiff's alleged failure "to mitigate the amount of the repurchase price." *Id*. at 753.

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

If WMC believes that the Servicers acted improperly and exacerbated losses for loans in the Trust, WMC may attempt to seek recovery from the servicers for violation of the servicing standard.  But WMC may not try to reduce the damages it owes in this action by such an amount.

**C.**  [BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR].

Rule 702 requires that an expert's opinion be based on sound methodology, and that there exists a reliable connection between the methodology and the expert's conclusions.  *See Gen. Elec. Co.,* 522 U.S. at 146. [BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]



## <u>CONCLUSION</u>

For the foregoing reasons, the Separate Trustee respectfully requests that the Court grant

Separate Trustee's Motion *In Limine* to Exclude Certain Testimony of WMC's Expert Witnesses

Dr. Edward Leamer, David Abshier, and Brian Olasov.

<div style="margin-left:50%;">

PLAINTIFF, TMI TRUST
COMPANY, solely in its capacity as
Separate Trustee of the Securitized
Asset Backed Receivables LLC
Trust 2006-WM2

/s/ Harvey J. Wolkoff
Harvey J. Wolkoff (*phv* 01103)
Daniel V. Ward (*phv* 05850)
Kathryn E. Wilhelm (*phv* 08528)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7703
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
daniel.ward@ropesgray.com
kathryn.wilhelm@ropesgray.com


Thomas D. Goldberg (ct 04386)
Kevin C. Brown (ct 29774)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, Connecticut 06901
Tel.: (203) 977-7300
Fax: (203) 977-7301
tgoldberg@daypitney.com
kbrown@daypitney.com

*Attorneys for Plaintiff*

</div>







<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 6, 2017, the foregoing Plaintiff's Memorandum of Law in Support of Its Motion *In Limine* to Exclude Certain Testimony of WMC's Expert Witnesses was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Kevin C. Brown
Kevin C. Brown