# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TMI TRUST COMPANY, solely in its capacity
as Separate Trustee of the SECURITIZED
ASSET BACKED RECEIVABLES LLC
TRUST 2006-WM2 (SABR 2006-WM2),

                        Plaintiff,

        v.

WMC MORTGAGE, LLC f/k/a WMC
MORTGAGE CORP.,

                        Defendant.

Case No: 3:12-cv-01538-CSH

OCTOBER 20, 2017

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WMC'S MOTION *IN LIMINE* TO PARTIALLY EXCLUDE DAMAGES TESTIMONY OF DR. JOSEPH R. MASON

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT...............................................................................................................2

I.   Dr. Mason's Measure of Rescissory Damages Is an Appropriate Method to Calculate Damages for the Separate Trustee's Failure to Notify Claim. ................................................2

   A.   The Separate Trustee's Failure to Notify Claim Is Not Governed by the PSA's Sole Remedy Clause..................................................................................2

   B.   The Sole Remedy Clause Is Not Enforceable to Preclude Rescissory Damages, Because of WMC's Gross Negligence .............................................................4

   C.   Rescissory Damages Are an Appropriate Calculation of the Separate Trustee's Damages Arising from Its Failure to Notify Claim .........................................6

II.  Dr. Mason's Repurchase Damages Calculations Are Fully Consistent with the Repurchase Price Formula in the PSA. .....................................................................7

   A.   Dr. Mason's Calculation of Repurchase Damages Is Consistent with the Repurchase Price Formula in the PSA .............................................................7

   B.   Dr. Mason Appropriately Calculated the Repurchase Price for Liquidated Loans............8

   C.   Dr. Mason Properly Included Anticipated Future Losses when Determining the Trust's Repurchase Damages..................................................................13

   D.   Dr. Mason Properly Included Losses from Loan Modifications when Determining the Repurchase Damages........................................................................15

CONCLUSION..........................................................................................................17

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.   Dr. Mason's Measure of Rescissory Damages Is an Appropriate Method to Calculate
     Damages for the Separate Trustee's Failure to Notify Claim. ........................................... 2

   A.   The Separate Trustee's Failure to Notify Claim Is Not Governed by the PSA's Sole
          Remedy Clause ....................................................................................................... 2

   B.   The Sole Remedy Clause Is Not Enforceable to Preclude Rescissory Damages, Because
          of WMC's Gross Negligence ................................................................................... 4

   C.   Rescissory Damages Are an Appropriate Calculation of the Separate Trustee's Damages
          Arising from Its Failure to Notify Claim ................................................................. 5

II.  Dr. Mason's Repurchase Damages Calculations Are Fully Consistent with the Repurchase
     Price Formula in the PSA. ............................................................................................... 7

   A.   Dr. Mason's Calculation of Repurchase Damages Is Consistent with the Repurchase Price
          Formula in the PSA ................................................................................................ 7

   B.   Dr. Mason Appropriately Calculated the Repurchase Price for Liquidated Loans ........... 8

   C.   Dr. Mason Properly Included Anticipated Future Losses when Determining the Trust's
          Repurchase Damages .............................................................................................. 13

   D.   Dr. Mason Properly Included Losses from Loan Modifications when Determining the
          Repurchase Damages .............................................................................................. 15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
   965 N.Y.S.2d 844 (N.Y. Sup. Ct. 2013), *rev'd on other grounds*, 112 A.D.3d
   522 (2013), *aff'd*, 25 N.Y.3d 581 (2015) ................................................................9

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
   No. 6533994/2012, 2014 WL 1384490, 2014 N.Y. Slip Op. 30927(U) (N.Y.
   Sup. Ct. Apr. 4, 2014) ...........................................................................................9

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................................14

*Bank of New York Mellon v. WMC Mortg., LLC*,
   53 Misc. 3d 967, 39 N.Y.S.3d 892 (N.Y. Sup. Ct. 2016) ....................................1, 4

*Bank of New York Mellon v. WMC Mortg., LLC*,
   No. 12-cv-7096 DLC, 2015 WL 2449313 (S.D.N.Y. May 22, 2015) ......................8

*Campbell v. Metro. Prop. & Casualty Ins. Co.*,
   239 F.3d 179 (2d Cir. 2001) ................................................................................14

*Canfield v. Reynolds*,
   631 F.2d 169 (2d Cir. 1980) ..................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .............................................................................................14

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods.,
   Inc.*,
   958 F. Supp. 2d 488 (S.D.N.Y. 2013) ...................................................................9

*Doyle v. Allstate Ins. Co.*,
   1 N.Y.2d 439 (1956) ..............................................................................................8

*Fin. Guar. Ins. Co. v. Morgan Stanley ABS Capital I Inc.*,
   54 Misc. 3d 1215(A), 54 N.Y.S.3d 610 (N.Y. Sup. Ct. 2017) ..............................13

*In re Fosamax Prods. Liab. Litig.*,
   645 F.Supp.2d 164 (S.D.N.Y. 2009) ...............................................................14, 15

*Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.*,
   212 A.D.2d 577 (2d Dep't 1995) ...........................................................................4

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562 (2002) ...........................................................................................9

*Greenwich Capital Fin. Prods. Inc. v. Negrin*,
   74 A.D.3d 413 (1st Dep't 2010) .........................................................................15

*LaSalle Bank Nat'l Ass'n v. CAPCO Am. Securitization Corp.*,
   No. 02-cv-9916, 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005).............................7

*Law Debenture Tr. Co. of New York v. WMC Mortg., LLC*,
   No. 3:12-cv-1538 (CSH), 2017 WL 3401254 (D. Conn. Aug. 8, 2017) ..........3, 4, 5

*Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Capital
   Holdings LLC*,
   143 A.D.3d 1, 36 N.Y.S.3d 458 (N.Y. App. Div. 2016) ..................................1, 3, 5

*Mun. Capital Appreciation Partners I, L.P. v. Page*,
   No. 00-cv-8138, 2002 WL 483510 (S.D.N.Y. Mar. 19, 2002).................................7

*Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*,
   133 A.D.3d 96, 19 N.Y.S.3d 1 (N.Y. App. Div. 2015), *reargument granted*,
   29 N.Y.3d 992, 75 N.E.3d 1171 (2017).......................................................1, 3, 5, 8

*In re Ore Cargo, Inc.*,
   544 F.2d 80 (2d Cir. 1976)..............................................................................11, 12

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   23 N.Y.3d 549, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014)...................................11

*Syncora Guara. Inc. v. Countrywide Home Loans, Inc.*,
   935 N.Y.S.2d 858 (N.Y. Sup. Ct. 2012) ................................................................6

*U.S. Bank Nat. Ass'n v. DLJ Mortg. Capital, Inc.*,
   42 Misc. 3d 1213(A), 984 N.Y.S.2d 635 (N.Y. Sup. Ct. 2014), *aff'd*, 121
   A.D.3d 535, 995 N.Y.S.2d 11 (2014) ..............................................................9, 14

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,
   205 F. Supp. 3d 386 (S.D.N.Y. 2016).....................................................................8

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*,
   1 N.Y.3d 470 (2004) ...........................................................................................10

*Wiljeff, LLC v. United Realty Mgmt. Corp.*,
   82 A.D.3d 1616 (4th Dep't 2011) .......................................................................5, 6

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014)..................................................................................9

Plaintiff TMI Trust Company (the "Separate Trustee"), solely in its capacity as separate trustee of Securitized Asset Backed Receivables LLC Trust 2006-WM2 (the "Trust"), respectfully submits this memorandum in opposition to Defendant WMC Mortgage, LLC's ("WMC") motion *in limine* to partially exclude expert damages testimony of Dr. Joseph R. Mason (the "Motion").

## PRELIMINARY STATEMENT

WMC's Motion seeks to limit the Separate Trustee's damages to the "repurchase price" formula set out in the parties' Pooling and Servicing Agreement (October 6, 2017 Declaration of Matthew S. Hellman in Support of WMC's Motion to Partially Exclude the Expert Damages Testimony of Dr. Joseph Mason ("Hellman Decl."), Ex. B, Pooling and Servicing Agreement for Securitized Asset Backed Receivables LLC Trust 2006-WM2, dated as of October 1, 2006 ("PSA")).  However, WMC's effort to limit the Separate Trustee's damages ignores established precedent allowing rescissory damages where the defendant's conduct, as here, is egregious, and where contractual claims are asserted to which the "repurchase price" remedy does not apply. Further, Dr. Mason's calculation of the Separate Trustee's "repurchase price" damages was proper, and WMC's protests to the contrary are incorrect.

<u>First</u>, Dr. Mason appropriately calculated rescissory damages because the Separate Trustee has alleged a "failure to notify" claim, based upon WMC's wide-scale failure to adhere to its contractual duties.  A claim for failure to notify is independent from a claim for failure to repurchase, is governed by separate damages remedies, and is not limited by the "sole remedy" clause.  WMC's gross negligence also precludes the sole remedy clause from limiting the Separate Trustee's claims.  *See Bank of New York Mellon v. WMC Mortg., LLC*, 53 Misc. 3d 967, 977–78, 39 N.Y.S.3d 892, 900 (N.Y. Sup. Ct. 2016) ("Under *Nomura* and *Morgan Stanley*, a trustee may maintain an independent failure to notify claim so long as such notification obligation is beyond

the scope of the sole remedy clause or, even if that is not the case, if gross negligence is pleaded."). Accordingly, Dr. Mason's calculation of rescissory damages is perfectly appropriate.

Second, WMC mischaracterizes Dr. Mason's calculation of repurchase damages. Dr. Mason has properly calculated the "Repurchase Price" as required under the PSA, based on the forensic re-underwriting by Richard Payne, the Separate Trustee's mortgage expert, of a statistically significant sample of 400 loans in the Trust at issue (the "Sample"). In making his calculations, Dr. Mason has properly determined the repurchase price of "Liquidated Mortgage Loans." Contrary to WMC's position, Liquidated Mortgage Loans have an unpaid principal balance greater than "zero" within the plain language of the PSA's definition of Repurchase Price. Dr. Mason has also correctly estimated future losses that are likely to accrue based on the historical performance of loans in the Trust, and such losses are recoverable by the Trust. Accordingly, Dr. Mason's testimony should not be excluded in any respect.

<u>**ARGUMENT**</u>

I.   **DR. MASON'S MEASURE OF RESCISSORY DAMAGES IS AN APPROPRIATE METHOD TO CALCULATE DAMAGES FOR THE SEPARATE TRUSTEE'S FAILURE TO NOTIFY CLAIM.[1]**

   A.   <u>The Separate Trustee's Failure to Notify Claim Is Not Governed by the PSA's Sole Remedy Clause.</u>

The Separate Trustee has properly pled a failure to notify claim. (*See* Hellman Decl., Ex. C, Compl. at ¶¶ 93-98). That claim is founded on section 2.03(c) of the PSA, which requires WMC to give prompt written notice to the other PSA parties, including the Separate Trustee, when it discovers a breach of its representations and warranties. As the Separate Trustee will prove at trial, WMC knew or should have known about the widespread presence of defective mortgage

---

[1]   Dr. Mason also calculated Benefit of the Bargain Damages in his Expert Report, and determined that Benefit of the Bargain damages are "best approximated by Rescissory Damages." (Hellman Decl., Ex. D, Mason Report at ¶ 83).

loans in the Trust, but nonetheless failed to notify the parties to the PSA, as it was contractually obligated to do.

The Separate Trustee's failure to notify claim is not governed by the PSA's sole remedy clause. Rather, under New York law,[2] a failure to notify claim gives rise to a separate breach with separate damages that are not governed by the PSA's sole remedy clause. *See Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96, 107-08, 19 N.Y.S.3d 1, 10 (N.Y. App. Div. 2015), *reargument granted*, 29 N.Y.3d 992, 75 N.E.3d 1171 (2017) (seller's failure to provide the trustee with notice of material breaches it discovered constitutes an independently breached contractual obligation, permitting a plaintiff to pursue separate damages); *Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC*, 143 A.D.3d 1, 8, 36 N.Y.S.3d 458, 463 (N.Y. App. Div. 2016) ("*Morgan Stanley 2006-13ARX*"). So, for example, in *Morgan Stanley 2006-13ARX*, the RMBS trustee alleged that the originator "breached a contractual duty to notify the Trustee of the defective loans, giving rise to damages not governed by the sole remedies restriction in the parties' agreements." *Id*. at 3. The First Department held that the failure to notify claim was a separate breach for which the plaintiff could pursue separate damages not governed by the sole remedies restriction in the parties' agreements. *Id*. This Court is well familiar with that decision, and noted in its Ruling on WMC's Motion for Partial Summary Judgment that, "[i]n reaching that conclusion, the First Department necessarily accepted the trust's contention that those 'separate damages' were 'not governed by the sole remedies restrictions in the parties agreements.'" *Law Debenture Tr. Co. of New York v. WMC Mortg., LLC*, No. 3:12-cv-1538 (CSH), 2017 WL 3401254, at *16 (D. Conn. Aug. 8, 2017) ("*WMC IV*"). As this Court added, "[t]he recent cited decisions in the New York Appellate Division, that

---

[2]    The PSA provides for the application of New York law.  (Hellman Decl., Ex. B, PSA § 10.03).

a loan originator may be liable for failing to notify an RMBS trustee of mortgage breaches the originator knew *or should have known* about, suggest that [the Separate Trustee's failure to notify claim] against WMC is viable in law, and beyond the reach of the 'sole remedy' provision." *Id.* at *19.

In the instant action, the PSA's sole remedy clause provides the remedy for breaches of representations and warranties – not for failure to notify claims – as follows:

> It is understood and agreed that the obligation of [WMC] under this Agreement to cure, repurchase or substitute any Mortgage Loan as to which a breach of a representation and warranty has occurred and is continuing, together with any related indemnification obligations of the Responsible Party set forth in Section 2.03(h), shall constitute the sole remedies against such Person respecting such breach available to Certificateholders, the Depositor and any of its Affiliates, or the Trustee on their behalf.

(Hellman Decl., Ex. B, PSA § 2.03(k)).  Accordingly, the Repurchase Price is not the sole remedy for breaches of the Separate Trustee's failure to notify claim, and Dr. Mason's determination of rescissory damages is relevant and appropriate.  *See, e.g., Bank of New York Mellon*, 53 Misc. 3d at 979 (BONY's failure to notify claim may proceed, despite a sole remedy provision).

B.    The Sole Remedy Clause Is Not Enforceable to Preclude Rescissory Damages, Because of WMC's Gross Negligence.

Even if the Separate Trustee's failure to notify claim *were* governed by the PSA's sole remedy clause, the sole remedy clause would not be enforceable because of WMC's gross negligence.  It is established law in New York that a defendant may not limit its liability when acting with gross negligence.  *See Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.,* 212 A.D.2d 577, 578 (2d Dep't 1995) ("Although such clauses in commercial contracts are enforceable to limit recovery for claims based on ordinary negligence, they will not preclude recovery in tort or breach of contract where the losses are the result of gross negligence.").

Accordingly, in *Morgan Stanley 2006-13ARX,* a similar case involving a failure to notify claim against an RMBS originator, the First Department found that the facts alleged supported a claim of gross negligence, and affirmed the denial of a motion to dismiss the failure to notify claim. The court noted that, while "[c]ourts will generally honor the remedies that the parties have contractually agreed to, . . . there are exceptions to this rule of law . . . . and as a matter of long-standing public policy, a party may not insulate itself from damages caused by its grossly negligent conduct."   143 A.D.3d at 8 (citation and internal quotation marks omitted).   As this Court previously has observed, "[t]he allegations of the originator's misconduct in *Morgan Stanley* mirror those made against WMC in this case."   *WMC IV*, 2017 WL 3401254, at *16.

WMC's support for its contrary position is Judge Cote's *Daubert* opinion in *Bank of N.Y. Mellon* which – in a footnote – rejected BONY's argument that the Purchase Price formula was unenforceable because of defendants' gross negligence.   (Hellman Decl., Ex. A, *Bank of N.Y. Mellon v. WMC Mortg. LLC,* No. 1:12-cv-07096-DLC, at 17, n. 7 (S.D.N.Y. Aug. 18, 2015), ECF No. 323 ("Cote Slip Op.")).   Judge Cote noted that the Purchase Price formula was a "contractual formula used to determine damages applied to fashion appropriate equitable relief."   *Id.*   However, WMC's reliance on this case is unavailing, for two reasons.   First, Judge Cote's opinion predates the New York appellate courts' decisions in *Morgan Stanley 2006-13ARX* and *Nomura.*   Second, the Separate Trustee's position is only that its damages are not limited by the PSA's sole remedy clause because of WMC's gross negligence.   Accordingly, Dr. Mason's determination of rescissory damages is relevant and appropriate, and should not be stricken.

C.     Rescissory Damages Are an Appropriate Calculation of the Separate Trustee's Damages Arising from Its Failure to Notify Claim.

Rescission is appropriate where, as here, the sheer extent of a defendant's breaches vitiate the essential underlying purpose of the contract.   *See Wiljeff, LLC v. United Realty Mgmt. Corp.,*

82 A.D.3d 1616, 1617 (4th Dep't 2011) ("rescission of a contract is permitted for such a breach as substantially defeats its purpose"); *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (rescission available for breach "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract").[3]

Here, rescissory damages are warranted because WMC's conduct was tantamount to a repudiation of the contract.



(October 20, 2017 Declaration of Kathryn E. Wilhelm in Support of Plaintiff TMI Trust Company's Memorandum in Opposition to WMC Mortgage LLC's Motion *in Limine* to Partially Exclude Expert Damages Testimony of Dr. Joseph Mason ("Wilhelm Decl."), Ex. A, Expert Report of David E. Abshier, dated August 19, 2016 ("Abshier Report") at ¶ 106; *see also* Wilhelm Decl., Ex. B, Excerpts of the Deposition Transcript of David E. Abshier, dated Oct. 27, 2016 ("Abshier Tr.") at 170:5-15).

(Wilhelm Decl., Ex. A, Abshier Tr. at 62:5-63:14, 172:3-11).

WMC simply abrogated its contractual duties both by failing to notify the Separate Trustee of even a single breach, and by failing to repurchase even a single loan.

WMC incorrectly alleges that Dr. Mason's rescissory damages calculation fails to account for causation.  A claim for rescission seeks to declare the contract void and restore the parties to

---

[3]   It is well established under New York law that the Court has the equitable authority to award rescissory damages in lieu of rescission.  *See Syncora Guara. Inc. v. Countrywide Home Loans, Inc.*, 935 N.Y.S.2d 858, 870 (N.Y. Sup. Ct. 2012) (under the "court's power to award relief," rescissory damages were appropriate where rescission was impractical).

the *status quo ante*; there is no concept of "contribution" or "alternative causation."  To the extent

that WMC believes that the Servicers exacerbated losses for loans in the Trust, WMC may sue the

Servicers for contribution or indemnification.  The sheer number of breaching loans in the Trust,

coupled with WMC's repeated failure to notify the Separate Trustee of material breaches of its

representations and warranties or to repurchase a single breaching loan, constitute a wholesale

repudiation of the contract, thus warranting rescissory damages.[4]

## II.   DR. MASON'S REPURCHASE DAMAGES CALCULATIONS ARE FULLY CONSISTENT WITH THE REPURCHASE PRICE FORMULA IN THE PSA.

### A.   Dr. Mason's Calculation of Repurchase Damages Is Consistent with the Repurchase Price Formula in the PSA.

Dr. Mason's calculation of repurchase damages does not depart from the PSA's

Repurchase Price formula.[5]  Dr. Mason calculated the Repurchase Price based on the breach rate

determined by Mr. Payne's re-underwriting review of the Sample, which was generated by the

Separate Trustee's statistical expert, Dr. Nelson Lipshutz. ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[4]   The testimony of WMC's servicing expert, Brian Olasov, on after-the-fact servicing and change-of-life events continues to be irrelevant, and should still be excluded even though rescissory damages are relevant and admissible.  As set out in the Separate Trustee's Motion *in Limine*, mitigation and alternative causation are irrelevant when calculating repurchase damages governed by the Repurchase Price provision in the PSA.  (ECF No. 180).  These points are also irrelevant when calculating rescissory damages, as the very premise of rescissory damages is that WMC is at fault for abrogating the contract, and that the damages should place the parties as they were as if the transaction was unwound.

[5]   The Separate Trustee is also entitled to recover expenses incurred by the Separate Trustee and the Trust to enforce WMC's obligations under the PSA, including attorneys' fees and costs.  New York courts recognize that a repurchase price that is defined to encompass "any expenses arising out of the enforcement of the repurchase obligation" is properly construed to include attorneys' fees and costs, given that the "enforcement of a contract . . . often requires litigation." *LaSalle Bank Nat'l Ass'n v. CAPCO Am. Securitization Corp.*, No. 02-cv-9916, 2005 WL 3046292, at *6 (S.D.N.Y. Nov. 14, 2005); *see also Mun. Capital Appreciation Partners I, L.P. v. Page*, No. 00-cv-8138, 2002 WL 483510, at *9 (S.D.N.Y. Mar. 19, 2002) (holding "all collection and enforcement costs" includes attorneys' fees). ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████  (Hellman Decl., Ex. D,
Mason Report ¶ 58).

████████████████████████      (Hellman Decl., Ex. D, Expert Report of Dr. Joseph R. Mason,

May 20, 2016 ("Mason Report") at ¶ 56). ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████      (Wilhelm Decl., Ex. C, Excerpts of the Deposition Transcript of Dr.

Joseph R. Mason, Ph.D., dated October 11, 2016, ("Mason Tr.") at 250:8-13). ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████      And WMC has shown none.

    B.    <u>Dr. Mason Appropriately Calculated the Repurchase Price for Liquidated Loans</u>

The case law completely supports Dr. Mason's inclusion of liquidated loans in calculating the Repurchase Price.  Under New York law, courts have consistently held that, because liquidated or foreclosed loans are no longer subject to specific performance, courts may award the monetary damages equivalent of the repurchase remedy as a substitute remedy.  *See e.g.*, *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 415 (S.D.N.Y. 2016); *see also Nomura Home Equity Loan, Inc*, 133 A.D. at 106 ("[C]ourts have repeatedly held that . . . where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy.") (internal quotation omitted).  In the RMBS context, "while a provision providing for equitable relief as the 'sole remedy' will generally foreclose alternative relief, 'where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy.'"  *Bank of New York Mellon v. WMC Mortg., LLC*, No. 12-cv-7096 DLC, 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (*quoting Doyle v. Allstate Ins. Co.,* 1 N.Y.2d 439, 443 (1956)).

- 8 -

Damages in equity should equate to the repurchase amount. *U.S. Bank Nat. Ass'n v. DLJ Mortg. Capital, Inc.*, 42 Misc. 3d 1213(A), 984 N.Y.S.2d 635 (N.Y. Sup. Ct. 2014), *aff'd*, 121 A.D.3d 535, 995 N.Y.S.2d 11 (2014); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, No. 6533994/2012, 2014 WL 1384490, *5, 2014 N.Y. Slip Op. 30927(U) (N.Y. Sup. Ct. Apr. 4, 2014). Indeed, courts have recognized that, if liquidated or foreclosed loans were not subject to repurchase or an alternative remedy, the sponsor "would be perversely incentivized to fill the Trust with junk mortgages that would expeditiously default so that they could be Released, Charged Off, or Liquidated before a repurchase claim [could be] made." *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 965 N.Y.S.2d 844, 850 (N.Y. Sup. Ct. 2013), *rev'd on other grounds*, 112 A.D.3d 522 (2013), *aff'd*, 25 N.Y.3d 581 (2015); *see also Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 504 (S.D.N.Y. 2013) ("Indeed, foreclosure cannot be an alternative to a repurchase remedy for non-conforming loans of which DBSP breached its RWs; this implication would give DBSP the ability to frustrate the Trust's repurchase remedy by delaying or refusing to repurchase the breaching Mortgage Loans until the servicer had, in mitigation of the Trust's losses, foreclosed on them.").

The PSA's express language fully supports Dr. Mason's inclusion of Liquidated Loans in the calculation of the Repurchase Price. Under New York law, "agreements are to be construed in accordance with the parties' intent," and "the best evidence" of intent "is what they say in their writing." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) (citation omitted). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). Where a contract was "negotiated between sophisticated, counseled business people negotiating at arm's length . . . courts should be extremely reluctant to interpret

an agreement as impliedly stating something which the parties have neglected to specifically include." *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (internal quotations and citations omitted).

The PSA defines "Repurchase Price" as follows:

> "With respect to any Mortgage Loan, an amount equal to the sum of (i) the unpaid principal balance of such Mortgage Loan as of the date of repurchase, (ii) interest on such unpaid principal balance of such Mortgage Loan at the Mortgage Rate from the last date through which interest has been paid to the date of repurchase, (iii) all unreimbursed Servicing Advances and (iv) all expenses incurred by the Trustee arising out of the Trustee's enforcement of the applicable Person's repurchase obligation hereunder or under the Sponsor Representation Letter."

(Hellman Decl., Ex. B, PSA § 1.01).  Thus, the main component of the Repurchase Price is the "unpaid principal balance" of a Mortgage Loan.  The PSA does not define the term "unpaid principal balance."  However, "unpaid principal balance" is used in the definition of "Realized Losses," to include the "unpaid principal balance of such <u>Liquidated</u> Mortgage Loan."[6]  (Hellman Decl., Ex. B, PSA § 1.01) (emphasis added).  As such, the PSA explicitly contemplates that a "Liquidated Mortgage Loan" would have an unpaid principal balance, equal to the difference between the principal balance outstanding at the time of liquidation and the proceeds recovered from foreclosure.  Therefore, the Separate Trustee is entitled to the amounts that Dr. Mason calculated in his Expert Report for Liquidated Mortgage Loans.

---

[6]   "Realized Losses" is defined as "With respect to any date of determination and any Liquidated Mortgage Loan, the amount, if any, by which (a) the unpaid principal balance of such Liquidated Mortgage Loan together with accrued and unpaid interest thereon exceeds (b) the Liquidation Proceeds with respect thereto net of the expenses incurred by the Servicer in connection with the liquidation of such Liquidated Mortgage Loan and net of the amount of unreimbursed Servicing Advances with respect to such Liquidated Mortgage Loan."  (Hellman Decl., Ex. B, PSA § 1.01).

WMC's reliance on *Bank of N.Y. Mellon v. WMC* is completely misplaced.  There, the main component of "Purchase Price" was "Stated Principal Balance";[7] the PSA, explicitly provided -- unlike here -- that the Stated Principal Balance of a liquidated mortgage loan is "zero."  (Wilhelm Decl., Ex. D, BONY PSA, § 1.01;[8] *see also* Hellman Decl., Ex. A, Cote Slip Op. at 16 ("After liquidation . . . the Purchase Price starts at zero because the Trust has received liquidation proceeds, but WMC has still guaranteed the reimbursement of certain other expenses.")).  In that regard, the PSA in the BONY case is completely distinguishable from the PSA in the instant litigation, which does <u>not</u> define "unpaid principal balance" to be "zero" for liquidated loans.[9]  If a defined term is included in other contracts, its absence underscores that the parties purposefully chose not to include it in this one.  *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014) ("Even where there is ambiguity, if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission.  The maxim *expressio unius est exclusio alterius*, as used in the interpretation of contracts, supports precisely this conclusion."); *In re Ore*

---

[7]   In the PSA at issue in *BONY*, "Purchase Price" was defined as the sum of (i) 100% of the Stated Principal Balance, (ii) accrued interest on the Stated Principal Balance (and REO Imputed Interest for REO Properties), (iii) unreimbursed Servicing Advances and P&I Advances, (iv) amounts previously withdrawn from the Collection Amount, and (v) expenses reasonably incurred or to be incurred by the Servicer, the Trustee, or the NIMS Insurer in respect of the breach giving rise to the purchase obligation.  (Wilhelm Decl., Ex. D, Pooling and Servicing Agreement for Asset-Backed Pass-Through Certificates Series 2006-1, dated August 1, 2006 ("BONY PSA"), § 1.01).

[8]   In the PSA at issue in *BONY,* the "Stated Principal Balance" definition states: "as of any date of determination coinciding with or subsequent to the [date] on which the proceeds, if any, of a Liquidation Event with respect to such Mortgage Loan would be distributed, zero."  (Wilhelm Decl., Ex. D, BONY PSA § 1.01).

[9]   In the instant PSA, "Stated Principal Balance" is defined in relevant part as follows: "For purposes of any Distribution Date, the Stated Principal Balance of any Mortgage Loan will give effect to any scheduled payments of principal received by the Servicer on or prior to the related Determination Date or advanced by the Servicer for the related Remittance Date and any unscheduled principal payments and other unscheduled principal collections received during the related Prepayment Period, and *the Stated Principal Balance of any Mortgage Loan that has prepaid in full or has become a Liquidated Mortgage Loan during the related Prepayment Period shall be zero*."  (Wilhelm Decl., Ex. E, PSA § 1.01) (emphasis added).  This definition is incorporated into several definitions and substantive provisions, but is *not* incorporated into Repurchase Price.  (*See* Hellman Decl., Ex. B, PSA § 1.01)

*Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (where sophisticated drafter omits a term, *expressio unius* precludes the court from implying it from the general language of the agreement).



(Wilhelm Decl., Ex. F, Excerpts of the Deposition Transcript of Ronald F. Greenspan, dated October 19, 2016 ("Greenspan Tr.") at 127:3-129:13).

. (*Id.* at 111:15-112:6).

(Hellman Decl., Ex. F, Expert Report of Ronald F. Greenspan, dated August 19, 2016 ("Greenspan Report") at 27, n. 42).

.[10] (Wilhelm Decl., Ex. F, Greenspan Tr. at 133:17-134:11).

(*See* Wilhelm Decl., Ex. G, Excerpts of the Deposition Transcript of Ocwen Loan Servicing by and through its Designated Representative Nicole Gostebski, dated December 15,

---

[10]   In contrast to Mr. Greenspan, Dr. Mason did not determine "unpaid principal balance" based upon the instruction of counsel.  (Wilhelm Decl., Ex C, Mason Tr. at 241:2-5).  Instead, he calculated the "principal balance that remains unpaid" based upon "the amount owed prior to liquidation plus any write-downs that had occurred during the life of the loan."  (*Id.* at 240:9-25).

2015 at 153:8-11; Wilhelm Decl., Ex. H, Gostebski Exhibit 6 at 8).  Mr. Greenspan ignored these reports.

Accordingly, the materially different language between the PSA in *BONY* and the PSA here illustrates that the "unpaid principal balance" of a Liquidated Loan is not "zero" in this Trust.

C.   Dr. Mason Properly Included Anticipated Future Losses when Determining the Trust's Repurchase Damages.

WMC argues that reasonably anticipated future losses are not a component of the Repurchase Price under the PSA, and therefore should be excluded from Dr. Mason's calculations. However, such future losses are a necessary component of calculating repurchase damages, given that WMC has not repurchased any breaching loans – such that, as of the date of his report, Dr. Mason could reasonably expect that WMC would not repurchase any loans between the valuation date used in his report and trial.  Further, it is reasonably foreseeable that additional losses will accrue after the trial date occurs.  Therefore, future losses are an appropriate component of repurchase damages.  "In breach of contract cases generally, it has long been held that future damages are available upon appropriate proof."  *Fin. Guar. Ins. Co. v. Morgan Stanley ABS Capital I Inc.*, 54 Misc. 3d 1215(A), 54 N.Y.S.3d 610 (N.Y. Sup. Ct. 2017) (denying motion to dismiss claim for future damages in an RMBS monoline insurance case).  The Court has the discretion to fashion an appropriate remedy, instead of requiring the Separate Trustee to bring a separate claim in the future after those additional losses have accrued.[11]

---

[11]  In the alternative, the Separate Trustee would accept an order requiring indemnification going forward for any losses on breaching loans that occur after the trial.  Such a remedy is squarely within the four corners of the PSA. (*See* Hellman Decl., Ex. B, PSA §2.03(h) ("In addition to such repurchase or substitution obligation referred to in Section 2.03(d), the Responsible Party shall indemnify the Depositor, any of its Affiliates, the Servicer, the Trustee and the Trust and hold such parties harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses (including, without limitation, any taxes payable by the Trust) resulting from any third party claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach by the Responsible Party of any of its representations and warranties or obligations contained in this Agreement.")).

WMC incorrectly argues that, even assuming anticipated future losses should be included in calculating the Repurchase Price under the PSA, Dr. Mason has inflated his estimates. ▮

▮

▮ (Wilhelm Decl., Ex C, Mason Tr. at 206:5-6; *see also* Hellman Decl., Ex. D, Mason Report at App'x C). ▮

▮

▮ (Hellman Decl., Ex. D, Mason Report, App'x C at 42). The Motion cites no objective scientific, economic, or mathematical evidence or prior *Daubert* rulings to support WMC's claim that Dr. Mason's *methodology* is unreliable or not generally accepted as a mechanism for predicting future losses. *See* Motion at 26-28.

In any event, disagreements regarding the precise calculation of Future Losses, like many of WMC's other contentions, are an issue that WMC may inquire into during cross-examination at trial. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible."); *Campbell v. Metro. Prop. & Casualty Ins. Co.*, 239 F.3d 179 (2d Cir. 2001) ("To the extent that . . . there were gaps or inconsistencies in the reasoning [of the expert] . . . such arguments go to the weight of the evidence, not to its admissibility.") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)). Future damages must be reasonably certain, but "need not be determined with mathematical precision." *MBIA Ins. Corp. v. Morgan Stanley*. 42 Misc. 3d 1213(A), 984 N.Y.S.2d 633 (N.Y. Sup. Ct. 2011). "[I]n accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion" of an expert's testimony. *In re*

*Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 173 (S.D.N.Y. 2009).  Dr. Mason's calculation of anticipated future losses is entirely proper and should not be stricken.

        D.      <u>Dr. Mason Properly Included Losses from Loan Modifications when Determining the Repurchase Damages.</u>

WMC incorrectly argues that any decision by the Servicer to offer principal or interest forgiveness to a borrower should not be factored into the Repurchase Price.  However, this ignores the plain language of the PSA.  The Repurchase Price definition includes both "(i) the unpaid principal balance of such Mortgage Loan as of the date of repurchase [and] (ii) interest on such unpaid principal balance of such Mortgage Loan at the Mortgage Rate from the last date through which interest has been paid to the date of repurchase."  (Hellman Decl., Ex. B, PSA § 1.01).  Any principal or interest forgiven by the Servicer should properly be factored in when calculating the "unpaid principal balance" or interest on such "unpaid principal balance."

As with liquidated or foreclosed loans, excluding any principal or interest forgiven by the Servicer from repurchase damages would perversely incentivize WMC to fill the Trust with subpar loans, so that the Servicer would be forced to modify the loans quickly, thus ultimately decreasing any damages owed by WMC.  *See supra* at 9.  Crediting WMC's interpretation of how loan modifications affect the Repurchase Price of a loan would violate the principle that "[a] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectation of the parties."  *Greenwich Capital Fin. Prods. Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) (quotation omitted).  Dr. Mason's calculation of the Repurchase Price to include loan modifications is appropriate and should not be stricken.

- 15 -

## CONCLUSION

For the foregoing reasons, the Separate Trustee respectfully requests that the Court deny

WMC's Motion *In Limine* to Partially Exclude the Expert Testimony of Dr. Joseph R. Mason.

Dated: October 20, 2017

Respectfully submitted,

TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2

/s/ Harvey J. Wolkoff
Harvey J. Wolkoff (*phv* 01103)
Daniel V. Ward (*phv* 05850)
Kathryn E. Wilhelm (*phv* 08528)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7703
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
daniel.ward@ropesgray.com
kathryn.wilhelm@ropesgray.com

Thomas D. Goldberg (ct 04386)
Kevin C. Brown (ct 29774)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, Connecticut 06901
Tel.: (203) 977-7300
Fax: (203) 977-7301
tgoldberg@daypitney.com
kbrown@daypitney.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 20, 2017, the foregoing Memorandum in Opposition to WMC Mortgage LLC's Motion *in Limine* to Partially Exclude the Expert Testimony of Dr. Joseph R. Mason was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Kevin C. Brown
Kevin C. Brown