# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2),<br><br>                    Plaintiff,<br><br>      v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>                  Defendant. | Case No: 3:12-cv-01538-CSH<br><br><br><br><br><br><br><br><br><br><br>OCTOBER 20, 2017 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## WMC MORTGAGE LLC'S MOTION *IN LIMINE* TO EXCLUDE SAMPLING

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT................................................................................................................6

I.      WMC's Motion Should Be Denied as Contrary to Established Law of the Case...............6

II.     WMC's Motion Is, in Any Event, Meritless. ...................................................................7

III.    Courts Continue to Allow Sampling in the Vast Majority of RMBS Cases.....................11

CONCLUSION.............................................................................................................14

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods.*,
    965 N.Y.S.2d 844 (N.Y. Sup. Ct. 2013)........................................................................ 11, 12

*ACE Sec. Corp., Home Equity Loan Trust, Series 2007-HE1 v. DB Structured Prods., Inc.*,
    2013 WL 6153206 (N.Y. Sup. Ct. Nov. 21, 2013) .................................................................11

*ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*,
    5 F. Supp. 3d 543 (S.D.N.Y. 2014)...........................................................................................8

*Ali v. Mukasey*,
    529 F.3d 478 (2d Cir. 2008) .....................................................................................................6

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
    920 F. Supp. 2d 475 (S.D.N.Y. 2013) ........................................................................ 9, 10, 11

*BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 14-cv-09371 (KPF) (SN), 2017 WL 953550 (S.D.N.Y. Mar. 10, 2017).................*passim*

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*,
    No. 3:12-cv-00933 (CSH), 2014 WL 1289234 (D. Conn. Mar. 31, 2014) .............................3

*Deutsche Bank Nat. Trust Co. v. WMC Mortg., LLC*,
    No. 3:12-cv-1699 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2014).................................3

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    No. 11-cv-6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012)............................ 12, 13

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    104 F. Supp. 3d 441 (S.D.N.Y. 2015) ............................................................................... 9, 13

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    No. 11-cv-6201 (DLC), 2015 WL 685231 (S.D.N.Y. Feb. 13, 2015) ...................................13

*Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
    No. 15-1872-CV, 2017 WL 4293322 (2d Cir. Sept. 28, 2017) ..............................................13

*Fixed Income Shares: Series M v. Citibank N.A.*,
    130 F. Supp. 3d 842 (S.D.N.Y. 2015)................................................................................. 4, 6

*Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortg. Capital, Inc.*,
    No. 156016/12, 2014 WL 136499 (N.Y. Sup. Ct. Jan. 10, 2014)..........................................11

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
    729 F.3d 99 (2d Cir. 2013) ...................................................................................7, 11

*Law Debenture Tr. Co. of New York v. WMC Mortg., LLC*,
    No. 3:12-cv-1538 (CSH), 2017 WL 3401254 (D. Conn. Aug. 8, 2017).........................1, 5, 7

*Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC*,
    No. 3:12-cv-1538, 2015 U.S. Dist. LEXIS 173094 (D. Conn. Dec. 30, 2015) ......................4

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ...........................................................................................7

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    No. 14-cv-10104 (VEC), 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015) ...........................4, 6

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago v.*
    *Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ......................................................................................4, 9, 10

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
    No. 1:14-cv-6502 (GHW), 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016).......................4, 6, 11

*United States v. Americus Mortg. Corp.*,
    No. 4:12-cv-2676, 2017 WL 4083589 (S.D. Tex. Sept. 14, 2017)..................................12, 13

*United States v. Tenzer*,
    213 F.3d 34 (2d Cir. 2000) ...........................................................................................6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992).....................................................................................7, 11

*W. and S. Life Ins. Co. v. Bank of N.Y. Mellon*,
    No. A1302490, 2017 WL 3392855 (Ct. C.P. Ohio Aug. 4, 2017) .......................................10

*W. and S. Life Ins. Co. v. Bank of N.Y. Mellon*,
    No. A1302490, 2017 WL 3392856 (Ct. C.P. Ohio Aug. 4, 2017) .......................................10

*Wells Fargo I. BlackRock Allocation Target Shares: Series S Portfolio v. Wells*
    *Fargo Bank, Nat'l Ass'n*,
    No.10-cv-10067 (KPF) (SN), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017).......................10

*Zdanok v. Glidden Co.*,
    327 F.2d 944 (2d Cir. 1964) ...........................................................................................7

**Other Authorities**

Fed. R. Evid. 702 .......................................................................................................4

Plaintiff TMI Trust Company (the "Separate Trustee" or "TMI"), solely in its capacity as separate trustee of Securitized Asset Backed Receivables LLC Trust 2006-WM2 (the "Trust"), respectfully submits this memorandum in opposition to Defendant WMC Mortgage, LLC's ("WMC") motion *in limine* to exclude sampling (the "Motion").

## PRELIMINARY STATEMENT

In its ruling on WMC's motion for partial summary judgment, the Court explicitly allowed the Separate Trustee to "try to prove its case at trial by statistical sampling, and **reject[ed] WMC's efforts to prevent [TMI] from making that effort or limiting the number of loans that may be sampled.**"  *Law Debenture Tr. Co. of New York v. WMC Mortg., LLC*, No. 3:12-cv-1538 (CSH), 2017 WL 3401254, at *22 (D. Conn. Aug. 8, 2017) ("*WMC IV*") (emphasis added).  The Court also stated that its opinion construed WMC's motion for partial summary judgment as a motion *in limine* with respect to the sampling question.  *Id.* at *19.  Accordingly, WMC's motion *in limine* is actually a motion for reconsideration, and should be denied.

In an unavailing effort to breathe new life into its argument, WMC raises two cases that it calls "new authority."  As detailed *infra*, however, those cases are totally inapposite, involving claims against trustees of multiple trusts with differing sets of underwriting guidelines and governing agreements.  The first case is from the *Wells Fargo* litigation – a case that is not "new," but rather the subject of WMC's letter campaign to the Court in March and April 2017.  In its response letters, TMI explained why investor cases against the trustee are distinguishable from this Action, which is a repurchase case by a trustee, involving only one trust, against an originator.  The differences were apparently also evident to the *Wells Fargo* Court, which explicitly distinguished this action.  WMC's second "new authority" is a decision from a state trial court in Ohio.  Although that Court expressed skepticism about sampling, it did so in *dicta*

and relied only on other investor cases, including the *Wells Fargo* litigation.  These authorities offer nothing new, let alone a "change in controlling law."

In any event, sampling is alive and well in both the Second Circuit and in other jurisdictions.  For example, in a recent RMBS trial in federal court in Texas, the Court allowed the government to use sampling to prove both liability and damages.  Richard Payne, the government's re-underwriting expert (and the Separate Trustee's re-underwriting expert in the action here), successfully testified that he relied on the sampling work of the government's statistical expert to support his findings.  After a jury found the defendants liable, the Court awarded the government over $300 million in total damages.

In addition, the Second Circuit recently affirmed a bench trial opinion by Judge Cote in an RMBS securities fraud case.  Prior to trial, Judge Cote had authorized sampling based on the extraordinary costs associated with reunderwriting all of the loans at issue and the burdens associated with producing the loan files.  At trial, Judge Cote also approved of the methodologies employed by the plaintiff's statistical sampling expert.  On appeal, the Second Circuit affirmed Judge Cote's opinion, noting that she correctly relied on the sample in evaluating the work of the re-underwriting experts.

Because WMC's Motion regurgitates legal theories and cases that this Court has already considered and rejected, the Motion should be denied.[1]

## BACKGROUND

The record is littered with WMC's futile attempts to block the use of sampling in this case.  On February 8, 2013, WMC moved to dismiss the Complaint, arguing that the Separate

---

[1]   TMI hereby incorporates the arguments set forth in its opposition to WMC's motion for partial summary judgment (ECF No. 142), its letter dated March 27, 2017 (ECF No. 163), and its letter dated April 7, 2017 (ECF No. 165).

Trustee cannot enforce WMC's repurchase obligations because it "has not complied with the PSA's notice requirement as to any unknown loans." (ECF No. 39-1 at 11). In denying the motion to dismiss, this Court noted that sampling may be used as "acceptable proof at trial in establishing . . . liability." *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 3:12-cv-00933 (CSH), 2014 WL 1289234, at *12 (D. Conn. Mar. 31, 2014) ("*WMC I*").

At a June 2014 scheduling conference, WMC informed the Court that it did not "think sampling [wa]s appropriate." *Deutsche Bank Nat. Trust Co. v. WMC Mortg., LLC*, No. 3:12-cv-1699 (CSH), 2014 WL 3824333, at *7 (D. Conn. Aug. 4, 2014) ("*WMC II*") (quoting WMC's counsel). On July 22, 2014, the Separate Trustee filed a motion requesting that the Court determine on an expedited basis whether the Separate Trustee may use sampling as a method of proof at trial. (*See* ECF No. 60). In its August 4, 2014 decision on pretrial scheduling issues and sampling, the Court reiterated its view that "statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case." *WMC II*, 2014 WL 3824333, at *9.

Months later, on February 13, 2015, WMC filed a *Daubert* motion to exclude or, in the alternative, to limit the testimony of the Separate Trustee's statistical sampling expert, Dr. Nelson Lipshutz. *See* Hellman Decl.,[2] Ex. B (ECF No. 75). In its motion, WMC argued that the PSA's "sole remedy" provision precluded the Separate Trustee from using sampling to prove liability and damages. *Id.* at 10-11. In advance of the *Daubert* hearing, the Court issued a memorandum and scheduling order. *See* Hellman Decl., Ex. E (ECF No. 84). Having considered WMC's argument, the Court determined that WMC's "sole remedy" argument was ill-suited for a *Daubert* motion. *Id.* at 7. For the purposes of its *Daubert* decision, the Court

---

[2] "Hellman Decl." refers to the Declaration of Matthew S. Hellman in Support of WMC Mortgage LLC's Motion *in Limine* to Exclude Sampling. (ECF No. 184-2).

determined it would "assume without deciding that the sole remedy provisions in the PSAs do not operate to bar Dr. Lipshutz's opinions or otherwise render them inadmissible at trial." *Id.*

On December 30, 2015, this Court denied WMC's *Daubert* motion and held that Dr. Lipshutz's opinions satisfied the requirements of *Daubert* and Federal Rule of Evidence 702. *Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC*, 3:12-cv-1538 (CSH), 2015 U.S. Dist. LEXIS 173094, at *20-21 (D. Conn. Dec. 30, 2015) ("*WMC III*"). This Court rejected WMC's argument that Dr. Lipshutz's testimony should be excluded. *Id.* The Court reiterated that WMC's "sole remedy" argument "does not fall within this *Daubert* - Rule 702 exercise" and the question should be "reserved for later *in limine* motion practice." *Id.* at *21.

On December 16, 2016, WMC filed its motion for partial summary judgment, which again featured its "sole remedy" argument. *See* Hellman Decl., Ex. F (ECF No. 136). In support of its motion, WMC cited several investor actions brought against trustees under the inapposite Trust Indenture Act ("TIA"). *Id.* at 16 (citing *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842 (S.D.N.Y. 2015); *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14-cv-6502 (GHW), 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016); *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104 (VEC), 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015)).[3] After a hearing on the motion for summary judgment, WMC filed two letters, alerting the Court to "additional authority" that purportedly supported its anti-sampling position. (*See* ECF Nos. 161, 164). WMC's first letter, filed on March 23, 2017, raised a discovery opinion by Magistrate Judge Netburn in *Consolidated RMBS Trustee Litigation against Wells Fargo Bank, NA.*, Nos. 14-cv-09371, 14-cv-09764, 14-cv-10067, 14-cv-10102, and 15-cv-10033 (the "*Wells Fargo*

---

[3]    In its opposition to WMC's motion, the Separate Trustee distinguished and contextualized these cases, as well as a Second Circuit case, *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, which involved the issue of a named plaintiff's standing to assert breach-of-duty claims on behalf of absent class members against the trustee of a trust in which the plaintiff did not invest. 775 F.3d 154, 162 (2d Cir. 2014). (*See* ECF No. 142 at 19-20, n.13).

litigation") (ECF No. 161).   The Separate Trustee responded by letter dated March 27, 2017, explaining that the *Wells Fargo* litigation was inapposite, because it involved a group of investors who brought suit under the TIA against a trustee involving 53 different trusts.  (ECF No. 163 at 2).  Notably, in her discussion of sampling, Magistrate Judge Netburn explicitly distinguished the instant Action as a case in which sampling might well be appropriate. *BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-09371 (KPF) (SN), 2017 WL 953550, at *6 (S.D.N.Y. Mar. 10, 2017) ("*Wells Fargo I*").  WMC's second letter, filed on April 6, 2017, again addressed the same *Wells Fargo* litigation, except this time a decision by Judge Failla.  (ECF No. 164).  The Separate Trustee reiterated that the *Wells Fargo* litigation is irrelevant to this Action.  (ECF No. 165 at 1).

In a ruling on August 8, 2017, the Court denied WMC's motion for partial summary judgment.  *WMC IV*, 2017 WL 3401254, at *3.   The Court indicated that it was not necessary for WMC to file a separate motion *in limine* because "a partial summary judgment and a ruling *in limine* confer comparable relief" and either is "an appropriate procedural vehicle."  *Id*.  In fact, with respect to WMC's arguments about sampling, the Court noted that, "WMC's motion partakes more of an *in limine* motion than one for summary judgment."  *Id*. at *19.

Nevertheless, on October 6, 2017, WMC filed the instant motion *in limine* to exclude sampling based on the PSA's "sole remedies" provision.  (ECF No. 184).  WMC remains insistent that the Court review at trial each one of the approximately 5,162 loans at issue. Assuming only 20 minutes for each loan − a conservative estimate indeed − that would ensure approximately 1,720 hours of court time, or more than half a year.  WMC's argument is contrary to both established precedent and common sense.

- 5 -

**ARGUMENT**

WMC contends that it files the Motion (1) to "preserve" its "sole remedy" argument for appeal, and (2) to direct the Court to "new authority" in support of its anti-sampling position. Mem. in Supp. of Motion at 1, 3 (ECF No. 184-1) ("Sampling Mem."). Neither rationale justifies the filing of this gratuitous Motion.

## I.   WMC'S MOTION SHOULD BE DENIED AS CONTRARY TO ESTABLISHED LAW OF THE CASE.

Under the law of the case doctrine, a district court should not "revisit[] its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (citing *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). WMC offers neither cogent nor compelling reasons for the Court to reconsider its decision on sampling.

WMC acknowledges that it has been arguing about the significance of the "sole remedy" provision since at least February 2015, when it filed its *Daubert* motion against Dr. Lipshutz. Sampling Mem. at 1-3. After the Court informed WMC that its "sole remedies" argument was ill-suited for a *Daubert* motion, WMC tried again in its motion for partial summary judgment. This time, WMC cited a smattering of TIA investor cases brought against trustees. *See* Hellman Decl., Ex. F (ECF No. 136 at 16) (citing *Fixed Income*; *Royal Park*; *Phoenix Light*). Prior to the hearing on its motion for partial summary judgment, WMC filed two additional letters to notify the Court of recent decisions in another investor case against a trustee, the *Wells Fargo* litigation. (*See* ECF Nos. 161, 164). Thus, by the time this Court issued its summary judgment ruling in August 2017, it had been familiar with WMC's "sole remedy" argument for at least two-and-a-half years.

WMC insists the Motion is necessary because it "has not previously expressly moved *in limine* on this issue." Sampling Mem. at 3. But the Court stated in its summary judgment ruling that it was "constru[ing] this [sampling] aspect of WMCs motion as a motion *in limine* whose purpose is to test the propriety of the proffered sampling evidence at the trial." *WMC IV*, at *21. The Court emphasized that "[t]his *in limine* pre-trial Ruling allows [TMI] to try to prove its case at trial by statistical sampling, and rejects WMC's efforts to prevent [TMI] from making that effort or limiting the number of loans that may be sampled." *Id.*

Therefore, WMC's motion *in limine* should be denied as contrary to established law of the case.

## II.     WMC'S MOTION IS, IN ANY EVENT, MERITLESS.

Stripped of all pretext, the Motion is nothing more than a request for the Court to reconsider its summary judgment ruling with respect to sampling. The Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case[.]" *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (explaining that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (citing *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). Therefore, a court will not reconsider its earlier decisions unless "the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). WMC has not carried this burden.

WMC presents no new controlling (or even relevant) precedent in support of its motion. Instead, WMC cites two trial court opinions, again involving investor suits against trustees. The

first is yet another decision from the *Wells Fargo* litigation, already the subject of two letters that WMC has previously sent to the Court.  (*See* ECF No. 161 (discussing Magistrate Judge Netburn's sampling opinion in the *Wells Fargo* litigation); ECF No. 164 (discussing Judge Failla's motion to dismiss opinion in the *Wells Fargo* litigation).)

After WMC first touted the *Wells Fargo* litigation in its March 23 letter, the Separate Trustee explained the fundamental distinctions between investor actions against trustees and the case before Your Honor.  (ECF No. 163.)  First, the relationship between the plaintiff and defendant is materially different.  In an investor action, the defendant's status as trustee (as opposed to originator) means it is unlikely to have actual knowledge of breaches in the trust absent notice or contractual events of default.  As a result, PSAs typically give trustees a "limited role," absolving them of the responsibility to review or investigate the loans.  *Wells Fargo I*, 2017 WL 953550, at *7.  By contrast, in the instant action, WMC's status as originator means it had access to all loan files and loan information, made the decisions to fund the loans at issue, and conducted the primary due diligence on the loans before selling them to the sponsor.  As the party that originated and/or underwrote every loan in the Trust, WMC was "uniquely positioned" to be aware of breaches at origination.  *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 563 (S.D.N.Y. 2014).

Second, the efficiencies of sampling are greater in a repurchase case like this action, than in an investor case against a trustee.  In *Wells Fargo I*, Magistrate Judge Netburn acknowledged that "[i]n general, statistical sampling is an accepted method of proving liability" in RMBS cases.  2017 WL 953550, at *3.  Against this backdrop, she nonetheless determined that sampling was not appropriate in the case before her, which involved investors suing the trustee of 53 different trusts, with many different underwriting guidelines, and numerous (and differing)

sponsors, originators, and servicers.  *Id.* at *6.  In so holding, Judge Netburn distinguished as "inapposite" the many RMBS cases that have allowed sampling.  *Id.* (citing, *inter alia*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441 (S.D.N.Y. 2015) ("*FHFA III*"); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, No. 11-cv-6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ("*FHFA I*"); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 489 (S.D.N.Y. 2013); and *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. 09-cv-3106 (PAC), 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011)).  Indeed, with respect to the action before Your Honor, the Court indicated that sampling would be appropriate because the case "hinge[s] on a trustee plaintiff suing a loan sponsor on the ground of pervasive breach."  *Id.*

Finally, in her ruling on sampling, Magistrate Judge Netburn relied heavily on the Second Circuit's decision in *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014).  *Retirement Board* was a putative class action by investors in 530 trusts against Bank of New York Mellon, which acted as the trustee.  *Id.* at 156.  The issues on appeal were (1) whether investors/plaintiffs across multiple RMBS trusts who sued a trustee under the TIA had standing to sue with respect to trusts in which they had no investment, and (2) whether the TIA could impose obligations on the trustee beyond those in the PSA.  In ruling in the negative on both issues, the Second Circuit explained that the plaintiffs failed to adequately allege that the trustee's "illegal conduct . . . implicate[d] the same set of concerns" as the trustee's conduct with respect to trusts in which they did not invest.  *Id.* at 161.  In such circumstances, the plaintiffs would have to prove the alleged misconduct "loan-by-loan and trust-by-trust."  *Id.* at 162-63.  Since the named plaintiff lacked a personal stake in the claims arising out of the other trusts, sampling could not cure the defect.  *Id.*  The Court found

that the plaintiffs' sampling proposal "fundamentally misses the point of the class standing inquiry." *Id.*  The Court noted that the plaintiffs were not able to cite any case in which "a single sample of loans taken from hundreds of trusts was used to prove a defendant's liability with respect to each of those trusts." *Id.* at 162 n.6.  However, the Court acknowledged that "district courts have sometimes permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts." *Id.* (citing *Flagstar Bank,* 920 F. Supp. 2d at 486–87).  Thus, the Court implied that sampling would be acceptable in a case like the instant action.

In its Motion, WMC cites as its first "new authority" an August 2017 decision by Judge Failla in the *Wells Fargo* litigation, which affirmed Magistrate Judge Netburn's decision in *Wells Fargo I.  BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n,* No.10-cv-10067 (KPF) (SN), 2017 WL 3610511, at *10-11 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo II*").  There, Judge Failla agreed with Judge Netburn that sampling would not be efficient in the case before her. *Id.*  However, she also agreed that in "other cases, sampling has been sufficiently useful to justify its burden and expense." *Id.* at *11.  Thus, Judge Failla's decision breaks no new ground.

WMC's second "new" case fares no better, as it is simply another investor suit against a trustee of 31 trusts, this time in the Ohio Court of Common Pleas.  *See W. and S. Life Ins. Co. v. Bank of N.Y. Mellon* ("*Western* Findings of Fact and Conclusions of Law"), No. A1302490, 2017 WL 3392855 (Ct. C.P. Ohio Aug. 4, 2017); *W. and S. Life Ins. Co. v. Bank of N.Y. Mellon* ("*Western* Trial Order"), No. A1302490, 2017 WL 3392856 (Ct. C.P. Ohio Aug. 4, 2017).  As WMC concedes, the Ohio court did not need to reach the issue of sampling, so any discussion on that point is *dicta*.  *See* Sampling Mem. at 5.  As with other investor cases against trustees, the Ohio court noted that the use of sampling would be "impermissible" because plaintiffs would be

- 10 -

required to prove their case "loan-by-loan" and "trust-by-trust."  *Western* Findings of Fact and Conclusions of Law at *10.  Unsurprisingly, the Ohio court cited *Retirement Board*, the *Wells Fargo* litigation, and *Royal Park* in support of its conclusion that sampling was inappropriate in a case against a trustee.  *Id.*; *see also* Western Trial Order at *4.  As each of the Courts in those cases have acknowledged, the instant action stands on different "factual footing."  *See, e.g.*, *Wells Fargo I*, 2017 WL 953550, at *6.  WMC's Motion does not come close to meeting the high bar imposed by Rule 54(b).

## III.  COURTS CONTINUE TO ALLOW SAMPLING IN THE VAST MAJORITY OF RMBS CASES.

WMC's two "new" investor cases against trustees represent more of the same, rather than a "change in controlling law."  *Kolel*, 729 F.3d at 104 (quoting *Virgin*, 956 F.2d at 1255).  In fact, outside of investor suits against trustees, courts have consistently allowed statistical sampling in cases involving similar repurchase protocols, including those with "sole-remedies" provisions.  *See* Declaration of Kathryn E. Wilhelm ("Wilhelm Decl."), Ex. A (*SACO I Trust 2006-5 v EMC Mtge. LLC*, No. 651920/2012 (Sup. Ct. NY December 2, 2015) (Bransten, J.) (Hearing Tr. at 15:12-16)) (holding that the PSA's "sole remedy" provision "does not bar sampling as a vehicle for proof"); *Flagstar*, 920 F. Supp. 2d at 512 (approving sampling despite a sole-remedies clause and its related repurchase protocol); *ACE Sec. Corp., Home Equity Loan Trust, Series 2007-HE1 v. DB Structured Prods., Inc.*, 2013 WL 6153206, at *2 n.3 (N.Y. Sup. Ct. Nov. 21, 2013) (noting that statistical sampling could be used, regardless of controlling documents' binding repurchase protocol); Wilhelm Decl., Ex. B (Interim Order, *Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortg. Capital, Inc.*, No. 156016/2012 (N.Y. Sup. Ct. Nov. 19, 2013) ("*DLJ Mortgage*")) (allowing sampling as proof of liability and damages because sampling "would streamline the trial, promote judicial economy, and conserve the resources of

the parties and the court");[4] *ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods.*, 965 N.Y.S.2d 844, 851 (N.Y. Sup. Ct. 2013) (holding that sampling could be used, despite a binding repurchase protocol, provided the "sampling mechanism . . . meaningfully reflects the PSA's damages calculation"), *rev'd on other grounds*, 977 N.Y.S.2d 229 (1st Dep't 2013).

Moreover, recent trial decisions confirm the efficiency of sampling in RMBS cases against sellers and originators.  For example, in *United States v. Americus Mortg. Corp.*, the government brought claims in Texas federal court against two loan originators and their executives under the False Claims Act ("FCA") and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") for allegedly deceiving investors about the quality of RMBS securities.  No. 4:12-cv-2676, 2017 WL 4083589, at *1 (S.D. Tex. Sept. 14, 2017) ("*Allquest* JMOL Order").  As noted, the jury heard testimony from Mr. Payne, the government's re-underwriting expert (and the Separate Trustee's re-underwriting expert in the instant action). *Id.* at *4.  At the end of the five-week trial, the jury held defendants liable for multiple violations of the FCA and FIRREA.  *See* Wilhelm Decl., Ex. C (Mem. & Op. at 1, *United States v. Americus Mortg. Corp.*, No. 4:12-cv-2676 (S.D. Tex. Sept. 14, 2017) (Post-Trial Damages Op.)). In denying defendants' motion for a new trial, the Court confirmed that Payne's testimony would "help the jury to understand the evidence in a large-scale mortgage fraud case" but also that Payne's methodology – "which included his reliance on data produced from statistical sampling and the subsequent extrapolation of his findings - rested on a reliable foundation."  *See* Wilhelm Decl., Ex. D (Mem. & Op. at 3, *United States v. Americus Mortg. Corp.*, No. 4:12-cv-2676 (S.D.

---

[4]   While this Interim Order does not mention any "sole remedy" clause, other orders demonstrate that such provisions exist in the controlling agreements for the trusts at issue in *DLJ Mortgage*. *See, e.g., Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortg. Capital, Inc.*, No. 156016/12, 2014 WL 136499, at *8 (N.Y. Sup. Ct. Jan. 10, 2014) ("DLJ argues that under the sole-remedy provision in … the PSAs …, the Trusts are precluded from seeking any remedy other than the cure or repurchase of defective Loans.").

Tex. Sept. 14, 2017) (New Trial Op.))  As the Court explained, "[t]his methodology has been widely adopted by the Fifth Circuit as well as other circuits in cases involving a large amount of data." *Id.* (collecting cases).

The defendants then moved for judgment of a matter of law, arguing in part that there was "no basis" for the government to determine damages through extrapolation. *Allquest* JMOL Order, 2017 WL 4083589, at *3.  The Court rejected this argument, reiterating that sampling has been widely accepted in the Fifth Circuit and beyond. *Id.* at *4.  Accordingly, the Court awarded the government over $260 million in damages as against one originator and $25 million as against the other on the basis of statistical sampling.  *See* Wilhelm Decl., Ex. E (Judgment at 2, *United States v. Americus Mortg. Corp.*, No. 4:12-cv-2676 (S.D. Tex. Sept. 29, 2017)).

In another recent decision, the Second Circuit affirmed Judge Cote's bench trial opinion in *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, an RMBS case brought by FHFA, as conservator for Fannie Mae and Freddie Mac, against underwriters and sponsors in 7 securitizations.  No. 15-1872-CV, 2017 WL 4293322 (2d Cir. Sept. 28, 2017) ("*FHFA IV*").  Prior to trial, Judge Cote authorized sampling based on "the tremendous costs associated with reunderwriting" the loans and "the burden that production of those loan files would impose, both on the parties to these cases and on scores of third-party loan-file custodians." *FHFA I*, 2012 WL 6000885, at *2.  The Court also denied defendants' *Daubert* motion to exclude certain testimony by FHFA's statistical sampling expert, Charles Cowan. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11-cv-6201 (DLC), 2015 WL 685231, at *1 (S.D.N.Y. Feb. 13, 2015) ("*FHFA II*").  At trial, Judge Cote found that Mr. Cowan's sampling and extrapolation methodologies were "sound and firmly established in the field of statistics." *FHFA III*, 104 F. Supp. 3d at 497.  In affirming Judge Cote's trial opinion, the Second

Circuit did not specifically rule on the use of sampling or Mr. Cowan's methodologies (as defendants did not appeal those issues), but stated that the district court was allowed to rely on the sample in evaluating the work of the re-underwriting experts.  *FHFA IV*, 2017 WL 4293322, at *41 (holding that the Court was permitted to "cred[it]" the analysis of FHFA's reunderwriting expert that "at least 45% of the loans in the SLGs were originated with underwriting defects").

Thus, sampling remains the preferred method of proving liability and damages in RMBS cases like this one.

## CONCLUSION

For the foregoing reasons, the Separate Trustee respectfully requests that the Court deny WMC's Motion *In Limine* to Exclude Sampling.

Dated: October 20, 2017

Respectfully submitted,

TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2

/s/ Harvey J. Wolkoff
Harvey J. Wolkoff (*phv* 01103)
Daniel V. Ward (*phv* 05850)
Kathryn E. Wilhelm (*phv* 08528)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7703
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
daniel.ward@ropesgray.com
kathryn.wilhelm@ropesgray.com

Thomas D. Goldberg (ct 04386)
Kevin C. Brown (ct 29774)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, Connecticut 06901
Tel.: (203) 977-7300
Fax: (203) 977-7301
tgoldberg@daypitney.com
kbrown@daypitney.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2017, the foregoing Memorandum in Opposition to WMC Mortgage LLC's Motion *in Limine* to Exclude Sampling by WMC was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ Kevin C. Brown
Kevin C. Brown