UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2),<br><br>      Plaintiff,<br><br>  v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>      Defendant. | Case No: 3:12-cv-01538-CSH<br><br><br><br><br><br><br><br><br><br><br><br>November 3, 2017 |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY OF WMC'S EXPERT WITNESSES**

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................... 1

I.     Certain Testimony of Dr. Leamer Should Be Excluded. ....................................... 1

II.    Certain Testimony of David Abshier Should Be Excluded. .................................. 4

A.     ████████████████████████████████████████████ ................. 4

B.     ████████████████████████████████████ ............................................ 6

C.     WMC Fails to Justify Mr. Abshier's Speculative Opinions ................................. 7

III.   Certain Testimony of Brian Olasov Should Be Excluded. .................................... 8

A.     Causation and Mitigation Testimony Are Legally Irrelevant to the Calculation of Both "Repurchase" and "Rescissory" Damages ........................ 8

B.     Mr. Olasov's Testimony Is Not Based on a Reliable Methodology. ................... 9

CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aon Fin. Prods. v. Societe Generale*,
  476 F.3d 90 (2d Cir. 2007).................................................................................................5

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  920 F. Supp. 2d 475 (S.D.N.Y. 2013)..................................................................................8

*Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
  No. 11-civ-505CMGWG, 2017 WL 698607 (S.D.N.Y. Feb. 10, 2017).....................................9

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
  2012 U.S. Dist. LEXIS 173768 (S.D.N.Y. Dec. 3, 2012) ........................................................3

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  104 F. Supp. 3d 441 (S.D.N.Y. May 11, 2015) ..........................................................2, 4, 5, 6

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  74 F. Supp. 3d 639 (S.D.N.Y. 2015).....................................................................................7

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
  No. 0603339/2003, 2006 WL 6916430 (Sup. Ct. N.Y. Cnty. Sept. 6, 2006),
  *aff'd as modified on other grounds*, 47 A.D.3d 103 (1st Dep't 2007).......................................8

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290, 311 (2d Cir. 2008 ..........................................................................................8

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010) ..................................................................2

*Sparta Commercial Servs., Inc. v. DZ Bank*,
  680 F. App'x 17 (2d Cir. 2017) ............................................................................................8

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,
  205 F. Supp. 3d 386 (S.D.N.Y. 2016).............................................................................. *passim*

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011).........................................9

The Separate Trustee respectfully submits this reply memorandum in further support of its motion *in limine* to exclude certain testimony of WMC's expert witnesses Edward Leamer, David Abshier and Brian Olasov. WMC's opposition fails to save these three experts' inadmissible opinions, and this Court should accordingly exclude them.

<u>With respect to Dr. Leamer</u>: WMC's strategy is to minimize Dr. Leamer's inadmissible opinion ███████████████████████████████████████████████████████████████████████████████████ ███ Notably, Judge Rakoff disallowed a similar opinion of a statistical expert on the grounds that it was nothing more than "a legal issue" dressed up as an expert's opinion.

<u>With respect to Mr. Abshier</u>: WMC tries to excuse Mr. Abshier's █████████████ ████████████████████████████████████████ In fact, as in *U.S. Bank*, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

<u>With respect to Mr. Olasov</u>: His opinions have absolutely no relevance to the issues in this litigation, but rather concern ████████████████████████████████████████████████████████████████████████████ Admitting Mr. Olasov's testimony would create an unnecessary sideshow ████████████████████████

**ARGUMENT**

I.   **CERTAIN TESTIMONY OF DR. LEAMER SHOULD BE EXCLUDED.**

WMC mistakenly asserts that Dr. Leamer's opinion at issue here is only a "narrow slice" of Dr. Leamer's first expert report. WMC's Mem. in Opp. to TMI's Mot. *in Limine* to Exclude

Certain Testimony of WMC's Expert Witnesses ("WMC's Opp.") at 6 (ECF No. 200). ▮

▮

▮ The Separate Trustee's motion *in limine* is thus directed at Dr. Leamer's entire first report, not a "narrow slice."

WMC confronts Dr. Leamer's inadmissible opinion by: (1) avoiding that his opinion is on a legal, not statistical, issue and ▮ ▮ (2) circling around the actual cost and court time required to address more than a thousand additional loans; and (3) ignoring that he conducted no analysis of his own.

Dr. Leamer opines that ▮. But this is an inadmissible legal argument shrouded in the cloak of an expert opinion, as Judge Rakoff decided:

> Q. Now, as an expert in the statistics field testifying here in federal court, do you believe that a 95 percent confidence level and 5 percent confident interval is appropriate in determining the amount of damages in this case of $180 million.
> MR. BURNS: Objection, your Honor.
> THE COURT: Sustained. ***It is really a legal issue***.

Reply Decl. of Daniel V. Ward in Supp. of Pltf.'s Mot. ("Ward Reply Decl."), Ex. A, *Assured Guaranty Mun. Corp. v. Flagstar Bank, FSB, et al.*, No. 11 Civ. 2375 (S.D.N.Y. Oct. 12, 2012) (Rakoff, J.), Trial Tr. at 285:17-22 (emphasis added). Consistent with Judge Rakoff's evidentiary ruling, Dr. Leamer should not be permitted to offer a legal opinion disguised as an expert opinion that has nothing to do with statistics.

WMC does not – and could not – deny that the use of a ±5% margin of error is a standard practice in RMBS cases. *See, e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 494 n. 76 (S.D.N.Y. May 11, 2015) ("*FHFA II*"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *5 (N.Y. Sup. Ct. Dec. 22, 2010). In fact, courts have

allowed use of a 10% margin of error. *See, e.g., Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 U.S. Dist. LEXIS 173768, *60 (S.D.N.Y. Dec. 3, 2012) ("*FHFA I*"). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

WMC next argues that Dr. Leamer's opinion regarding the reliance on the overall damages at issue in constructing the sample size is supported by the purported "low cost" of a larger sample. WMC Opp. at 6 ("[T]he cost of obtaining a larger sample in this case was low relative to the value of the increased accuracy it would yield."). First, as noted above, that point is irrelevant, even if true. And it is not true. WMC suggests that the additional cost of reviewing 1,500 loans – ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ – would be $330,000 to $440,000, which WMC refers to as "modest." *Id.* at 1. Yet Dr. Leamer conceded that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉ And that figure does not account for the additional legal fees, or the additional court time that would ensue. For example, if just 30 minutes were spent in court presenting and cross-examining the issues on each additional loan, that would consume months of additional court time.

Finally, although WMC touts his credentials as a statistician, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Because he performed no analysis of his own, Dr. Leamer's opinion is not only inadmissible, but also irrelevant and of no aid to the trier of fact.

3

## II. CERTAIN TESTIMONY OF DAVID ABSHIER SHOULD BE EXCLUDED.

### A.  ███████████████████████████████████

Courts in the Second Circuit have universally held that a re-underwriting expert may not consider an exception to a loan in breach unless the loan originator "provid[ed] some record of the exception's existence and the basis for exercising it" at origination.  *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 451 (S.D.N.Y. 2016); *FHFA II*, 104 F. Supp. 3d at 524.  WMC attempts to distinguish the decisions of Judges Castel and Cote on this issue, asserting that "those cases concerned underwriting guidelines that *required* the originator to document any compensating factors warranting an exception from the guidelines."  WMC Opp. at 15 (emphasis in original).  This is not so.  Judge Castel actually interpreted the language in the *PSA* (not the guidelines) – which warranted that exceptions to the underwriting guidelines were "exercised in a reasonable manner" – to require "some indication in the loan file that an exception was actually considered and granted by the Originator."  *U.S. Bank*, 205 F. Supp. 3d at 447-49.

The PSA here is no different.  The PSA requires that at the time of origination, WMC "*made* a reasonable *determination*" about the borrower's ability to repay (emphases added):

> (lll) Underwriting Methodology. … The methodology employed objective criteria that related such facts as, without limitation, the Mortgagor's credit history, income, assets or liabilities, to the proposed mortgage payment and, based on such methodology, the Mortgage Loan's *originator made a reasonable determination* that at the time of origination the Mortgagor had the ability to make timely payments on the Mortgage Loan. . . . This representation and warranty is a Deemed Material and Adverse Representation.

Ward Decl., Ex. F, PSA at Sched. III(lll) (emphasis added).  The PSA thus requires the originator to *actually* "ma[k]e a reasonable determination" of the borrower's ability to repay.  The words "made" and "determination" are analogous to the word "exercise" in *U.S. Bank*; as Judge Castel held, there must be "some indication [of that determination] in the loan file."  *U.S. Bank*, 205 F.

Supp. 3d at 449; *see also FHFA II*, 104 F. Supp. 3d at 459. ████████████

████████████████████████████████████████████████

███████████████████████████████. *U.S. Bank*, 205 F. Supp. 3d at 449.



██████████████████████████  As Judge Cote explained in *FHFA II*, "[d]ocumentation was critical so that supervisors and each of the units within an originator … could examine the file and determine what had been done." *FHFA II*, 104 F. Supp. 3d at 524.  In practical terms, documentation was also critical because the buyers of the loans would later "subject the loans and the loan files to due diligence" and confirm that "wh[ere] the strict letter of the guidelines was not followed, there were good and sufficient reasons at the time of origination for making an exception to the guidelines." *U.S. Bank*, 205 F. Supp. 3d at 451.[1]

Finally, WMC insists that ████████████████████████████████

████████████████████████████████████████████████ This critique is simply incorrect. As a conservative measure, ████████████████████████████████

---

[1] WMC also argues that *U.S. Bank* and *FHFA II* are distinguishable as post-trial opinions. *See* WMC Opp. at 15. However, in light of the rulings in *U.S. Bank* and *FHFA II*, this Court may now rule as a matter of law that Mr. Abshier's testimony about undocumented compensating factors and exceptions should be excluded under the PSA. *Aon Fin. Prods. v. Societe Generale*, 476 F.3d 90, 99 (2d Cir. 2007) ("The interpretation of the unambiguous terms of a contract is . . . a matter of law that we may properly evaluate and decide ourselves.").

██████████
██████████
██████████
██████████
██████████
██████████
██████████

██████████ does not render them legally relevant.  Judge Castel squarely held in *U.S. Bank* that compensating factors have no legal significance unless contemporaneously noted, in writing, in the loan file.  *U.S. Bank*, 205 F. Supp. 3d at 459.

    **B.**    ██████████

WMC acknowledges that ██████████
██████████
██████████
██████████
██████████
██████████
██████████

██████████ This is entirely appropriate; as Judge Castel explained, "a borrower's statement in a bankruptcy proceeding may be relevant and persuasive in forming an opinion that, for example, a borrower misstated income on a loan application."  *U.S. Bank*, 205 F. Supp. at 446; *see also FHFA II*, 104 F. Supp. 3d at 529-30 (explaining that "entirely appropriate for [the plaintiff] to rely on [] post-origination evidence" to prove falsity).  Such materials demonstrate that borrowers made

6

untrue statements in connection with their loan applications at the time of origination – ▇

By contrast, ▇

▇ Given the flaws inherent in this approach, it is no surprise that defendants' re-underwriting experts in other case have declined to adopt it.  Accord, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 74 F. Supp. 3d 639, 656 (S.D.N.Y. 2015) (defense expert explicitly "limited his re-underwriting exercise to the universe of evidence that would have been available to the Originator" and "considered no post-origination information."); *U.S. Bank, N.A.*, 205 F. Supp. 3d at 478 (defense expert contended "post-origination servicing records should not be considered in a re-underwriting analysis on the theory that it was not known to the underwriter at the time of origination").

    **C.**    **WMC Fails to Justify Mr. Abshier's Speculative Opinions.**

WMC complains that ▇

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████   In *U.S. Bank*, the Court found that such *post-hoc* explanations were irrelevant, without factual basis, and based on speculation. 205 F. Supp. 3d at 497; *see also Sparta Commercial Servs., Inc. v. DZ Bank*, 680 F. App'x 17, 19 (2d Cir. 2017) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008)).

### III. CERTAIN TESTIMONY OF BRIAN OLASOV SHOULD BE EXCLUDED.

The opinions of WMC's purported servicing expert, Brian Olasov, have no relevance to the issues in this litigation and should be stricken. The questions in this case are whether WMC materially breached its representations and warranties at the time of origination, and/or whether WMC failed to notify the other parties to the PSA of breaches that it knew or should have known about at the time of origination. ███████████████████████████████████████ ███████████ and his testimony would only create a sideshow about the performance of the loans after securitization. This Court should follow the reasoned opinions of other courts that have rejected such testimony as wholly irrelevant.[2]

#### A. Causation and Mitigation Testimony Are Legally Irrelevant to the Calculation of Both "Repurchase" and "Rescissory" Damages.

Mr. Olasov makes two arguments ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[2] *See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, No. 0603339/2003, 2006 WL 6916430 (Sup. Ct. N.Y. Cnty. Sept. 6, 2006), *aff'd as modified on other grounds*, 47 A.D.3d 103 (1st Dep't 2007) (granting motion *in limine* "to exclude evidence as to whether the defendants' breaches caused the subject loans to default"); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 511-12 (S.D.N.Y. 2013) (causation testimony and post-closing events are irrelevant to the court's determination of material breach).

8

Mr. Olasov's opinions regarding ███████ are also irrelevant to the Separate Trustee's ████████████████████████████. Such damages arise from Section 2.03(c) of the PSA, which requires WMC to provide "prompt written notice" to the Separate Trustee when it discovers or should have discovered a breach of representations and warranties. Because the Separate Trustee's "failure to notify" claim is not limited by the "sole remedies" provision of the PSA, the Separate Trustee is free to pursue alternative theories of damages – including rescissory damages that would restore the parties to the *status quo ante*. *See* Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011) (Rescission "restore[s] the parties to the status quo ante by unwinding the contractual exchange instead of pressing it forward."). ████████████████████████ is contrary to the fundamental premise of the claim.

Second, Mr. Olasov argues ████████████████████████████████████████ ████████████████████ Ward Decl., Ex. J, Olasov Rep. at ¶¶ 51-55. However, WMC cannot present this as a defense where the parties did not bargain for a set-off for an alleged failure to mitigate by the servicer. *See, e.g.*, *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, No. 11-civ-505CMGWG, 2017 WL 698607 (S.D.N.Y. Feb. 10, 2017).

**B.     Mr. Olasov's Testimony Is Not Based on a Reliable Methodology.**

Mr. Olasov's opinions regarding ████████████████████████████ should be excluded for the additional reason that his methodology is unreliable. Mr. Olasov stated that ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

9

servicing files for the 15 sample loans, Mr. Olasov selected an additional 15 loans outside the sample. *See* Ward Decl., Ex. O, Olasov Tr. at 98:8-16. Mr. Olasov did not analyze whether the 15 sample loans were by themselves statistically significant. Nor did he undertake any analysis, or ask Dr. Leamer for help, in selecting the 15 non-sample servicing files. *Id.* at 106:9-108:23. While Mr. Olasov acknowledged that his "intention was that this was not a sample nor was it meant to extrapolate into a representation of the population," *Id.* at 107:8-10, he then did precisely that – he extrapolated conclusions from his woefully incomplete data set. *Id.* at 110:2-11.

Mr. Olasov employed an equally unreliable methodology regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ His testimony is both unreliable and irrelevant.

## **CONCLUSION**

For the foregoing reasons, the Separate Trustee respectfully requests that the Court grant its Motion *In Limine* to Exclude Certain Testimony of WMC's Expert Witnesses Edward Leamer, David Abshier, and Brian Olasov.

10

Dated: November 3, 2017

Respectfully submitted,

TMI Trust Company, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2

/s/ Harvey J. Wolkoff
Harvey J. Wolkoff (*phv* 01103)
Daniel V. Ward (*phv* 05850)
Kathryn E. Wilhelm (*phv* 08528)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7703
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
daniel.ward@ropesgray.com
kathryn.wilhelm@ropesgray.com

Thomas D. Goldberg (ct 04386)
Kevin C. Brown (ct 29774)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, Connecticut 06901
Tel.: (203) 977-7300
Fax: (203) 977-7301
tgoldberg@daypitney.com
kbrown@daypitney.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 3, 2017, the foregoing Reply Memorandum of TMI in Support of Motion *In Limine* to Exclude Certain Testimony of WMC's Experts Edward Leamer, David Abshier, and Brian Olasov was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                                    /s/ Kevin C. Brown
                                                    Kevin C. Brown