UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2),

Plaintiff,

v.

WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,

Defendant.

Civil Action No.
3:12-cv-01538 (CSH)

# WMC MORTGAGE, LLC'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE EXPERT TESTIMONY OF DR. JOSEPH R. MASON

Anthony M. Fitzgerald (ct04167)
Howard K. Levine (ct10555)
CARMODY TORRANCE
SANDAK & HENNESSEY LLP
195 Church St., 18th Floor
New Haven, CT 06509
Phone: 203 777-5501
Fax: 203 784-3199

Barbara S. Steiner (*pro hac vice*)
Megan B. Poetzel (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Phone: 312 222-9350
Fax: 312 527-0484

Matthew S. Hellman (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave NW
Washington, DC 20001-4412
Phone: 202 639-6000
Fax: 202 639-6066

*Attorneys for Defendant WMC Mortgage, LLC*

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.     Dr. Mason's Rescissory And Benefit Of The Bargain Damages Should Be Excluded. ....................................................................................................................3

II.    Dr. Mason's Simulation Of The Repurchase Price Should Be Excluded To The Extent It Diverges From The Contractual Repurchase Price. ...............................6

CONCLUSION.....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Canfield v. Reynolds*,
    631 F.2d 169 (2d Cir. 1980)..................................................................................................5

*Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC*,
    36 N.Y.S.3d 458 (App. Div. 2016) ........................................................................................4

*Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*,
    19 N.Y.S.3d 1 (App. Div. 2015) .......................................................................................1, 3

*Saco I Trust 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, 2014 WL 2451356,
    *11 (N.Y. Sup. Ct. May 29, 2014)........................................................................................4

WMC Mortgage, LLC ("WMC") respectfully submits this Reply Memorandum in Support of its Motion to Partially Exclude the Expert Testimony of Dr. Joseph R. Mason offered by Plaintiff TMI Trust Company, solely as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2 ("TMI," as Separate Trustee of the "Trust").

## INTRODUCTION

In its opening brief, WMC explained that (1) Dr. Mason's $906 million Rescissory and Benefit of the Bargain Damages calculations are barred by the parties' contract and other legal doctrines, and (2) Dr. Mason's $354 million "simulation" of the contractual Repurchase Price awards TMI damages far in excess of what the contract permits. (WMC's Mot. to Partially Exclude the Expert Test. of Dr. Joseph R. Mason at 9-13, Oct. 6, 2017, Dkt. 185 ("WMC's Mason *Daubert*").) TMI's brief in opposition is largely non-responsive to these arguments.

First, as to Rescissory Damages, TMI simply ignores that its position has been rejected by every court to have considered it. TMI claims that Rescissory Damages are available for its failure to notify claim, but the lead case upon which TMI relies held the opposite: "[E]ven if [the sole remedy clause] of the PSA did not waive plaintiffs' right to seek such relief, *rescission would be unwarranted because damages are available*." *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 19 N.Y.S.3d 1, 10 (App. Div. 2015) (emphasis added); *see also* TMI's Mem. in Opp'n to WMC's Mot. to Partially Exclude the Test. of Dr. Joseph R. Mason at 3, Oct. 20, 2017, Dkt. 196 ("TMI's Mason Opp'n"). Nor has TMI even attempted to establish the other basic prerequisites for obtaining rescissory damages, such as proving that the alleged breaches actually caused the claimed injury. TMI alternatively contends that WMC's supposed gross negligence allows it to obtain damages in excess of the contractual Repurchase Price. (TMI's Mason Opp'n at 4-5, Dkt. 196.) Again, TMI misapprehends the doctrine it invokes: Even if WMC had been grossly negligent (and it was not), the gross negligence doctrine applies only where the parties'

1

chosen remedy *bars* any recovery or limits it to a *nominal* amount. There is nothing nominal about the Repurchase Price remedy here given that damages here range from $50 million to $354 million depending on the expert testimony the Court credits, and TMI does not argue otherwise.

Second, as to Dr. Mason's so-called simulation of the Repurchase Price, TMI argues that any flaws in Dr. Mason's calculations can be addressed at trial. (*Id.* at 14.) But there are aspects of Dr. Mason's calculations that are barred outright by the contract or are so fundamentally flawed that even TMI's experts cannot defend them. Those defects include Dr. Mason's "anticipated future losses," which have indisputably been grossly overstated and have injected so much uncertainty into Dr. Mason's calculations that neither he nor TMI's statistics expert can say whether the calculations are reliable. (WMC's Mason *Daubert* at 26-28, Dkt. 185.) They also include Dr. Mason's additional damages for the Servicer's loan modifications that *reduce* the outstanding balance of the loans and therefore cannot increase the Repurchase Price. (*Id.* at 28-29.) Dr. Mason's calculations for liquidated loans likewise warrant exclusion: Because those loans no longer exist, their remaining balance is $0 – a point freely conceded by the witness upon whose testimony TMI purports to rely. (*Id.* at 29; Declaration of Matthew S. Hellman in Supp. of WMC's Reply in Supp. of its Mot. to Partially Exclude the Expert Test. of Dr. Joseph R. Mason ("Hellman Reply Decl."), Ex. A, Excerpts of Dr. Joseph R. Mason Dep. Tr. at 242:4-244:14, Oct. 11, 2016.)

The Pooling and Servicing Agreement ("PSA") mandates a clear and concrete remedy that offers TMI a robust recovery, should one be warranted. Rather than follow the contractual formula, however, Dr. Mason's calculations either misapply that formula or ignore it altogether. This Court should exclude his calculations as unhelpful and unreliable.

## I.     Dr. Mason's Rescissory And Benefit Of The Bargain Damages Should Be Excluded.

No court has ever awarded the extraordinary remedy of rescission, let alone rescissory damages,[1] in a repurchase case with a sole remedy clause.  No fewer than 11 courts have expressly rejected awarding that kind of relief.  (WMC's Mason *Daubert* at 9-10, Dkt. 185.)

Unable to find a single court that has permitted the recovery of rescissory damages in a repurchase case, TMI points to two decisions from the First Department holding that "separate damages" outside the repurchase remedy may be available for a failure to notify claim and that "gross negligence" may justify not enforcing an exculpatory remedial clause.  (TMI's Mason Opp'n at 2-5, Dkt. 196.)  But neither of these cases authorized an award of rescissory damages – TMI simply has misstated what they say.

As for its failure to notify theory, TMI neglects to mention that the case upon which it relies expressly held that because the plaintiffs had a damages remedy, they could not obtain rescission, regardless of whether that damages remedy was exclusive:  "With respect to plaintiffs' causes of action for rescission, even if [the sole remedy clause] of the PSA did not waive plaintiffs' right to seek such relief, rescission would be unwarranted *because damages are available*."  *Nomura*, 19 N.Y.S.3d at 10 (emphasis added).  Nor is *Nomura* alone among repurchase cases in holding that rescission or rescissory damages cannot be awarded where there is alternative remedy available.  (WMC's Mason *Daubert* at 18-19, Dkt. 185.)  TMI has not responded to this authority, presumably because there is no response.  The Repurchase Price is not only an "available" remedy, it is the remedy that the parties chose and it is a complete remedy to boot.  (*Id.* at 3-5.)  To the extent that TMI can prove liability, the Repurchase Price gives TMI all of the unpaid principal balance for

---

[1] TMI concedes Dr. Mason's Benefit of the Bargain Damages calculations are duplicative of his Rescissory Damages calculations, (TMI's Mason Opp'n at 2 n.1, Dkt. 196), and thus WMC addresses them together.

each loan, unpaid interest on that balance, unpaid servicing advances, and the reasonable costs of obtaining the repurchase remedy. (*Id.* at 4.) That is a complete and available remedy in every sense of the word.[2]

As for its gross negligence theory, TMI selectively quotes from the *Morgan Stanley* decision in a manner that makes it sound as if New York law does not enforce remedial clauses where a party has engaged in gross negligence. (TMI's Mason Opp'n at 5, Dkt. 196 (citing *Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC*, 36 N.Y.S.3d 458 (App. Div. 2016)).) As WMC explained in its opening brief, that is not the law. What *Morgan Stanley* recognized is that where a party acts with gross negligence, a court will not enforce an "illusory" remedial clause that "completely exonerates" the defendant or limits recovery to a "nominal" amount. *Morgan Stanley*, 36 N.Y.S.3d at 463. Thus, the *Morgan Stanley* court held that because it could not "be ascertained at this stage of the litigation" whether the plaintiff would be able to recover under the repurchase remedy, the court would not rule out the possibility of applying the gross negligence doctrine on a motion to dismiss. *Id.*

As WMC explained in its opening memorandum, that ruling is inapplicable here. (*See* WMC's Mason *Daubert* at 15-16, Dkt. 185.) The parties disagree about the correct way to calculate the Repurchase Price, but whether TMI is right that the remedy is worth $354 million or

---

[2] Nor for that matter does TMI have any "separate damages" from WMC's alleged failure to notify. Dr. Mason has not calculated any such damages and there are none. Even assuming (incorrectly) that WMC failed to give notice of breaches of which it knew, TMI has brought suit to recover for those breaches and any other breaches it can prove. This is not a case in which WMC's supposed failure to notify, for example, prevented TMI from timely suing to recover the Repurchase Price. And even if it were, the measure of those separate damages would be the value of the lost repurchase remedy, which is simply the Repurchase Price. *See Saco I Trust 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, 2014 WL 2451356, *11 (N.Y. Sup. Ct. May 29, 2014) ("Although the 'sole remedy' provision may not be applicable to the [failure to notify] claim, EMC is correct that Plaintiff's damages for this claim *are limited to repurchase or damages in the amount of the repurchase price* [because the] failure to notify damaged the Trusts by not effectuating this repurchase trigger." (emphasis added)).

4

WMC is right that the remedy is worth between $50 and $97 million, in neither instance is that remedy "nominal." (*Id.* at 15.) There simply is no basis for jettisoning the contractual remedy to which the parties agreed.

And, even if Dr. Mason's Rescissory Damages remedy were not barred outright, his calculations cannot be relied upon here because, as WMC previously explained, TMI has not and cannot establish the other prerequisites for rescission or rescissory damages. For example, rescission will not restore the status quo, and TMI cannot seek rescission at the same time it seeks to enforce the PSA. (*Id.* at 19.) TMI also has no evidence of causation: *i.e.*, that the alleged breaches actually caused the loans to experience a loss, thereby injuring the Trust. (*Id.* at 21.) TMI does not dispute the general point that it has to prove causation in order to recover outside the repurchase remedy. But it argues that there is "no concept" of causation that applies where a party seeks rescission. (TMI's Mason Opp'n at 6-7, Dkt. 196.) TMI cites no authority for that surprising proposition and it is wrong.

Causation is an element of a breach of contract action regardless of whether the plaintiff is seeking damages or rescission. TMI claims that it is entitled to rescission because the breaches it has alleged "vitiate" the contract's purpose. (*Id.* at 5.) But if there is no causation – if the loans would have experienced the same losses if they had complied with WMC's representations and warranties – then the alleged breaches did not vitiate anything. Instead, awarding rescission would just give TMI a windfall because it would make WMC responsible for all the loans' losses regardless of whether they had anything to do with the alleged breaches. *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (reversing award of rescission where record showed that breach had not caused plaintiff substantial injury and awarding rescission would give plaintiff a "windfall" by giving him the upside of the investment while "reliev[ing] him of his investment's downside

5

risks"). TMI has offered no evidence on this score 

TMI must first prove the existence of material breaches that caused it harm – so much harm that the contract has been "vitiated." It has not done so.

The bottom-line is that the parties agreed to a highly substantial damages remedy that is indisputably available here. As such, under an unbroken line of case law, TMI is not entitled to the extraordinary remedy of rescission and Dr. Mason's extra-contractual damages calculations should be excluded.

## II. Dr. Mason's Simulation Of The Repurchase Price Should Be Excluded To The Extent It Diverges From The Contractual Repurchase Price.

The parties agreed to a specific remedy, *i.e.*, repurchase, and provided a specific formula for calculating the Repurchase Price, and it is easy to see that Dr. Mason's Repurchase Damages depart from the Repurchase Price in important ways. TMI does not seriously argue otherwise.

*Future Damages*. At the time of his March 2016 report, Dr. Mason "anticipated" that the allegedly breaching loans would incur an additional $28 million in future losses. (WMC's Mason *Daubert* at 2, 26, Dkt. 185.) Subsequent events have shown Dr. Mason's prediction to be wildly inflated by nearly 350%. (*Id.* at 27.) TMI does not dispute that Dr. Mason's prediction has proved to be inaccurate, but it asks the Court to rely on his testimony nonetheless. This Court should decline that request.

First, as TMI tacitly concedes, future damages are not part of the Repurchase Price formula. (TMI's Mason Opp'n at 13, Dkt. 196.) TMI nonetheless argues that future damages should be

6

included to reflect the fact that the loans may suffer additional losses between Dr. Mason's report and trial. (*Id.*) But in the event that TMI can establish liability as to any loan, the parties will recalculate the Repurchase Price for that loan at that time and thereby capture the *actual* unpaid principal balance on the loan and *actual* unpaid interest on that loan "as of the date of repurchase," which is what the PSA requires. (WMC's Mason *Daubert* at 4, 26, Dkt. 185 (citing PSA art. I (definition of "Repurchase Price")).) The contract provides no basis for Dr. Mason to provide a (grossly overstated) estimate of what he "anticipates" those additional losses will be. And to the extent that TMI is seeking to recover anticipated losses on the loans to be incurred *after* trial, that is flatly barred by the Repurchase Price formula, which calls for the remedy to be calculated "as of the date of repurchase." (*Id.*)

Second, even if TMI were allowed to claim future damages, Dr. Mason has not calculated them in a reliable manner. TMI does not dispute that his estimate has proven to be woefully incorrect. But TMI contends that the flaws in Dr. Mason's methodology should be the subject of cross-examination. (TMI's Mason Opp'n at 14, Dkt. 196.) If this were a conventional battle of the experts, WMC might agree. But there is no battle here: TMI's own statistical expert, Dr. Lipshutz, has conceded that he simply does not know if Dr. Mason's future damages calculations have a reliable margin of error, and Dr. Mason admits that he does not know either. (WMC's Mason *Daubert* at 28, Dkt. 185.) ███████████████████████████████████████ ███████████████████████████████████████████████████ The point is that no TMI expert is able to opine that ████████████████ yielded a reliable estimate of future damages with an adequate margin of error. Dr. Mason's future damages estimates should therefore be excluded.

7

*Loan Modifications*.  Dr. Mason adds $32 million to his Repurchase Damages calculations to reflect principal and interest forgiveness offered by the Servicer – not WMC.  (WMC's Mason *Daubert* at 28, Dkt. 185.)  By definition, forgiven principal and interest *decrease* a loan's unpaid principal balance and interest because they are no longer owed by the borrower.  TMI argues that WMC should be responsible for the amounts forgiven by the Servicer because to hold otherwise would incentivize WMC to provide subpar loans.  (TMI's Mason Opp'n at 15, Dkt. 196.)  TMI's argument is both foreclosed by the PSA's text and wrong as a practical matter.  As to the text, if the parties to the contract had intended to include such damages in the Repurchase Price formula, they easily could have said so.  But they did not.  (*See* WMC's Mason *Daubert* at 28-29, Dkt. 185 (citing PSA art. I (definition of "Repurchase Price")).)  As to practicalities, WMC has had no say or involvement in the Servicer's decision to forgive principal or interest on a loan, and modifications can and frequently are made for reasons having nothing to do with the borrower's creditworthiness at the time of origination.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Dr. Mason should not be able to include these untethered loan modifications as part of his Repurchase Calculations.  (*See* WMC's Mason *Daubert* at 29, Dkt. 185.)

*Liquidated Loans*.  Dr. Mason also improperly calculates the unpaid principal balance for liquidated loans.  The Repurchase Price employs a formula that uses the loan's "unpaid principal balance" as one component.  (*Id.* at 4, 29.)  A liquidated loan does not have an "unpaid principal balance."  (*See id.* at 29.)  When the Servicer forecloses on the property and resells it, the loan no longer exists and the Servicer and Trustee no longer record it as having a balance.  TMI could still

8

be entitled to the other components of the Repurchase Price formula, but it cannot manufacture an unpaid principal balance where none exists. In response to that economic reality, TMI makes three arguments, none of which is correct.



9

*Second*, TMI notes that the contract in Judge Cote's case expressly defined the balance of a liquidated loan to be $0. (TMI's Mason Opp'n at 11, Dkt. 196.) TMI asserts that the absence of express language stating that the balance of a liquidated loan is zero is proof to the contrary. (*Id.* at 11-13.) ███████████████████████████████████████████

███████████████████████████████████████████

████████████████

*Third*, TMI contends that it would be unfair to treat the unpaid principal balance of a liquidated loan as $0. (TMI's Mason Opp'n at 9, Dkt. 196.) But as Judge Cote cogently explained, there is nothing unfair about it. The PSA sets out two paths:

> Before liquidation, the Purchase Price formula boils down to a payment to [the plaintiff] of however much principal on the loan is outstanding, plus interest, plus reimbursement of applicable fees. After liquidation -- meaning after the Trust has effectively cashed in that loan -- the Purchase Price starts at zero because the Trust has received liquidation proceeds, but WMC has still guaranteed the reimbursement of certain other expenses.

(WMC's Mason *Daubert* at 29-30, Dkt 185 (quoting *Bank of N.Y. Mellon v. WMC Mortg. LLC*, No. 1:12-cv-07096-DLC, at 16 (S.D.N.Y. Aug. 18, 2015).) Given that the Trust "has effectively cashed in that loan," it is entitled to keep the proceeds from doing so, but it is not entitled to pretend that the loan has an unpaid balance when it does not. As Judge Cote found, although a plaintiff (like TMI) is entitled to recover "other expenses" for a liquidated loan, it is not entitled to an artificially inflated unpaid principal balance when none exists. (*Id.* at 29-30.)

## CONCLUSION

For the foregoing reasons, WMC respectfully submits that this Court grant WMC's Motion.

10

Dated: November 3, 2017    Respectfully submitted,

**CARMODY TORRANCE SANDAK & HENNESSEY LLP**

 /s/ Howard K. Levine

| | |
|---|---|
| Anthony M. Fitzgerald (ct04167) | Barbara S. Steiner (*pro hac vice*) |
| Howard K. Levine (ct10555) | Megan B. Poetzel (*pro hac vice*) |
| CARMODY TORRANCE | Michael A. Doornweerd (*pro hac vice*) |
| SANDAK & HENNESSEY LLP | JENNER & BLOCK LLP |
| 195 Church St., 18th Floor | 353 N. Clark St. |
| New Haven, CT 06509 | Chicago, IL 60654 |
| Phone: 203 777-5501 | Phone: 312 222-9350 |
| Fax: 203 784-3199 | Fax: 312 527-0484 |

Matthew S. Hellman (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave NW
Washington, DC 20001-4412
Phone: 202 639-6000
Fax: 202 639-6066

*Attorneys for Defendant WMC Mortgage, LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2017, the foregoing WMC MORTGAGE, LLC'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE EXPERT TESTIMONY OF DR. JOSEPH R. MASON was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Howard K. Levine
Howard K. Levine (ct10555)
Carmody Torrance Sandak & Hennessey LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950
Tel:  203-777-5501
Fax:  203-784-3199
E-mail:  hlevine@carmodylaw.com