## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2),<br><br>Plaintiff,<br><br>     v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>Defendant. | Civil Action No.<br>3:12-cv-01538 (CSH) |

## WMC MORTGAGE, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S PREVIOUSLY UNDISCLOSED WITNESSES

Anthony M. Fitzgerald (ct04167)
Howard K. Levine (ct10555)
CARMODY TORRANCE
SANDAK & HENNESSEY LLP
195 Church St., 18th Floor
New Haven, CT 06509
Phone: 203 777-5501
Fax: 203 784-3199

Barbara S. Steiner (*pro hac vice*)
Megan B. Poetzel (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Phone: 312 222-9350
Fax: 312 527-0484

Matthew S. Hellman (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave NW
Washington, DC 20001-4412
Phone: 202 639-6000
Fax: 202 639-6066

*Attorneys for Defendant WMC Mortgage, LLC*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

A.      The Discovery Process.................................................................................................3

B.      The Witnesses. ............................................................................................................4

        i.      *Witnesses WMC Intends To Call In Response To The Testimony Of Mr.*
            *Gitson (Mr. Huber And Mr. Mitchell).* ..............................................................4

        ii.     *Witnesses Who Will Respond To Witnesses Or Evidence Identified In*
            *Plaintiff's Pre-Trial Submissions.* ....................................................................7

        iii.    *Current Employees Of WMC Who Were Added In Case Their*
            *Predecessors Are Unavailable.* ..........................................................................7

ARGUMENT .......................................................................................................................9

I.      WMC Was Not Required To Supplement Its Rule 26(a)(1) Disclosures To
      Identify Individuals Already Revealed Through The Discovery Process. ........................9

II.     Any Failure By WMC To Make A Required Supplementation Was Harmless. ..............12

III.    Even If There Were A Violation This Case Does Not Call For The Drastic
      Remedy Of Excluding Witnesses. ...................................................................................13

CONCLUSION...................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A.T. Kearney, Inc. v. Glob. Crossing Telecomms., Inc.*,
  No. 11 Civ. 5035 PAC, 2013 WL 4838819 (S.D.N.Y. Sept. 11, 2013) ...................................9

*BanxCorp v. Costco Wholesale Corp.*,
  978 F. Supp. 2d 280 (S.D.N.Y. 2013).................................................................................1, 9

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006).................................................................................................13

*EMI Music Mktg. v. Avatar Records, Inc.*,
  334 F. Supp. 2d 442 (S.D.N.Y. 2004)..................................................................................14

*Gutierrez v. AT&T Broadband, LLC*,
  382 F.3d 725 (7th Cir. 2004) ..................................................................................................9

*McCulloch v. Hartford Life & Accident Ins. Co.*,
  223 F.R.D. 26 (D. Conn. 2004)............................................................................................12

*Mitre Sports Int'l Ltd. v. Home Box Office*,
  304 F.R.D. 369 (S.D.N.Y. 2015) ...........................................................................................9

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
  2012 WL 2838431 (N.D. Cal. July 10, 2012).......................................................................10

*Pierce v. Underwood*,
  487 U.S. 552 (1988).............................................................................................................12

*Preuss v. Kolmar Labs., Inc.*,
  970 F. Supp. 2d 171 (S.D.N.Y. 2013).............................................................................13, 14

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  234 F. Supp. 3d 180 (D.D.C. 2017) .......................................................................................9

*White v. City of Middletown*,
  45 F. Supp. 3d 195 (D. Conn. 2014).............................................................................. passim

*Wright v. Aargo Sec. Servs., Inc.*,
  No. 99 CIV. 9115(CSH), 2001 WL 1035139 (S.D.N.Y Sept. 7, 2001) .............................9, 14

OTHER AUTHORITIES

8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
  § 2049.1 (3d ed. 2010 & Supp. 2017).............................................................................10, 12

Fed. R. Civ. P. 26...........................................................................................................................2

Fed. R. Civ. P. 26(a) ...............................................................................................................1, 3, 9

Fed. R. Civ. P. 26(a)(1)............................................................................................................3, 9

Fed. R. Civ. P. 26(e) ............................................................................................................. passim

Fed. R. Civ. P. 26(e)(1)(A) .........................................................................................................9

Fed. R. Civ. P. 37......................................................................................................................14

Fed. R. Civ. P. 37(c)(1)........................................................................................................12, 14

6-26 Moore's Federal Practice - Civil § 26.131 (3d ed. 2017) .....................................................10

WMC Mortgage, LLC ("WMC") respectfully submits this Memorandum in Opposition to the Motion of Plaintiff TMI Trust Company, solely as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2 ("Plaintiff"), to strike six witnesses from WMC's witness list and preclude them from testifying at trial.

## INTRODUCTION

Plaintiff's Motion seeks to preclude six witnesses listed on WMC's witness list from testifying:  Ken Huber, Ian Mitchell, Patrick McGovern, Anthony Miguel, Nina Srithanomsup, and Heather Thach (the "Witnesses").[1]  Plaintiff contends that WMC needed to supplement its Rule 26(a) initial disclosures to include the Witnesses because their identities were "obscured" from Plaintiff, and that Plaintiff would now be prejudiced by the Witnesses being allowed to testify.  (Plaintiff's Mem. in Supp. of its Mot. Seeking Emergency Relief to Strike Defendant's Previously Undisclosed Witnesses from its Witness List, at 4-5, Nov. 30, 2017, Dkt. 229 ("Pl's Mot.").)

Plaintiff's contentions are legally baseless and factually false.  As this Court has held, where "a party kn[ows] of the witnesses and the information they possessed, the duty to supplement disclosure under Rule 26(e) does not apply" precisely because that information was "already revealed." *White v. City of Middletown*, 45 F. Supp. 3d 195, 209 (D. Conn. 2014) (quoting *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013)) (addressing Rule 26(a) disclosures).  Here, Plaintiff has had detailed knowledge about the Witnesses and their relevance to this case for years.  The common thread for all the Witnesses is that they have information regarding WMC's origination and repurchase practices.  These Witnesses were

---

[1] Plaintiff's Motion also challenges the inclusion of Juliet Agranoff and Karen Denton on WMC's proposed witness list.  Plaintiff was aware of both Ms. Agranoff's and Ms. Denton's relevance to this case from both depositions and documents.  WMC, however, has concluded that their testimony is unnecessary and has withdrawn their names from its witness list.

1

identified in hundreds of documents (many of which appear on Plaintiff's proposed exhibit list), they were the subject of testimony at numerous depositions, and they were identified in discovery responses.

That alone is sufficient to make formal supplementation under Rule 26 redundant and unnecessary, but here there is much more.



- For Mr. McGovern (as well as Mr. Huber), Plaintiff affirmatively sought production of their deposition transcripts from earlier depositions in the now-settled and dismissed cases *Deutsche Bank National Trust Co. v. WMC Mortgage, LLC*, Case Nos. 12-933, 12-969, 12-1699, 13-1347 (D. Conn.) (the "DBNTC Actions"). Plaintiff withdrew its request only after WMC conditioned its consent on being able to use their prior testimony as well.

- The remaining three Witnesses (Mr. Miguel, Ms. Srithanomsup, and Ms. Thach) are simply current WMC employees who have roles or responsibilities previously held by Mr. Zollo and Ms. Nguyencuu, whom Plaintiff deposed in this case. Mr. Zollo and Ms. Nguyencuu have since retired or left WMC and may be unavailable for trial.

It thus "strains credulity" for Plaintiff now to claim it was unaware of these witnesses or their relevance to Plaintiff's claims. *White*, 45 F. Supp. 3d at 209. When WMC made its initial

Rule 26(a) disclosures, Ms. Nguyencuu and Mr. Zollo were still working at WMC, and WMC identified the individuals it believed at that time had information WMC might use to support its defenses regarding the key question in this breach of contract case – whether the Mortgage Loans in this Trust have material and adverse breaches of WMC's representations and warranties.  In the discovery process, Plaintiff adopted a broader approach to make sweeping assertions about the quality of WMC's origination and repurchase practices untethered to the Mortgage Loans or the Trust.  Through both formal and informal discovery, Plaintiff learned of the Witnesses and their knowledge of those processes.

Through its Motion, Plaintiff now seeks to deprive WMC of the opportunity to rebut Plaintiff's assertions at trial through witnesses who will testify to WMC's origination practices, its risk and quality control systems, and its efforts to prevent borrower fraud.  Even if formal supplementation had been required (and it was not), Plaintiff has not come close to making the highly demanding showing required to preclude the Witnesses from testifying at trial.  This Court should deny the Motion, and hear from Witnesses at trial who present a full picture of WMC's processes.

## BACKGROUND

### A.     The Discovery Process.

The parties exchanged their Rule 26(a)(1) Initial Disclosures on June 14, 2014.  In addition to certain third parties, WMC identified three then-current employees by name on its Initial Disclosures:  Jim Zollo, Robert Rothleder, and Rosie Nguyencuu.  Over the following year and a half, the parties engaged in extensive discovery.  The Parties exchanged documents, took numerous fact and expert depositions, and served and responded to interrogatories, requests for production, and requests for admission.  In addition, at Plaintiff's request, WMC produced a

number of deposition transcripts of former or current WMC employees from other actions. Discovery closed on November 30, 2015. (Dkt. 103.)

Almost two years ago, after the close of fact discovery, Plaintiff requested additional deposition transcripts of a number of former WMC employees from the DBNTC Actions, including those of Mr. Huber and Mr. McGovern. WMC agreed to provide Plaintiff with all of the deposition transcripts from the DBNTC Actions, provided that WMC could rely on and use those transcripts as well. Plaintiff refused WMC's offer. Plaintiff then requested a smaller subset of deposition transcripts from the DBNTC Actions – transcripts that did not include those of Mr. Huber and Mr. McGovern – and WMC produced the same.

**B.    The Witnesses.**

The Witnesses fall into three general categories:  (1) witnesses WMC intends to call to rebut the testimony of Mr. Gitson; (2) witnesses who were deposed in the DBNTC Actions, whose deposition transcripts were requested in this Action, and who will respond to witnesses or evidence identified on Plaintiff's pre-trial submissions; and (3) witnesses who are current employees of WMC and who were added to WMC's proposed witness list in the event that their predecessors who left the company are unavailable to testify live at trial. Each of the Witnesses was made known to Plaintiff throughout this discovery process.

    i.    *Witnesses WMC Intends To Call In Response To The Testimony Of Mr. Gitson (Mr. Huber And Mr. Mitchell).*

Mr. Huber was Senior Vice President of WMC's Risk Management Department. Mr. Mitchell was a GE Money Americas Fraud Strategy leader. Mr. Gitson reported directly to Mr. Huber in WMC's Risk Management Department, and he worked closely with Mr. Huber and Mr. Mitchell on a number of fraud prevention initiatives at WMC.

If called at trial, Mr. Huber and Mr. Mitchell would testify about the efforts of WMC's Risk Management Department, WMC's fraud prevention efforts, and their respective interactions with Mr. Gitson. ███████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

   ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

   ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████   During discovery, WMC requested that Plaintiff produce all documents it received from non-parties related to this Action – a request to which Plaintiff agreed. (*See* Hellman Decl., Ex. B., Plaintiff's Responses and Objections to WMC's First Request for Production of Documents, Aug. 18, 2014 ("The Separate Trustee will produce documents that it

---

[2] Plaintiff moved to strike WMC's examination of Mr. Gitson about the documents as "speculative."  (Hellman Decl., Ex. A, Gitson Testimony at 174:19-175:8.)  If the examination was speculative, Plaintiff's improper withholding of the documents was the cause.  If not, then the objection was baseless.

receives from non-parties as described in this Request, provided that WMC agrees to produce documents that it receives from non-parties pursuant to a subpoena.").) ███████████

████████████████████████████████████████████ Prior to Mr. Gitson's deposition, WMC's counsel requested that Plaintiff provide any copies of documents it may have received from Mr. Gitson.  Plaintiff's counsel refused to do so and inexplicably continues to refuse to produce those documents today.

███████████████████████████████████████████████

██████████████████████████████ Mr. Huber and Mr. Mitchell were also disclosed by WMC throughout discovery.  Mr. Huber, for example, was the sender, recipient, or otherwise identified on approximately 158 documents produced in this Action – 7 of which appear on Plaintiff's proposed exhibit list. ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ Mr. Huber was also the subject of deposition testimony during 14 additional depositions from other actions, the transcripts of which WMC produced to Plaintiff.

Similarly, Mr. Mitchell was the sender, recipient, or otherwise identified on approximately ten documents produced in this Action, one of which appears on Plaintiff's proposed exhibit list. In addition, Mr. Mitchell was the subject of deposition testimony during five depositions from other actions, the transcripts of which were produced to Plaintiff.

If called to testify, WMC expects that both Mr. Huber and Mr. Mitchell would undermine the credibility of Mr. Gitson.  WMC expects that both Witnesses would testify as to their views of

WMC's risk and fraud prevention management systems in a way that will demonstrate that Mr. Gitson has an incomplete or incorrect understanding of the facts.

      ii.     *Witnesses Who Will Respond To Witnesses Or Evidence Identified In Plaintiff's Pre-Trial Submissions.*

On November 10, 2017, Plaintiff submitted its proposed exhibit list and witness list to WMC. Gail Roman, a former QC/QA reviewer and Credit Analyst in WMC's Orangeburg office, and Glen Pizzolorusso, a former BDR in WMC's Orangeburg office, were listed on Plaintiff's witness list. Patrick McGovern was the Regional Vice President in charge of the Orangeburg office and Mr. Pizzolorusso's direct supervisor. If called to testify in response to either Ms. Roman's testimony or Mr. Pizzolorusso's testimony, Mr. McGovern would testify as to the origination practices in WMC's Orangeburg office.

Mr. McGovern's identity and relevance were made known to Plaintiff during discovery. Mr. McGovern's name and last known address were provided to Plaintiff in WMC's First Amended Response to Plaintiff's First Set of Interrogatories on November 24, 2014, and Mr. McGovern was identified as an individual who worked at WMC or on WMC's behalf and who was involved in some form with the acquisition, origination, and due diligence process for the Mortgage Loans. Mr. McGovern was the sender, recipient, or otherwise identified on approximately 186 documents produced in this Action, 7 of which appear on Plaintiff's proposed trial exhibit list. Additionally, Mr. McGovern was the subject of deposition testimony during 9 depositions from other actions, the transcripts of which were produced to Plaintiff. Plaintiff knew that Mr. McGovern was also deposed in the DBNTC Actions, but dropped a request for Mr. McGovern's transcript because it did not want WMC to be able to use Mr. McGovern's testimony.

      iii.     *Current Employees Of WMC Who Were Added In Case Their Predecessors Are Unavailable.*

During discovery, Plaintiff deposed Jim Zollo and Rosie Nguyencuu, who were WMC's CEO and its Repurchase Leader at the time of their depositions (and throughout the fact discovery period). Mr. Zollo and Ms. Nguyencuu no longer work at WMC, and while preparing its pre-trial disclosures in this matter, WMC learned that Mr. Zollo and Ms. Nguyencuu may be unavailable to testify at trial. Three Witnesses, Mr. Miguel, WMC's current CFO, and the two remaining members of WMC's repurchase department, Heather Thach and Nina Srithanomsup (of which WMC would call only one), however, are available to testify on topics raised or available to be raised during Mr. Zollo's and Ms. Nguyencuu's depositions, including financial details regarding the sale of the Mortgage Loans and WMC's origination and repurchases processes, in the event that Mr. Zollo and Ms. Nguyencuu are unavailable.

Mr. Miguel, Ms. Srithanomsup, and Ms. Thach were made known during discovery. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ These Witnesses were the sender, recipient, or otherwise identified on approximately 582 (Miguel), 769 (Srithanomsup), and 168 (Thach) documents produced in this Action, respectively. Further, these Witnesses were mentioned in depositions from other actions produced to Plaintiff, and Plaintiff has designated a document containing Ms. Thach's name as a trial exhibit.

These Witnesses are on WMC's witness list because WMC has not been able to confirm Mr. Zollo's and Ms. Nguyencuu's availability for trial. These Witnesses will only be called in the

event that one or both of Mr. Zollo or Ms. Nguyencuu are unavailable, and if called, will testify

on the same subjects that would have been covered by either Mr. Zollo or Ms. Nguyencuu.

## ARGUMENT

**I.      WMC Was Not Required To Supplement Its Rule 26(a)(1) Disclosures To Identify Individuals Already Revealed Through The Discovery Process.**

Plaintiff argues that WMC failed to supplement its initial disclosures in accordance with

Rule 26(e), but its Motion ignores the rule entirely.   A party must supplement or correct its

disclosures only "if the additional or corrective information *has not otherwise been made known*

*to the other parties during the discovery process or in writing*."   Fed. R. Civ. P. 26(e)(1)(A)

(emphasis added).

Accordingly, as this Court has held at least twice, when "a party knew of the witnesses and

the information they possessed, the duty to supplement disclosure under Rule 26(e) does not

apply."  *White*, 45 F. Supp. 3d at 209 (addressing supplementation of Rule 26(a)); *see also Wright*

*v. Aargo Sec. Servs., Inc.*, No. 99 CIV. 9115(CSH), 2001 WL 1035139, at *3 (S.D.N.Y Sept. 7,

2001).  Instead, so long as the "information [was] already revealed by a witness in a deposition or

otherwise through formal discovery," no supplementation is required.  *White*, 45 F. Supp. 3d at

209 (citing authority).  Numerous other courts have held the same, and the leading treatises are in

accord.  *See, e.g.*, *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (no need

to supplement where party "knew of [witness] and the fact she possessed information relevant to

this case through . . .  depositions"); *United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F.

Supp. 3d 180, 192 (D.D.C. 2017); *Mitre Sports Int'l Ltd. v. Home Box Office*, Inc., 304 F.R.D. 369

(S.D.N.Y. 2015); *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013)

(citation omitted) (no obligation to supplement "to include information already revealed by a

witness in a deposition or otherwise through formal discovery"); *A.T. Kearney, Inc. v. Glob.*

*Crossing Telecomms., Inc.*, No. 11 Civ. 5035 PAC, 2013 WL 4838819, at *2-3 (S.D.N.Y. Sept. 11, 2013); *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431, at *1-2 (N.D. Cal. July 10, 2012); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010 & Supp. 2017) (citing this Court's decision in *White*, 45 F. Supp. 3d at 209); 6-26 Moore's Federal Practice - Civil § 26.131 (3d ed. 2017) ("A party does not have a duty to amend if additional or corrective information has otherwise been made known to the other parties during the discovery process or in writing.").

In its Motion, Plaintiff never argues that it was unaware of the Witnesses or their relevance. Nor could it, for four interrelated reasons. First, all of the Witnesses were discussed in hundreds of documents produced by WMC – including documents included on *Plaintiff's* list of trial exhibits – and in depositions that were either taken by Plaintiff or produced to it from similar cases. Formal disclosure was unnecessary. *See supra* pp. 9-10.

Second, for two of the Witnesses – Mr. Huber and Mr. McGovern – Plaintiff not only was aware of their relevance from prior depositions, but also had actively requested their deposition transcripts from the DBNTC Actions. Plaintiff ultimately decided not to obtain Mr. Huber's and Mr. McGovern's transcripts when WMC requested – in exchange for producing the post-close deposition transcripts – that it be allowed to use the depositions transcripts for WMC's own purposes, as well. But Plaintiff cannot now claim that it was unaware of these individuals or their relevance.

Third, another three Witnesses – Mr. Miguel, Ms. Thach, and Ms. Srithanomsup – are simply potential substitutes for Jim Zollo and Rosie Nguyencuu, both of whom Plaintiff deposed

in November 2015.[3]  Plaintiff has known for some time now that these three substitute Witnesses have knowledge of the same information covered in these depositions.  ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████

Fourth, Plaintiff's contention that it needed formal supplementation is undermined further by Mr. Gitson's recent deposition.  ███████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████

In its Motion, Plaintiff contends that even if it had crystalline clarity regarding the Witnesses and their relevance (and it did), WMC was still obligated to supplement its disclosures to make an "unequivocal statement" that WMC might call the Witnesses at trial.  (Pl's Mot. at 4, Dkt. 229.)  However, that is not the law in this jurisdiction.  The unequivocal statement rule has

---

[3] Plaintiff complains in its Motion that WMC has not explained why it included the Witnesses on its witness list.  (Pl's Mot. at 4, Dkt. 229.)  WMC stood ready to do so, and offered to meet and confer with Plaintiff prior to its filing their Motion to do exactly that, but Plaintiff declined that invitation.

no basis in Rule 26(e) or the advisory committee's notes.  More importantly, this rule directly contradicts the common-sense rationale of Rule 26(e) that "there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery."  8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (3d ed. 2010 & Supp. 2017); *see also id.* at n.7 (citing, among other cases, this Court's decision in *White*, 45 F. Supp. 3d at 209).

The reality is that Plaintiff had ample notice about who these Witnesses are, their roles at WMC, and the scope of their knowledge concerning this case.  Plaintiff knew everything it needed to know to make an informed choice about whether to depose these Witnesses or seek more discovery than it already had concerning them.  It chose not to do so.  WMC complied with Rule 26(e) by giving Plaintiff everything it needed to make this choice.

## II.    Any Failure By WMC To Make A Required Supplementation Was Harmless.

Even if WMC failed in its efforts to comply with Rule 26(e), it may still call the Witnesses at trial if "the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  A party's decision not to supplement its initial disclosures is substantially justified if a reasonable person could conclude that "parties could differ as to whether the party was required" to supplement or correct its disclosures, such that there is a "genuine dispute concerning compliance."  *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 29 (D. Conn. 2004) (citation omitted); *White*, 45 F. Supp. 3d at 208; *see also Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).  A party satisfies this standard when its position "has a reasonable basis in law and fact."  *Pierce*, 487 U.S. at 565 n.2; *McCulloch*, 223 F.R.D. at 29.  A failure to supplement or correct is harmless when there is no prejudice to the other party.  *See White*, 45 F. Supp. 3d at 208 (citation omitted).

WMC did not supplement its disclosures because it reasonably believed Rule 26(e) did not require a supplement here, given the copious amounts of information Plaintiff received about these

Witnesses during discovery, and given the consistent interpretation of Rule 26(e) by this Court and many others.  This position has a reasonable basis both in law and in fact.  For the reasons given above, reasonable minds could at least differ on what Rule 26(e) required under these particular circumstances.   Accordingly, if WMC erred, it did so in good faith and with substantial justification.

WMC's understanding of Rule 26(e) was also harmless.  Plaintiff has not demonstrated that it has suffered any prejudice as a result, and the course of discovery in this case strongly suggests there was none.  Plaintiff knew the identities of all of these Witnesses, it knew their roles at WMC, and it understood the scope of their knowledge concerning this case.  It learned all of these things during discovery.  It cannot reasonably complain of ambush, or argue that WMC's understanding of Rule 26(e) put it at any real disadvantage.  *See White*, 45 F. Supp. 3d at 208-09 (citation omitted).

### III.   Even If There Were A Violation This Case Does Not Call For The Drastic Remedy Of Excluding Witnesses.

Finally, even if there were a material violation of the rules, the Court has broad discretion to decide whether and how to impose sanctions in this matter, and excluding witnesses is a harsh remedy that is highly disfavored.  *See, e.g.*, *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013).   In deciding whether to impose such a harsh sanction, courts consider the following non-exclusive factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (citation omitted) (alterations in original).

In this case, all four factors weigh against excluding WMC's witnesses.  First, WMC's understanding of its obligations under Rule 26(e) had ample basis in law and fact.  Second, the testimony of these Witnesses is particularly important for WMC, as they are needed to rebut Plaintiff's characterization of WMC's operations and present this Court with a complete picture of how WMC conducted its underwriting and repurchasing operations.  If granted, Plaintiff's Motion would mean that the Witnesses best positioned to rebut Plaintiff's assertions – including the recent contentions made by Mr. Gitson – would be absent from the trial.  In the absence of proof that WMC discovered any of the breaches that are actually at issue in this case, Plaintiff apparently seeks to use anecdotal evidence to cast aspersions on WMC's origination and repurchase practices generally.  To the extent this Court considers evidence not tied to the particular loans and Trust at issue in this case, this Court should have the benefit of hearing not just from Plaintiff's witnesses on these points.  Third, and conversely, Plaintiff has demonstrated no prejudice, and its knowledge of the Witnesses shows there was none.  *See Preuss*, 970 F. Supp. 2d at 177 (finding no prejudice "because Plaintiffs were well aware of [the witnesses'] identities and the scope of their knowledge"); *EMI Music Mktg. v. Avatar Records, Inc.*, 334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004) ("it is appropriate to invoke Rule 37's harmless error provision" where the moving party "was sufficiently aware of the existence and relevance of the" witnesses); *Wright*, 2001 WL 1035139, at *3 ("Rule 37(c)(1) does not preclude" witnesses "otherwise made known to plaintiff during the discovery process").  Fourth, and finally, if Plaintiff really were prejudiced here, Plaintiff could remedy any prejudice.  *See EMI Music Mktg.*, 344 F. Supp. 2d at 445 (failure to disclose witnesses was harmless when the disclosure was ultimately made just over two months before trial).

It is telling that – notwithstanding the fact that the beginning of the trial is still a month and a half away – Plaintiff does not seek any proposed remedy from this Court other than the complete preclusion of any testimony from the six Witnesses.  That drastic and disfavored option would be inequitable.  Less drastic measures are available, such as the production of Mr. Huber's and Mr. McGovern's transcripts from the DBNTC Actions.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to strike should be denied.

Dated: December 4, 2017

Respectfully submitted,

**CARMODY TORRANCE SANDAK & HENNESSEY LLP**

 /s/ Howard K. Levine      

Anthony M. Fitzgerald (ct04167)
Howard K. Levine (ct10555)
CARMODY TORRANCE
SANDAK & HENNESSEY LLP
195 Church St., 18th Floor
New Haven, CT 06509
Phone: 203 777-5501
Fax: 203 784-3199

Barbara S. Steiner (*pro hac vice*)
Megan B. Poetzel (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Phone: 312 222-9350
Fax: 312 527-0484

Matthew S. Hellman (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave NW
Washington, DC 20001-4412
Phone: 202 639-6000
Fax: 202 639-6066

*Attorneys for Defendant WMC Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of December 2017, the foregoing was filed

electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all

parties by operation of the Court's electronic filing system or by mail to anyone unable to accept

electronic filing.  Parties may access this filing through the court's CM/ECF System.


<u>/s/ Howard K. Levine</u>
Howard K. Levine (ct10555)
Carmody Torrance Sandak & Hennessey LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950
Tel:  203-777-5501
Fax:  203-784-3199
E-mail:  hlevine@carmodylaw.com

{Certification}