UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2,<br><br>Plaintiff,<br><br>v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>Defendant. | Civil Action No. 3:12-cv-1538 (CSH)<br><br>**December 19, 2017** |

## MEMORANDUM AND ORDER

**HAIGHT, Senior District Judge:**

On December 12, 2017 the New York Court of Appeals filed its opinion in *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.* The uncorrected decision, subject to revision, is reported at 2017 WL 6327110.

Counsel for Defendant WMC argue in a letter brief dated December 15, 2017 [Doc. 242] that the Court of Appeals' decision in *Nomura* makes all the difference in the case at bar, with particular reference to Defendant's pending *Daubert* motion to preclude or limit the proffered expert opinion of Dr. Joseph R. Mason, a trial witness on damages identified by Plaintiff TMI. WMC perceives this recent *Nomura* decision as mandating the granting of that motion.

Counsel for Plaintiff TMI argue in a responsive letter brief dated December 18, 2017 [Doc. 246] that the Court of Appeals' decision in *Nomura* has nothing to do with the case at bar, WMC's

1

*Daubert* motion should be denied, and Dr. Mason allowed to testify in the manner appearing in his previously filed written opinion.

The Court desires further submissions of counsel with respect to the possible effects of the *Nomura* decision upon the proper resolution, under governing New York law, of certain issues presented by this case. This Memorandum, which expresses no present opinion on the *Daubert* motion or anything else, is intended by the Court to assist counsel in fashioning the further assistance their additional submissions will give the Court in this challenging case.

WMC's *Daubert* motion argues principally that the "Sole Remedy" provision in the pooling and service agreement (PSA) precludes most of Dr. Mason's damages calculations. This Court's earlier summary judgment opinion, reported at 2017 WL 3401254, posed the question of "the effect of the sole remedies provision upon a trust's claim of an originator's failure to notify other PSA parties of multiple and pervasive breaches of representations and warranties in mortgages the originator negotiated and issued," a question where "some doubt arises from recent New York appellate cases." *Id*. at *15. The principal First Department decisions I identified in the ensuing discussion were *Morgan Stanley Mortgage Loan Trust 2006-13ARX v. Morgan Stanley Mortgage Capital Holdings LLC,* 143 A.D.3d 1 (2016) ("*Morgan Stanley*"), and *Nomura*, 133 A.D.3d 96 (2015). No appeal was taken from the First Department's decision in *Morgan Stanley*. The Court of Appeals reversed the First Department's relevant holding in *Nomura*.

In *Morgan Stanley*, the plaintiff trust claimed that the originator of securitized mortgages breached what may be called a "Duty to Notify" provision in the underlying contract. In the case at bar, the comparable Duty to Notify provision is found in Section 2.03(c) of the PSA, which provides in relevant part that upon discovery by WMC "of a breach of any of the foregoing

2

representations and warranties," WMC "shall give prompt written notice to the others" (including the Trustee).

In *Nomura,* the first of these two First Department cases, the plaintiff trustee asserted a claim under the Duty to Notify provision, and also claimed that the defendant sponsor violated the "No Untrue Statement" provision, found in Section 7 of the mortgage loan purchase agreement (MLPA), which stated that "This Agreement does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained herein not misleading." The No Untrue Statement provision accompanied "the specific representations and warranties" in the MLPAs and PSAs "concerning the suitability of each of the mortgage loans contained in the loan pools."[1] The First Department's decision in *Nomura* held that neither the No Untrue Statement claim nor the Duty to Notify claim were precluded by the Sole Remedy provision. Its order modified the trial court's order:

> to permit plaintiffs to seek damages on the first cause of action for breach of the No Untrue Statement provision (section 7 of the MLPA) and for failure to give prompt written notice after discovering material breaches of the representations and warranties in section 8 of the MLPA.

133 A.D.3d at 110.

In *Morgan Stanley*, the more recent First Department case, the plaintiff trustee asserted a Duty to Notify claim. The trial court dismissed the claim on defendant's motion, but the First Department reversed, relying in part on its prior decision in *Nomura*. The First Department said:

> After the parties briefed this appeal, this Court modified the motion court's decision in *Nomura*, holding that under similar RMBS agreements, a seller's failure to provide the trustee with notice of

---

[1] I have quoted the Court of Appeals' decision in *Nomura*, 2017 WL 6327110, at *1.

> material breaches it discovers in the underlying loans states an independently breached contractual obligation, allowing a plaintiff to pursue separate damages. Consistent with our decision in *Nomura*, we now modify the motion court's order dismissing the failure to notify claim made in this case and reinstate it.

143 A.D.3d at 7 (citation omitted).

The next event in this evolution of authority occurred last week, when the Court of Appeals (after initial argument and then re-argument) decided the appeal in *Nomura*. The Court confined its consideration to the plaintiff trust's No Untrue Statement claim. Plaintiff escaped dismissal of that claim in the First Department. The Court of Appeals reversed and dismissed the claim. The first paragraph of Judge Stein's opinion, after stating the question on appeal, summarizes the Court's holding and rationale. I quote that paragraph in full:

> In these appeals stemming from four residential mortgage-backed securities (RMBS) transactions, we are asked to decide whether claims for general contract damages based on alleged breaches of a "no untrue statement" provision can withstand a motion to dismiss based on a contract provision mandating cure or repurchase as the sole remedy for breaches of mortgage loan-specific representations and warranties. We hold that, inasmuch as the claims for general contract damages at issue here are grounded in alleged breaches of the mortgage loan-specific representations and warranties to which the limited remedy fashioned by the sophisticated parties applies, plaintiffs' claims for general contract damages should be dismissed.

2017 WL 6327110, at *1.

A striking feature of this succinct summary is that the reader may detect within its two sentences the seeds of the present parties' extreme and mutually exclusive interpretations. WMC looks at this decision and sees an application, a triumph, an exaltation of the Sole Remedy provision, which in its specific and sophisticated way sweeps away all other claims, forms or calculations of general contract damages. TMI looks at the decision and sees a No Untrue Statement claim done

4

away with, but a Duty (and Failure) to Notify claim still standing, with undiminished vitality, in full voice, undisturbed by the Court of Appeals in *Nomura*, and held by the First Department in *Nomura* and again in *Morgan Stanley* to survive the Sole Remedy provision: a claim which, if proven, entitles a trust to an independent form of general contract damages.

There are arguments available to the parties at bar which support either of these interpretations. It is open to WMC to say that while the Court of Appeals' precise holding in *Nomura* dismissed a No Untrue Statement claim but said nothing about a Duty to Notify claim as precluded by the Sole Remedy provision, the Court's reasoning necessarily precludes a Duty to Notify claim on the same basis. That is so, the argument would proceed, even though the Court accepted the trust's contention (also pressed by the trust in the instant case) that the breaches of the underlying mortgages' representations and warranties were pervasive and systemic. The Court of Appeals said:

> [W]e accept as true HSBC's allegations of pervasive breaches of the representations made as to the mortgage loans and misleading omissions in the transaction documents, including the mortgage loan files, mortgage loan schedules, and prospectus supplements. Significantly, however, the complaints themselves affirmatively pleaded that the claims based on alleged breaches of the No Untrue Statement Provision were grounded in "misrepresentations and omissions with respect to the Mortgage Loans," themselves. That is, HSBC claimed that it was defendant's breaches of the Mortgage Representations – found in section 8 of the MLPAs, and expressly incorporated by reference in section 2.03 of each PSA – that were "systemic in nature."

2017 WL 6327110, at *4 (footnote omitted). That circumstance was crucial to the paramountcy of the Sole Remedy provision. As the Court then explained:

> [T]here are no allegations in the complaints of a breach of the No Untrue Statement Provision in Section 7 of the MLPAs as to which the Sole Remedy Provision would not apply because all of the claims asserted under section 7 are also breaches of the loan-specific

5

Mortgage Representations contained in section 8.

*Id*. at \*6. That reasoning should apply to a Duty to Notify claim, WMC might argue, because the second cause of action in TMI's complaint, captioned "Breach of Contract/Failure to Notify," affirmatively alleges that "the PSA requires WMC to give prompt written notice to the other PSA parties (including the Trustee) when it discovers that *any Loan breaches its representations and warranties*," and "WMC knew or should have known that *the Loans breached its representations and warranties*, but failed to notify the PSA parties." Compl. ¶¶ 94, 95 (emphases added).

TMI might argue that a fundamental difference between WMC's obligations under the No Untrue Statement provision and the Duty to Notify provision results in a Duty to Notify claim falling outside the Sole Remedy provision, while a No Untrue Statement claim is precluded by it. In the transaction documents before the Court of Appeals in *Nomura*, the No Untrue Statement provision appeared in section 7 of the MLPA, entitled "Representations, Warranties and Covenants of the Seller." The No Untrue Statement provision was one of several general representations made by the *Nomura* defendant in section 7, followed by section 8, where defendant made specific representations and warranties about each mortgage loan. Read together, the *Nomura* defendant was saying in section 7 that the representations it made about loans in section 8 are true. Both representations, specific and general, are made at the time of contracting, and are true or false at that time. One can readily understand why, in the Court of Appeals' phrase, the claim for breach of the No Untrue Statement provision is "grounded in alleged breaches of the mortgage loan-specific representations and warranties," so that the Sole Remedy provision embraces both claims. 2017 WL 6327110, at \*1. In contrast, the defendant's Duty to Notify may arise at a later time, when the defendant discovers breaches of the mortgage loan warranties or should have done so, a circumstance

6

which places the defendant under an additional and affirmative duty: notifying the other parties. *Quaere* whether a claim for breach of *that* duty would be seen by the Court of Appeals as taking the case out of the Sole Remedy provision's limitation on damages for breaches of the mortgage loan representations themselves.

It is with deference that I suggest to attorneys of this quality what arguments they might or might not make, and nothing I have said during these reflections intimates in any way what rulings the Court will ultimately make. But the importance of the Court of Appeals' decision in *Nomura* to the issues in this case is sufficient to require further submissions by counsel on that subject. The parties are directed to file those submissions on or before December 27, 2017. I regret the necessity of intruding upon a calm, peaceful and holy season, but trial is imminent. Sometimes litigation marches to its own drum.

It is SO ORDERED.

Dated: New Haven, Connecticut
December 19, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge