UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2,<br><br>Plaintiff,<br><br>v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>Defendant. | Civil Action No.<br>3:12-cv-1538 (CSH)<br><br><br>December 28, 2017 |

## OMNIBUS RULING ON IN LIMINE MOTIONS

**HAIGHT, Senior District Judge:**

A number of limine motions, filed by Plaintiff TMI or Defendant WMC on the authority of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, seek to preclude or limit the proposed testimony of expert witnesses. These motions also turn upon the proper interpretation of Fed. R. Evid. 702. This Ruling resolves those motions.

A number of *Daubert* motions are generated by or relate to WMC's motion [Doc. 185] to partially exclude the expert testimony of Dr. Joseph R. Mason, a witness proffered by TMI. Mason's Ph.D. is in Economics from the University of Illinois. He is a professor of finance and banking at the Ourso School of Business, Louisiana State University, and a senior fellow at the Wharton School of the University of Pennsylvania. In Dr. Mason's words, "My field of specialization as an economist lies in applying financial, economic, valuation, and statistical analyses to complex commercial

1

litigation and corporate strategic decision-making." Report, Ex. D [Doc. 185-6] at ¶ 10. He testifies frequently as an expert witness in litigation.

Dr. Mason describes the services he has rendered to TMI in ¶ 4 of his report:

> I have been asked by Plaintiff's counsel to provide my expert opinion on the damages incurred by the Trust under three alternative damages theories, namely: (i) monetary relief sufficient to place the Trust back in the position they would have been in had the WMC loans not been purchased by the Trust ("Rescissory Damages"); (ii) the damages incurred by the Trust resulting from their purchase of the WMC loans at a price above the actual value of those loans ("Benefit of the Bargain Damages"); and (iii) the damages incurred by the Trust based on WMC's breach of its obligation to repurchase mortgage loans in the Trust that breached WMC's representations and warranties made in connection with the sale of the loans to the Trust of ("Repurchase Damages").

Mason summarizes his three conclusions in ¶ 5 of his report. His opinions, expressed with the testimonially familiar "degree of economic certainty," are that Rescissory Damages amount to $906.3 million;[1] Benefit of the Bargain damages are "reasonably approximated by Rescissory Damages," in the same amount of $906.3 million; and Repurchase Damages amount to $354.9 million.

WMC's *Daubert* motion seeks to exclude entirely Dr. Mason's testimony with respect to the first two of these three damages calculations: Rescissory Damages and Benefit of the Bargain Damages. Those particular calculations, WMC contends in its notice of motion [Doc. 185], "are irrelevant as a matter of law because the sole remedy provision of the contract provides the only

---

[1] WMC's latest Supplemental Brief [Doc. 254] references a "recently updated Rescissory Damages estimate" of $983.5 million, citing an "Updated Expert Report of Dr. Joseph R. Mason" dated December 22, 2017. Def. Suppl. Br. 2 n. 1. The Court is not in possession of any updated report, and this Ruling will rely on the version of Dr. Mason's Expert Report [Doc. 185-6] upon which the Parties based their briefing and argument. The exact dollar figure of claimed rescissory damages is not material to my determinations herein, and I will continue to use the $906.3 million figure for the purposes of this Ruling.

legally acceptable calculation of damages." Alternatively, WMC argues that "even apart from the sole remedy clause, Rescissory and Benefit of the Bargain Damages are unavailable as a matter of law and, at any rate, neither remedy is available because TMI [or Mason] offers no opinion as to causation." The careful reader will have observed that this single sentence purports to identify two, not one, alternatives to the sole remedy clause. As for Mason's third damages theory, focusing upon WMC's demonstrated failure to repurchase specific mortgage loans, WMC's motion accepts that approach in principle, but quarrels with the accuracy of Mason's calculations in practice.

WMC's objection to Dr. Mason's Rescissory Damages theory is well founded. WMC relies principally upon a single isolated holding its brief extracts from the First Department's multi-layered decision in *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96, 19 N.Y.S.3d 1 (N.Y. App. Div. 2015). In connection with one of the four residential mortgage-backed security (RMBS) cases consolidated for a single appeal, the Appellate Division said: "With respect to plaintiffs' causes of action for rescission, even if section 9(c) of the MLPA [mortgage loan purchase agreement] and section 2.03(e) of the PSA [pooling and service agreement] do not waive plaintiffs' right to seek such relief, rescission would be unwarranted because damages are available," 133 A.D. 3d at 108, language the WMC's reply brief at 3 correctly characterizes as holding that "because the plaintiffs had a damages remedy, they could not obtain rescission, regardless of whether that damages remedy was exclusive."

The only case the First Department cited in *Nomura* for the proposition that "rescission would be unwarranted because damages are available" is *Rudman v. Cowles Communications*, 30 N.Y.2d 1 (N.Y. 1972). The plaintiff in *Rudman*, who owned a specialty publishing firm, contracted to sell his business to the defendant, a larger publisher, and contracted further for employment by

3

defendant. Things did not go well. Defendant fired plaintiff. Plaintiff's suit against defendant urged that "both agreements constituted a single transaction, the continued performance of one being a condition for the other," so that "defendants' breach of the employment agreement mandates that the acquisition be rescinded." 30 N.Y.2d at 13. Plaintiff sued in a single action for "damages for wrongful discharge and rescission for fraud." *Id*. at 4. The New York Court of Appeals affirmed the trial court's determination that each agreement "was a separate and independent transaction," but went on to say:

> Assuming, however, that mutually dependent contracts were involved, plaintiffs are not entitled as a matter of law to rescission. Such relief, lying in equity, is a matter of discretion. Moreover, the equitable remedy is to be invoked only when there is lacking complete and adequate remedy at law and where the *status quo* may be substantially restored. Here, damages appear adequate and it is impracticable to restore the *status quo*, the assimilation of plaintiffs' company being complete.

*Id.* at 13-14 (citations omitted).

The Court of Appeals' decision in *Rudman* is cast in broad terms. The Second Circuit cited, quoted and followed *Rudman* in *New Shows, S.A. de C.V. v. Don King Productions, Inc.*, 210 F.3d 355, 2000 WL 354214 (2d Cir. 2000) (unpublished opinion), where plaintiff sued defendant for breach of a contract to co-promote a boxing event. The Second Circuit affirmed a jury verdict in favor of plaintiff on breach of contract and fraud claims, but plaintiff, seemingly not satisfied, contended on appeal that "the district court erred in declining to instruct the jury on the remedy of rescission." 2000 WL 354214 at *2. The Second Circuit rejected that contention:

> The premise of these arguments, that plaintiff is in fact entitled to rescission, is, however, incorrect.
>
> Rescission is an equitable remedy, which "is to be invoked only

4

> when there is lacking [a] complete and adequate remedy at law and where the status quo may be substantially restored. . . . [Where] damages appear adequate and it is impracticable to restore the status quo," rescission is inappropriate.
>
> New Shows cannot establish two of the prerequisites to rescission. The harm plaintiff claims to have suffered is the financial loss it incurred when the boxing event failed to sell as many tickets as anticipated. Indeed, what New Shows seeks though rescission is $2,194,411, that is, payment for the net losses it suffered after entering into the contract and co-promoting the event. But since the legal remedy in this case is adequate, the equitable remedy of rescission is simply inappropriate. Moreover, the boxing event has already taken place and [defendant] DKP has already paid the fighters their purses. Not only would it be "impracticable" to restore the status quo; it would be nearly impossible. This fact alone, and independently, renders rescission inappropriate.

*Id*. (citing and quoting *Rudman*).

That preclusive effect upon rescission applied, even though the damages the *New Shows* plaintiff sought to recover on its equitable rescission claim ($2,194,411) far exceeded the amounts the jury awarded on plaintiff's legal contract and fraud claims ($63,500 and $700,000 respectively). The plaintiff might not regard those relatively modest amounts at law as an adequate remedy for the losses it claimed in equity, but the Second Circuit reached the opposite conclusion. That discrepancy is not presented by the case at bar, where Dr. Mason's calculation of Rescissory Damages arrives at the same amount as his calculation of Benefit of the Bargain Damages. Dr. Mason expresses his understanding that "the aim of Rescissory Damages is to put the parties back in the financial position they would have been in had the loans not been purchased." Report at ¶ 68. He understands that Benefit of the Bargain Damages are "available to compensate the Certificateholders for the difference between the loans' represented value and that which would have been attributed to them had the fact of the underwriting breaches been truthfully disclosed." Report at ¶ 77. Dr. Mason

5

could with accuracy have described the first proposition as sounding in equity and the second in law, but he is not a lawyer, and we may during this charitable season forgive him for not always talking like one.

The key effect of the appellate decisions in *Rudman* and *New Shows* is that they foreclose TMI from asserting against WMC an equitable claim for rescission, or by extension, for rescissory damages. The quoted discussion from *New Shows* makes it clear that, in the Second Circuit's view, the existence of an adequate legal remedy, standing alone, is sufficient to preclude a plaintiff from establishing a necessary prerequisite to the equitable remedy of rescission. That is so, where, as demonstrated *supra*, the legal remedy available is markedly less than the equitable remedy a plaintiff calculates. Dr. Mason's calculation of damages at law for lost Benefit of the Bargain results in the same amount as his calculation for Rescissory Damages: dramatic evidence that the legal remedy is adequate to its task. The result is that rescission is inappropriate in this case. WMC's *Daubert* motion with respect to Dr. Mason will be granted, to the extent that he will not be permitted to testify about his calculation of Rescissory Damages. That motion will be denied otherwise, which is to say, Dr. Mason will be allowed to explain and defend his calculations of Benefit of the Bargain Damages and Repurchase Damages.

All other *Daubert* motions, by either party, will be denied. Trial-court discretion in testing expert reliability, conferred by *Daubert*, is the discretion "to choose among *reasonable* means of excluding expertise that is *fausse* and science that is junky." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158-59 (1999) (Scalia, J., concurring). "The flexible *Daubert* inquiry gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Amorgianos v. Nat'l R.R.*

*Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002) (Walker, Ch. J.). Fed. R. Evid. 702 requires a district court, performing what has come to be known as its "gatekeeping" function, to consider (a) "the expert's scientific, technical, or other specialized knowledge"; (b) whether "the testimony is based on sufficient facts or data"; (c) whether "the testimony is the product of reliable principles and methods;" and (d) whether "the expert has reliably applied the principles and methods to the facts of the case."

The principal target of *Daubert* and Rule 702 is the professional expert witness – well educated, impeccably dressed, highly articulate – who dispenses cleverly packaged junk scientific or other specialized opinions to lay jurors. The gatekeeper judge endeavors to keep that renegade sheep on the far side of the stile, unable to mislead the flock of jurors, safely grazing in the protected pasture of the courtroom.

In the case at bar, the other expert witnesses proposed by one party or the other are Brazier, Ross, Leamer, Abshier, and Olasov. These individuals, together with Dr. Mason, bear no resemblance to the purveyors of junk science with whom *Daubert* and Rule 702 are traditionally concerned. These proposed witnesses are experienced in their fields. The opinions they express appear on the surface to be factually derived or supported. As argued in the briefs of counsel, one party's ostensible reason for excluding the opinion testimony of the other party's expert is that the opinion will not assist the Court as trier of the facts at trial. I say "ostensible reason" because these *Daubert* motions, while tracking the language of Rule 702(a), are contending in essence that a particular opinion does not assist the Court because the opinion is based upon or reflects a proposition of substantive law with which the objecting party disagrees. Those are legitimate disputes, but they are not *Daubert* disputes. Illustrative examples of the questions of law at issue

in the case are the paramountcy of the sole remedy provision, and the necessity of proving causation to establish a claim for damages. The resolution of these questions of law may depend, in part, upon the resolution of related issues of fact. For example: Other pre-trial motions have revealed a controversy, apparently to be addressed by facts witnesses, as to whether WMC's gross negligence and cynical indifference resulted in systemic and pervasive breaches of representations and warranties in an inordinate number of mortgages in the pool (as TMI contends), or whether WMC engaged in a laudable, good-faith, state-of-the art effort to detect and prevent fraud (as WMC contends). The resolution of issues such as this will depend upon the testimony of fact witnesses, not the opinions of experts.

I conclude that the proper course to follow at the trial is to receive the testimony of the proposed expert witness (save for Dr. Mason's testimony about rescissory damages). The expert testimony will be subject to cross-examination and run its full course, so that a full record is made. To preserve the record for a possible appeal, counsel may make an initial standing objection to an adverse witness's opinion which counsel contends is contrary to the governing law. At the end of the trial, this Court will find the facts specially and state its conclusions of law separately, as commanded by Fed. R. Civ. P. 52(a). If an appeal is taken, the Court of Appeals will be in a position on a full record to consider whether this Court's findings are clearly erroneous, and review its conclusions *de novo*. That is preferable to the District Court deciding a close *Daubert* question *in limine* and exclude the opinion, having the Court of Appeals reverse that ruling, and needing to decide if a new trial is necessary.

There is an additional motion *in limine* with which this Ruing should deal. WMC made a motion [Doc. 184] to exclude sampling. It filed a notice of additional authority in support of that

motion [Doc. 226], to which TMI responded [Doc. 227]. I adhere to the Court's prior opinion on this subject [Doc. 166], 2017 WL 3401254, at *22. This motion will be DENIED.

For the foregoing reasons, the Court makes this Order:

1. Plaintiff's Motion [Doc. 180] to exclude certain testimony of WMC's expert witnesses is DENIED.

2. Defendant's Motion [Doc. 184] to exclude sampling is DENIED.

3. Defendant's Motion [Doc. 185] to exclude the expert testimony of Mason is GRANTED IN PART AND DENIED IN PART.

4. Defendant's Motion [Doc. 186] to exclude expert testimony of Brazier is DENIED.

5. Defendant's Motion [Doc. 187] to exclude expert testimony of Ross is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
December 28, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States district Judge