# EXHIBIT A

## STIPULATIONS AND PROPOSED FINDINGS OF
## FACT AND CONCLUSIONS OF LAW

It is hereby stipulated by TMI Trust Company, solely in its capacity as Separate Trustee of the SABR 2006-WM2 Trust (the "Separate Trustee" or "TMI"), and by WMC Mortgage, LLC ("WMC") that the following facts and conclusions of law can be introduced by any party at trial or for any other purpose in this litigation:

### A.      The Parties

1.      TMI is a trust company organized under the laws of the State of Texas with its principal place of business at TMI Trust Company, c/o Jane Strobel VP, 1100 Abernathy Road NE, Suite 480, Atlanta, GA 30328-5646.

2.      WMC Mortgage, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in California.  WMC Mortgage, LLC is the successor entity to WMC Mortgage Corp., which originated residential home mortgage loans.

### B.      The Securitization

3.      WMC originated or acquired 5,444 residential mortgage loans that it sold to an affiliate of Barclays Bank PLC known as Sutton Funding, LLC ("Sutton") pursuant to the terms of the Mortgage Loan Purchase Agreement (the "MLPA"), dated as of July 1, 2006 between WMC and Sutton.  A copy of the MLPA has been marked as Exhibit 2 for trial.

4.      The MLPA is to be construed under the laws of the State of New York and the obligations, rights and remedies of the parties under the MLPA shall be determined in accordance with the substantive laws of the State of New York (without regard to conflicts of laws principles), except to the extent preempted by Federal law.

5.      For all 5,444 of the mortgage loans WMC sold to Sutton in July, 2006, WMC either (1) originated the loans subject to WMC's Underwriting Guidelines, or (2) purchased the loans after re-underwriting the mortgage loans in accordance with WMC's Underwriting Guidelines.

6.      Sutton transferred its rights, title and interest in 5,162 of the loans that it had acquired from WMC in July 2006 (the "5,162 loans" or the "Mortgage Loans") to an affiliated non-party, Securitized Asset Backed Receivables LLC ("SABR"), pursuant to a Bill of Sale dated October 26, 2006.

7.      The Mortgage Loans had first approval dates as follows:

    a.  1 Mortgage Loan with an original principal balance of $166,400 had a first approval date in 2004.

    b.  25 Mortgage Loans with an original principal balance of $4,266,974 had a first approval date in 2005.

    c.  142 Mortgage Loans with an original principal balance of $26,406,557 had a first approval date between January 1, 2006 and March 31, 2006.

    d.  342 Mortgage Loans with an original principal balance of $67,563,562 had a first approval date between April 1, 2006 and April 31, 2006.

    e.  2,352 of the Mortgage Loans with an original principal balance of $453,674,388, had a first approval date between May 1, 2006 and May 31, 2006.

    f.  2,300 of the Mortgage Loans with an original principal balance of $450,204,120 had a first approval date between June 1, 2006 and June 30, 2006.

8.      A Pooling and Servicing Agreement, dated as of October 1, 2006 (the "PSA") created the Securitized Asset Bank Receivables LLC Trust 2006-WM2 (the "Trust") and governs

the rights and responsibilities of the parties thereto.  A copy of the PSA has been marked as Exhibit 1 for trial.

9.      The parties to the PSA were SABR as "Depositor", HomEq Servicing Corporation as "Servicer" ("HomEq"), WMC as "Responsible Party", and Wells Fargo Bank, N.A ("Wells Fargo") as "Trustee".

10.     Pursuant to the terms of the PSA, SABR sold, transferred, assigned, set over and otherwise conveyed its rights, title and interest in the Mortgage Loans to the Trustee for the benefit of the certificateholders of the Trust for the purpose of securitizing the Mortgage Loans.  The Trustee, on behalf of the Trust, accepted the Mortgage Loans.

11.     The Closing Date is defined in the PSA as October 26, 2006.

12.     The PSA is to be construed in accordance with and governed by the substantive laws of the State of New York.

13.     In the PSA, WMC made certain representations and warranties concerning the characteristics of the Mortgage Loans.  Schedule III of the PSA contains 71 subsections containing representations and warranties made by WMC as to the Mortgage Loans as of the Closing Date or such other date specified therein.

14.     The Mortgage Loans in the Trust were initially serviced by HomEq, and beginning in October 2010, were serviced by HomEq's successor, Ocwen Loan Servicing LLC ("Ocwen" and collectively with HomEq, the "Servicer").

15.     The Mortgage Loans are identified on the Mortgage Loan Schedule for the Trust, along with certain attributes of each loan, including primary borrower, the location of the subject property, the purpose of the loan (*i.e.*, purchase or refinance), the lien position of the loan, the documentation program under which the borrower applied for the loan, and certain credit attributes

of the borrower (*e.g.*, FICO score, credit grade, debt-to-income ratio).   The Mortgage Loan
Schedule for the Trust has been marked as Exhibit 3 for trial.

### C.    WMC's Operations

16.    WMC maintained Underwriting Guideline manuals, which it periodically updated,
that applied to the underwriting of Mortgage Loans that it originated or acquired.

17.    The following versions of WMC's Underwriting Guideline manuals applied to one
or more of the Mortgage Loans at the time they were first approved by WMC:

      a.      WMC's October 2003 Underwriting Guideline manuals (Trial Ex. 4);

      b.      WMC's March 2005 Underwriting Guideline manuals (Trial Ex. 5);

      c.      WMC's September 2005 Underwriting Guideline manuals (Trial Ex. 6);

      d.      WMC's October 2005 Underwriting Guideline manuals (Trial Ex. 7);

      e.      WMC's November 2005 Underwriting Guideline manuals (Trial Ex. 8);

      f.      WMC's December 2005 Underwriting Guideline manuals (Trial Ex. 9);

      g.      WMC's January 2006 Underwriting Guideline manuals (Trial Ex. 10);

      h.      WMC's February 2006 Underwriting Guideline manuals (Trial Ex. 11);

      i.      WMC's March 2006 Underwriting Guideline manuals (Trial Ex. 12);

      j.      WMC's April 2006 Underwriting Guideline manuals (Trial Ex. 13);

      k.      WMC's May 2006 Underwriting Guideline manuals (Trial Ex. 14); and

      l.      WMC's June 2006 Underwriting Guideline manuals (Trial Ex. 15).

18.    WMC created and maintained a two-tiered credit matrix that identified certain
minimum eligibility requirements for different loan programs and loan documentation types based
on the borrower's mortgage and credit history; details relating to the loan-to-value ratio, the
combined loan-to-value ratio, and the loan amount; and whether the borrower was seeking a

second mortgage "combo."  Copies of the Credit Matrices have been marked as Trial Exhibits 16-17 and 1432-1440.

### D.      Appointment of a Separate Trustee

19.      Pursuant to an order of the Minnesota District Court for the County of Hennepin dated June 6, 2012, Wells Fargo entered into an Instrument of Appointment and Acceptance ("IAA") with Law Debenture, appointing Law Debenture Company of New York ("Law Debenture") as the "Separate Trustee" of the Trust and granting Law Debenture authority to take certain actions authorized by the PSA, including to seek repurchase of the Mortgage Loans.  A copy of the IAA has been marked as Trial Exhibit 517.

20.      Law Debenture previously served as the Separate Trustee of the Trust and Plaintiff in this action.

### E.      Pre-Suit Correspondence

#### 1.      September 16, 2011 Letter

21.      On August 29, 2011, Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"), as counsel for a certificateholder, sent Wells Fargo a letter purporting to notify Wells Fargo of alleged breaches of representations and warranties in the PSA with respect to 238 Mortgage Loans and instructing Wells Fargo to seek repurchase of the same.  A copy of the August 29, 2011 letter has been marked as Trial Exhibit 52.

22.      On September 16, 2011, Wells Fargo, acting solely in its capacity as Trustee, sent WMC a letter purporting to notify WMC of the alleged breaches of representations and warranties in the PSA with respect to the 238 certain Mortgage Loans identified in the earlier August 29, 2011 letter from the certificateholder.  A copy of the September 16, 2011 letter and related schedule have been marked as Trial Exhibits 51 and 53.

23.     WMC responded to the September 16, 2011 letter from Wells Fargo on September 23, 2011, requesting supporting documentation cited by the certificateholders and other documentation, including servicing records, purportedly to enable WMC to evaluate whether the breach allegations made by the certificateholder satisfied the requirements of PSA Section 2.03. A copy of WMC's September 23, 2011 letter has been marked as Trial Exhibit 615.

24.     WMC sent loan-by-loan response letters for 13 loans denying that WMC had an obligation to repurchase the loans identified in the September 16, 2011 letter.  Those letters are marked as Trial Exhibit 55.  Additionally, in a letter received by Wells Fargo on January 10, 2012, WMC asserted that it had responded to all of the repurchase requests asserted in the September 16, 2011 letter.  That letter is marked as Trial Exhibit 617.

### 2.     May 30, 2012 Letters

25.     On May 17, 2012, Kasowitz, as counsel to the same certificateholder, sent Wells Fargo a letter purporting to notify Wells Fargo of alleged breaches of representations and warranties in the PSA with respect to 163 Mortgage Loans and instructing Wells Fargo to seek repurchase of the same.  A copy of the May 17, 2012 letter has been marked as Trial Exhibit 56.

26.     On May 30, 2012, Wells Fargo, acting solely in its capacity as Trustee, sent WMC a letter purporting to notify WMC of the alleged breaches of representations and warranties in the PSA with respect to the 163 certain Mortgage Loans identified in the earlier May 17, 2012 letter from the certificateholders.  A copy of the May 30, 2012 letter and related schedule has been marked as Trial Exhibits 56 and 137-139.

27.     On May 23, 2012, Kasowitz, as counsel for the same certificateholder, sent Wells Fargo a letter purporting to notify Wells Fargo of alleged breaches of representations and

warranties in the PSA with respect to 58 Mortgage Loans and instructing Wells Fargo to seek repurchase of the same.  A copy of the May 23, 2012 letter has been marked as Trial Exhibit 57.

28.     On May 30, 2012, Wells Fargo, acting solely in its capacity as Trustee, sent WMC a letter purporting to notify WMC of the alleged breaches of representations and warranties in the PSA with respect to the 58 certain Mortgage Loans identified in the earlier May 23, 2012 letter from the certificateholder.  A copy of the May 30, 2012 letter and related schedule has been marked as Trial Exhibits 57 and 58.

29.     WMC responded to the May 30 letters from Wells Fargo on June 21, 2012, requesting supporting documentation, including servicing records, purportedly to enable WMC to evaluate whether the breach allegations made by the certificateholder satisfied the requirements of PSA Section 2.03.  A copy of WMC's June 21, 2012 letter has been marked as Trial Exhibit 627.

30.     After the appointment of Law Debenture, WMC sent Law Debenture a letter on July 30, 2012, denying that WMC had an obligation to repurchase the loans identified in the May 30 letters.  A copy of the July 30, 2012 letter has been marked as Trial Exhibit 631.

### 4. June 7, 2012 Letter

31.     On May 31, 2012, Kasowitz, as counsel for the same certificateholder, sent Wells Fargo a letter purporting to notify Wells Fargo of alleged breaches of representations and warranties in the PSA with respect to 67 Mortgage Loans and instructing Wells Fargo to seek repurchase of the same.  A copy of the May 31, 2012 Kasowitz letter has been marked as Trial Exhibit 59.

32.     On June 7, 2012, Wells Fargo, acting solely in its capacity as Trustee, sent WMC a letter purporting to notify WMC of the alleged breaches of representations and warranties in the PSA with respect to the 67 certain Mortgage Loans identified in the earlier May 31, 2012 letter

from the certficateholders.  A copy of the June 7, 2012 letter and related schedule has been marked as Trial Exhibit 59.

33.     WMC responded to the June 7, 2012 letters on June 21, 2012, requesting supporting documentation, including servicing records, purportedly to enable WMC to evaluate whether the breach allegations made by the certificateholder satisfied the requirements of PSA Section 2.03. A copy of WMC's June 21, 2012 letter has been marked as Trial Exhibit 627.

34.     After the appointment of Law Debenture, WMC sent Law Debenture a letter on August 6, 2012, denying that WMC had an obligation to repurchase the loans identified in the June 7, 2012 repurchase request.  A copy of the August 6, 2012 letter has been marked as Trial Exhibit 632.

### 5. June 28, 2012 Letter

35.     On June 8, 2012, Kasowitz, as counsel for the same certificateholder, sent Wells Fargo a letter purporting to notify Wells Fargo of alleged breaches of representations and warranties in the PSA with respect to 163 Mortgage Loans and instructing Wells Fargo to seek repurchase of the same.  A copy of the June 8, 2012 letter has been marked as Trial Exhibit 61.

36.     On June 28, 2012, Law Debenture, acting solely in its capacity as Separate Trustee, sent WMC a letter purporting to notify WMC of the alleged breaches of representations and warranties in the PSA with respect to the 163 certain Mortgage Loans identified in the earlier June 8, 2012 letter from the certificateholders.  A copy of the June 28, 2012 letter and related schedule has been marked as Trial Exhibit 61.

37.     WMC responded to the June 28, 2012 letter on July 11, 2012, requesting supporting documentation, including servicing records, to purportedly enable WMC to evaluate whether the

breach allegations made by the certificateholder satisfied the requirements of PSA Section 2.03. A copy of the July 11, 2012 letter has been marked as Trial Exhibit 630.

38.     WMC sent Law Debenture a letter on August 6, 2012, denying that WMC had an obligation to repurchase the loans identified in the June 28, 2012 repurchase request.  A copy of the August 6, 2012 letter has been marked as Trial Exhibit 632.

39.     In total, the September 16, 2011, May 30, 2012, June 7, 2012, and June 28, 2012 letters from Wells Fargo and Law Debenture (together, the "Letters") forwarded to WMC allegations of breaches made by Kasowitz with respect to six-hundred and eighty-nine (689) Mortgage Loans.

40.     WMC has not repurchased any of the Mortgage Loans identified in the Letters.

**D.     The Litigation and the Loans at Issue**

41.     On October 26, 2012, Law Debenture, acting solely in its capacity as Separate Trustee on behalf of the Trust, commenced this action.

42.     On September 29, 2017, TMI was substituted for Law Debenture as Separate Trustee for the Trust in connection with this litigation.

43.     The Separate Trustee's sampling expert, Dr. Nelson R. Lipshutz, drew a sample of 400 Mortgage Loans in the Trust that had not been paid in full as of the time the Sample was drawn.  Dr. Lipshutz issued an amended report dated July 20, 2015.

44.     Both Parties engaged re-underwriting experts to evaluate the Mortgage Loans in the Sample.  The Separate Trustee engaged Mr. Richard Payne.  WMC engaged Mr. David Abshier (together with Mr. Payne, the "Underwriting Experts").

45.     Of the 400 Sample Loans, there are 98 Mortgage Loans for which Mr. Payne opines that the Mortgage Loans contained material breaches of representations and warranties made in

the PSA that materially increased the risk of loss associated with the Mortgage Loan (the "Disputed

Loans").  Mr. Abshier opines that the Disputed Loans were reasonable extensions of credit which

do not contain breaches of representations and warranties in the PSA that materially increase the

risk of loss associated with the Mortgage Loan.

46.    Of the 400 Sample Loans, 57 had previously been the subject of breach allegations

made by Kasowitz in the Letters forwarded to WMC by the Trustee or Separate Trustee.

47.    Of those 57 Mortgage Loans:

a. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████

b. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

c. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

**E.**     **Former and Current Employees and Secondees of WMC**

48.     The following individuals worked at WMC during the time periods specified below:







## STIPULATION AS TO CERTAIN EVIDENITARY MATTERS

It is hereby stipulated by TMI Trust Company, solely in its capacity as Separate Trustee of the SABR 2006-WM2 Trust (the "Separate Trustee" or "TMI"), and by WMC Mortgage, LLC ("WMC") that:

1.     Solely for purposes of this Action, Exhibit 73 for trial, Bates range WMC-SABR06WM2-01543051-WMC-SABR06WM2-01543091 (the "Ombudsman Documents") are deemed authentic for purposes of Federal Rules of Evidence 901.

2.     Solely for purpose of this action, WMC will not object to the Ombudsman Documents at trial for lack of foundation.

3.     Solely for purposes of this action, WMC does not object to TMI's use of the Ombudsman Documents as business records for the purposes of satisfying Federal Rules of Evidence 803(6).  WMC reserves its rights to object to the Ombudsman documents on any other grounds, including that the documents contain hearsay within hearsay.

4.     The following individuals worked at WMC at the time that they reported complaints to the Ombudsman: ██████████████████████████████.

5.     All documents that were produced by third-parties Barclays, Wells Fargo, and Ocwen are deemed authentic for purposes of FRE 901, except that documents reflecting that they were created by any person or entity other than the producing third-party entity are deemed only to be authentic copies of documents located in the producing third-party entity's files.

6.     All documents that were produced by third-parties Barclays, Wells Fargo, and Ocwen are deemed to be records of regularly conducted activity for purposes of FRE 803(6), except that documents reflecting that they were created by any person or entity other than the producing third-party entity are deemed only to be copies of documents located within the producing third-party entity's files.

14

7.     TMI will not object to the admissibility of statements made by representatives of Law Debenture as Separate Trustee in connection with this litigation as admissions by a party.

8.     The Parties reserve and do not waive all other rights and objects, including hearsay objections, regarding the documents covered by the Stipulation.