UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM2,<br><br>Plaintiff,<br><br>v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>Defendant. | Civil Action No.<br>3:12-cv-1538 (CSH)<br><br><br>February 13, 2018 |

## **MEMORANDUM AND ORDER**

**HAIGHT, Senior District Judge:**

A bench trial of this RMBS case began on January 16, 2018 and was concluded on February 5, 2018. This Memorandum and Order memorializes scheduling directions, and discusses certain evidentiary issues.

**A.    Scheduling Order**

By separate text order, the Court has endorsed times for submissions negotiated and proposed by counsel for the parties. Letter, Doc. 295. Specifically: Opening post-trial briefs and proposed findings of fact and conclusions of law will be exchanged on March 22, 2018. Reply briefs and responses to the other party's proposed findings of fact and conclusions of law will be exchanged on May 7, 2018.

These submissions will then be filed with the Court, with additional copies delivered to

1

Chambers. Neither party will seek an extension of these times, absent a showing of good cause.

The case will be called for final statements, summations and arguments on May 22, 2018, at 10:00 a.m., in the 17th Floor Courtroom at 157 Church Street, New Haven, CT (a venue now familiar to counsel). Counsel for Defendant will be heard first; then counsel for Plaintiff; the Court will hear supplemental arguments if asked to do so, provided that the last word will go, in keeping with tradition, to counsel for Plaintiff. The Court imposes no time limits in respect of these arguments.

The case will then be ripe for decision.

**B.      Discussion**

Toward the end of the trial, a number of objections were made by counsel for Plaintiff or for Defendant to evidence offered by the other party. Those objections, which addressed the testimony of witnesses (fact and expert) or the proffering of exhibits, purported for the most part to challenge the relevance of the evidence in question. I say "purported" because while counsel frequently cast their objections on the ground that the evidence was *irrelevant*, their unstated concern was that the evidence was contrary to the objecting party's *theory of the case*: the perception of Plaintiff, to give an example, that the Defendant's prevailing culture brought about a pervasive creation and concealment of borrowers' breaches of representations and warranties. The Defendant's vigorous rejection of that institutional vice, and its protestation of institutional virtue, set the stage for a wide variety of related but separate factual issues.

The parties' assertions of irrelevance may be analyzed by considering what the Federal Rules of Evidence say about relevance. Rule 402 states, with a brevity of expression not often found in legal writing: "Relevant evidence is admissible," and "Irrelevant evidence is not admissible." Rule

401 contains a "Test for Relevant Evidence" which provides:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

The test for determining whether particular evidence is relevant is not a stringent or demanding one. The drafters of the Rules did not intend it to be. The Advisory Committee published an extended Note to Rule 401 which I will quote at some length (omitting the citations):

> Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient value to justify receiving it in evidence. . . .
>
> . . . .
>
> Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matter sought to be proved? Whether the relationship exists depends upon principles evolved by experience or science, applied logically to the situation at hand. The rule summarizes this relationship as a "tendency to make the existence" of the fact to be proved "more probable or less probable." . . .
>
> The standard of probability under the rule is "more . . . probable than it would be without the evidence." Any more stringent requirement is unworkable and unrealistic. . . . "A brick is not a wall." . . . "[I]t is not to be supposed that every witness can make a home run." Dealing with probability in the language of the rule has the added virtue of avoiding confusion between questions of admissibility and questions of the sufficiency of the evidence.
>
> The rule uses the phrase "fact that is of consequence to the determination of the action" to describe the kind of fact to which proof may properly be directed. . . . The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action. . . .

> The fact to which the evidence is directed need not be in dispute. While situations well arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice . . . . Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding. Charts, photographs, views of real estate, murder weapons, and many other items of evidence fall in this category. A rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of this helpful evidence, or at least the raising of endless questions over its admission.

This quotation is taken from the Advisory Committee Notes to the 1972 Proposed Rules, which became effective in 1975. The language from Rule 401 itself, which I have also quoted, is from an amended Rule published in 2011. The Advisory Committee's Notes on the 2011 Amendment say that "The language of Rule 401 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout these rules," and the changes "are intended to be stylistic only" with "no intent to change any result in any ruling on evidence admissibility." In consequence, the Advisory Committee's Notes on the 1972 wording of Rule 401 is fully instructive and enlightening with respect to the 2011 version of the Rule in effect at the trial.

Those Advisory Committee Notes inform this Court's trial rulings on the relevance of certain evidence offered by one party or the other. Rule 401 poses the question whether the proffered evidence addresses a fact which is "of consequence in determining the action." The Rule defines that concept broadly: The Notes tell us that the particular fact "to be proved may be ultimate, intermediate, or evidentiary," so long as it "is of consequence in the determination of the action," and "the fact to which the evidence is directed need not be in dispute." The breadth of that definition of

4

relevance is reflected by the breadth of the issues the Court must resolve in determining this action. The Plaintiff Trust, suing on behalf of certificateholder investors, launches a broad-form attack upon the conduct of the Defendant WMC, the originator of the more than 5,000 mortgage loans bundled into the trust corpus. The two-count complaint, asserting contract claims against WMC for failure to repurchase mortgages whose representations and warranties had been breached, and failure to notify the Trust of such breaches, calls into question the full range of mortgage-related acts of omission and commission on the part of WMC, loan servicers, and other participants in the drama. The four-week bench trial presented a detailed study of the existence and progress of this residential mortgage securitized trust, from confident beginning to severe losses. The Court heard testimony from fact witnesses employed by the several entities involved, and from experts who, on the basis of the factual evidence, expressed opinions in the disciplines of statistics, servicing and damages.

Counsel for each party objected more than once to evidence offered by the other party on the ground that the evidence was irrelevant. Standing objections were preserved on the record, by Court leave, on several occasions. I overruled objections based on asserted irrelevance when the proffered evidence furnished background to or proof of a fact that will be of consequence in the determination of one of the myriad issues in the action. Such evidence is accordingly *relevant* under Rule 401, and *admissible* under Rule 402. While I endeavored in evidentiary rulings during the trial to express that reasoning, I think it useful to add this discussion. Rulings on the admissibility of evidence rest within the discretion of a trial judge, and are reviewed for abuse. There is something to be said for the trial judge's stating his or her reasons in detail. That is not always feasible during a trial, when evidentiary rulings must be made in real time, as the world continues to revolve with unabated speed.

With respect to scheduling matters, the foregoing is SO ORDERED.


Dated: New Haven, Connecticut
February 13, 2018


*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge