| | |
|---|---|
| TMI TRUST COMPANY, solely in its capacity as Separate Trustee of the SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 (SABR 2006-WM2),<br><br>                Plaintiff,<br><br>   v.<br><br>WMC MORTGAGE, LLC f/k/a WMC MORTGAGE CORP.,<br><br>                Defendant. | Civil Action No.<br>3:12-cv-1538 (CSH)<br><br><br><br>MARCH 25, 2019 |

### RULING ON APPLICATION FOR FURTHER STAY OF PROCEEDINGS

**HAIGHT, Senior District Judge:**

This diversity action is a civil suit for breach of contract. The subject of the case is the

Securitized Asset Backed Receivables LLC Trust 2006-WM2 ("the Trust"). The corpus of the Trust

consists of several thousand residential mortgages, which were pooled and securitized in a manner

permitting the sale of certificates in the Trust to investors, who became "certificateholders." The

certificateholders anticipated receiving, over time, shares of the principal and interest payments

made by the underlying mortgagors.

The Plaintiff in the action is TMI Trust Company, as Separate Trustee of the Trust ("TMI"

or "the Trustee"), suing on behalf of all of the Trust's certificateholders. The Defendant, WMC

Mortgage, LLC ("WMC"), originated or conveyed the mortgages. TMI claims in the action that

WMC's breaches of promises made in the contracts governing the Trust render it liable for the

certificateholders' resulting economic loss. The Ropes & Gray and Quinn Emanuel law firms are lead trial counsel for TMI. The Jenner & Block firm is lead trial counsel for WMC.

After extensive motion practice and discovery, a bench trial was held before this Court, followed by exchanges of proposed findings of fact and conclusions of law, main and reply post-trial briefs, and the final summations of counsel. The various liability and damages questions presented for decision by the Court are complex and complicated. The trial advocacy on both sides of the case has been energetic and skillful. The case became fully submitted.

The Court's opinion, while in preparation, had not been completed and no judgment had been filed when, by letter dated February 8, 2019, the parties through counsel made a joint application that "the Court stay this [a]ction pending a potential settlement." Doc. 332, at 1. That letter advised the Court that WMC and two unnamed certificateholders in the Trust had "recently reached [a] tentative agreement regarding a settlement" that, if accepted by TMI as Trustee, "would resolve all of the claims in the [a]ction." *Id.* Counsel's letter said: "WMC requires additional time to document the proposed settlement, and the Separate Trustee will require time to seek investor input and evaluate the terms of the proposed settlement once it is presented to the Separate Trustee for review." *Id.* Counsel requested that the action be stayed "until March 8, 2019 for the parties to undertake the steps outlined above," while also undertaking to report the status by March 8. *Id.*

The Court granted that joint application in a text Order entered on February 8, 2019, which stayed the action until March 8, 2019, required an update by that date, and allowed the parties to request the "continuation of the stay for an additional period of time for the parties to complete the settlement." Doc. 333 (internal brackets removed). The Order did not recite the reasons for its entry, but they are plain enough. Particularly in a difficult and complex case, it is salutary for the parties

to agree upon a mutually satisfactory resolution, rather than continue their reliance upon the uncertainties and significant expense of the litigation process (including proceedings in the Court of Appeals, if the losing party professes to perceive reversible error on the part of the tria1 court). The consequence of the stay order was to place completion of the Court's trial opinion and entry of a judgment on hold.

That was the state of the case when the Court received a letter dated March 6, 2019, from the Patterson Belknap law firm (the "Patterson Letter"). Doc. 334. The Patterson firm identifies itself as counsel for three funds (collectively "the Olifant Funds"), whom Patterson says are "certificateholders holding approximately 17% of the outstanding certificates" in the Trust in suit. *Id.*, at 1. The Olifant Funds, it is made clear, do not include the two unnamed certificateholders described in the February 8 stay application as having negotiated the proposed settlement with WMC. *See id.* On the contrary, the Olifant Funds, represented by the Patterson firm, criticize the proposed settlement as "grossly inadequate to compensate the Trust and its certificateholders for the claims asserted in this litigation," to such a degree that the Olifant Funds are moved to condemn the Trustee for acting "in violation of its duties to protect the Trust's interests," *id*.

The Patterson Letter asks the Court to "lift the stay on March 8, 2019 and proceed to issue judgment in the litigation." *Id.,* at 4. TMI and WMC, in further letters of counsel, resist that request. Doc. 335, 336. They ask the Court to "continue the stay of the [a]ction until April 5, 2019," for reasons set forth in that Letter. Doc. 336, at 1. The Olifant Funds respond that the "additional disclosures by WMC and the Separate Trustee confirm that the continuation of the stay is unwarranted." Doc. 337, at 2.

For the reasons that follow, the Court will GRANT the application of TMI and WMC for a continuance of a stay and DENY the application of the Olifant Funds for the completion and filing of the Court's judgment at this time. I make these orders in the exercise of my discretion as the trial judge.

The submissions of TMI and WMC accurately refer to the Olifant Funds as "Non-Parties" to the action tried before this Court, now pending decision and judgment. *See* Doc. 335. The parties are TMI, as Plaintiff and Trustee on behalf of all certificateholders (including the Olifant Funds), and WMC as Defendant. TMI as Trustee owes duties to all certificateholders, including the Olifant Funds. The Olifant Funds contend through counsel that the inadequacy of the proposed global settlement, apparently binding upon all certificateholders, which the Trustee is engaged in considering, would if implemented violate duties the Trustee owes to the Olifant Funds. The questions posed by the present applications are not whether the Olifant Funds can make that assertion and get a judge to listen to it; rather, the questions are what is the proper vehicle for the assertion and which judge will be listening.

WMC undertakes to answer those questions in a letter dated March 6, 2019, which argues that if TMI as Trustee decides to accept the settlement, "the proper judicial forum for the Non-Parties [the Olifant Funds] to have their concerns addressed is in a trust instruction proceeding (or other proceeding before a court of competent jurisdiction) in which a court will consider and decide whether TMI has reasonably exercised its discretion." Doc. 335, at 2-3. During the continuing exchanges, counsel for the Olifant Funds nowhere suggests that such a remedy is not available to the Olifant Funds if their professed dissatisfaction with the proposed settlement persists.

Indeed, a comparable remedy was availed of in a closely related RMBS case. When the captioned case was filed, *sub nom. Law Debenture Trust Co. v. WMC Mortgage, LLC*,[1] it was consolidated with three other RMBS cases which also involved trusts created by residential mortgages originated by WMC. In each of those three additional cases, the Trustee for certificateholders was Deutsche Bank National Trust Company ("Deutsche Bank"). The Deutsche Bank plaintiff trustees were represented by the MoloLamken law firm. Law Debenture was represented by Ropes & Gray.

At an early stage in the litigation, counsel for Law Debenture (now TMI) moved to vacate the consolidation of that case with the Deutsche Bank cases. The Court granted that motion. *See* 2017 WL 3401254, at *8 (D. Conn. Aug. 8, 2017). The instant case thereupon proceeded on its own. The WMC RMBS litigation in this Court has most recently been divided between the *Deutsche Bank v. WMC* cases on the one hand, and the *TMI v. WMC* case on the other.

As noted, the case at bar, *TMI v. WMC*, eventually went to trial. The *Deutsche Bank v. WMC* cases did not. After discovery and motion practice, counsel for Deutsche Bank and WMC announced the proposed settlement of those cases, subject to MoloLamken, counsel for the Trustees, obtaining authority to enter into them. This Court was asked to stay proceedings in those cases while efforts to implement the settlements went forward. I granted a series of continuances for that purpose. I was told, without details or particulars, that disposition of the cases depended upon undescribed proceedings in an unspecified California court.

---

[1] TMI, the present Separate Trustee, was subsequently substituted for Law Debenture as the Trustee and Party Plaintiff.

A time came when the settlements of the Deutsche Bank cases in this Court were fully implemented. Orders of discontinuance, typically terse, were entered in this Court. I have learned from the recent submissions in the case at bar what transpired elsewhere in the Deutsche Bank cases.[2] Specifically, Deutsche Bank National Trust Company was at the pertinent times a national banking association maintaining its corporate trust office and principal place of administration in Santa Ana, California. The California Probate Code required Deutsche Bank as Trustee of the WMC RMBS trusts being litigated in this Court to petition the California Superior Court "for instructions regarding the internal affairs of the Trust and/or to instruct the Trustee regarding its actions with respect to a settlement of litigation brought by the Trustee on behalf of the Trust." Doc. 335-1 (Petition in the California Proceeding), at 1. The petition came before Judge William D. Claster of the California Superior Court. Doc. 335-6, at 1. Judge Claster's Ruling recites that Deutsche Bank asked the California Court to "[a]pprove the Trustee's acceptance of the Settlement Agreements" of the New York litigation against WMC and the Trustee's "performance of its obligations under the Settlement Agreements as a reasonable exercise of the Trustee's discretion, exercised in good faith and without negligence." *Id.* The Ruling identifies "Olifant Fund, Ltd." as one of several objectors to that relief sought by Deutsche Bank. *Id.,* at 2. After holding a hearing and considering a number of objections to the proposed settlements, Judge Claster's Ruling concluded that "the Trustee exercised its discretionary power reasonably and in good faith." *Id.,* at 13. In those circumstances,

_____

[2] The discussion in text is based upon exhibits to the Jenner Letter dated March 6, 2019 [Doc. 335], which include documents from the file in Case No. 30-2016-008805557 (Superior Court of the State of California, County of Orange, Probate Division) (referred to hereinabove as "the California Proceeding"). Those documents are separately marked as evidence on the present applications in this case.

settlement of the Deutsche Bank cases against WMC in this Court was fully implemented and the cases discontinued with prejudice.

The submissions in the instant case on the present applications suggest, while not specifically stating, that comparable proceedings will take place with respect to the proposed settlement involving TMI. Thus, the Patterson firm submits as Exhibit B to its Letter to the Court dated March 6, 2019 [Doc. 334] a letter dated February 14 "from the Separate Trustee's counsel" to the Patterson firm [Doc. 334-2] which says at 2: "When the Separate Trustee receives the proposed settlement agreement, it will send a notice to certificateholders attaching the proposed settlement agreement and request their input," and adds:

> Assuming the Separate Trustee were to conditionally accept the proposed settlement agreement, after receiving any certificateholder input and any advice from an advisor, the Separate Trustee expects that there would be a hearing in a court and that certificateholders would have an opportunity to submit papers in support of or opposition to the proposed settlement. The Separate Trustee also expects that a court would determine whether the Separate Trustee may accept the proposed settlement.

*Id.*, at 3.

That is, the careful reader will have noted, precisely what occurred with the Deutsche Bank RMBS trusts. No discernible reason exists for believing that such a proceeding will not take place in this case. The underlying circumstances are the same. TMI is the same sort of Trustee as Deutsche Bank. Presumably TMI's conduct is subject to the trust law, statutory or otherwise, of the relevant jurisdiction, and a court of that jurisdiction is available to review the propriety of that conduct. One does not see why the Olifant Funds, if so advised, may not address their TMI settlement objections to that court, just as the Olifant Funds filed and argued (unsuccessfully) for

Deutsche Bank settlement objections before the California state court. This Ruling by this Court expresses no view as to what that other jurisdiction might be, or how it should resolve any objections to the proposed settlement.

In these circumstances, there is no basis in law or equity to justify granting the Olifant Funds' request that this trial Court scuttle the proposed settlement between TMI and WMC by vacating the stay and proceeding to judgment. If the Olifant Funds have viable objections to the settlement, there is a more appropriate forum for their judicial evaluation.

Quite apart from that consideration, the Olifant Funds do not demonstrate that this Court is a proper forum for adjudicating whether (as the Olifant Funds contend) the proposed settlement is unacceptably unfair to them. This is not a class action, so court approval of the settlement is not required by Rule 23(e), Fed. R. Civ. P. The Olifant Funds are not parties to the action, and they do not move to intervene under Rule 24.[3] Instead, the Olifant Funds rely upon their counsel's *ipse dixit* that the settlement is unfair to them, and ask the Court to enter judgment in a trial conducted to adjudicate the rights of all certificateholders. Those counsel do not opine upon the effect of such a judgment, if entered, upon those other certificateholders, who wish to consummate a settlement with WMC on negotiated terms.

No matter: The more fundamental problem is that the Olifant Funds, certificateholders in the Trust, do not show that they are entitled, on the basis of a lawyer's letter, to a Court order lifting the

---

[3] A motion by the Olifant Funds to intervene in this action under Rule 24 would presumably be opposed by the present parties on the ground, asserted in their submissions, that the governing Pooling and Service Agreement ("PSA") contains a "no action" clause which provides that certificateholders cannot "institute any suit, action or proceeding" under or with respect to the PSA unless they meet specific requirements which the Olifant Funds do not and seemingly cannot satisfy. *See* Jenner Letter [Doc. 335], at 2 and 2 n.1 (quoting PSA, § 10.07).

stay of these proceedings and a Court judgment resolving the trial, to the almost certain derogation of a settlement negotiated by other certificateholders. On the contrary: The "no action" clause in the PSA militates against that entitlement for the Olifant Funds and that power in the Court.

Assuming without deciding that the Olifant Funds can ask for this relief and the Court could grant it, in the exercise of my discretion I decline to lift the stay of proceedings and file a trial judgment at this time. A serious settlement agreement has been negotiated between a group of certificateholders and WMC. Counsel for the Trustee are engaged in determining whether other certificateholders are willing to accept that settlement – an exercise, one might add, entirely consistent with the obligations and responsibilities the Trustee bears to all certificateholders. Given the public policy favoring amicable resolution over prolonged litigation, it would be an abuse of discretion to substitute a judgment now for the prospect of a widely approved settlement that may emerge later.

The Olifant Funds are not unfairly prejudiced by that conduct of the case. They will be able to assert their perceived inadequacy of the settlement before an appropriate tribunal. All that counsel can say about prejudice is that during a period of "lengthy stays," the certificateholders "will continue to suffer harm from a delayed recovery." Doc. 337, at 2. "Harm," in that particular context, is entirely conjectural. If a judgment against WMC was for a lower amount for division among certificateholders than the proposed settlement would have achieved, the Olifant Funds would have been better off waiting for the settlement.[4] The better course by far is to extend the stay of these proceedings to allow the settlement efforts to go forward.

---

[4] Nothing in this Ruling should be read to state or intimate what an ultimate judgment in this case might provide.

For the foregoing reasons, the Court makes this Order:

1.  The application set forth in the Letter of the Olifant Funds [Doc. 334], that the Court lift the stay of this action and proceed to issue judgment in the litigation, is DENIED.

2.  The STAY of this action IS CONTINUED TO AND INCLUDING APRIL 5, 2019, and such later date as the Court may direct in a subsequent Order.  If the case has not been disposed of, counsel for the parties are directed to send status letters to the Court, to be received no later than April 5, 2019.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
           March 25, 2019

_/s/Charles S. Haight, Jr._
CHARLES S. HAIGHT, JR.
Senior United States District Judge